FILED
2021 Apr-15  PM 08:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

EAM MTD-1

COMPASS SMARTINVESTOR
401(k) PLAN
As Amended and Restated
as of
January 1, 2014

COMPASS SMARTINVESTOR
401(k) PLAN
As Amended and Restated as of January 1, 2014

<u>TABLE OF CONTENTS</u>

<u>Page</u>

ARTICLE I PURPOSE...................................................................................................1

Section 1.1    Nature of Plan ....................................................................................1
Section 1.2    Purpose and Effect of Restatement of Plan ........................................1

ARTICLE II DEFINITIONS ...........................................................................................1

Section 2.1    Account...............................................................................................1
Section 2.2    Accrued Benefit ..................................................................................1
Section 2.3    Adjustment Date .................................................................................1
Section 2.4    Adjustment Factor ..............................................................................2
Section 2.5    Adopting Company.............................................................................2
Section 2.6    Affiliated Employer ............................................................................2
Section 2.7    Anniversary Date ................................................................................2
Section 2.8    Annual Additions ...............................................................................2
Section 2.9    Authorized Leave of Absence .............................................................2
Section 2.10   Beneficiary..........................................................................................2
Section 2.11   Board...................................................................................................2
Section 2.12   Catch Up Contribution........................................................................2
Section 2.13   Catch Up Eligible Participant .............................................................2
Section 2.14   Company..............................................................................................3
Section 2.15   Company Stock....................................................................................3
Section 2.16   Compensation......................................................................................3
Section 2.17   Date of Employment ...........................................................................4
Section 2.18   Deferred Compensation ......................................................................4
Section 2.19   Disability Retirement Date ..................................................................4
Section 2.20   Discretionary Employer Non-Matching Contribution..........................4
Section 2.21   Elective Employer Contribution ..........................................................4
Section 2.22   Eligible Employee ...............................................................................4
Section 2.23   Employee .............................................................................................4
Section 2.24   Employee Contribution Account ..........................................................5
Section 2.25   Employer..............................................................................................5
Section 2.26   Employer Contribution Account ..........................................................5
Section 2.27   Employer Matching Contribution ........................................................5
Section 2.28   Employer Non-Matching Contribution.................................................5
Section 2.29   Enrollment Date...................................................................................5
Section 2.30   ERISA..................................................................................................5
Section 2.31   Excess Aggregate Contributions...........................................................5
Section 2.32   Excess Contributions ...........................................................................6

Section 2.33    Excess Deferred Compensation ...................................................................6
Section 2.34    Five Percent Owner ...............................................................................................6
Section 2.35    Forfeiture ................................................................................................................6
Section 2.36    415 Compensation .................................................................................................6
Section 2.37    414(s) Compensation .............................................................................................7
Section 2.38    Highly Compensated Employee ............................................................................7
Section 2.39    Hour of Service ......................................................................................................8
Section 2.40    Internal Revenue Code or Code .............................................................................9
Section 2.41    Investment Fund .....................................................................................................9
Section 2.42    Investment Manager ...............................................................................................9
Section 2.43    Leased Employee ....................................................................................................9
Section 2.44    Limitation Year .....................................................................................................10
Section 2.45    Named Fiduciary ....................................................................................................10
Section 2.46    Non-Elective Employer Contribution ....................................................................10
Section 2.47    Non-Highly Compensated Employee .....................................................................10
Section 2.48    Normal Retirement Age ..........................................................................................10
Section 2.49    Normal Retirement Date .........................................................................................10
Section 2.50    One-Year Break in Service .....................................................................................10
Section 2.51    Participant ...............................................................................................................10
Section 2.52    Plan .........................................................................................................................10
Section 2.53    Plan Administrator ..................................................................................................10
Section 2.54    Plan Year ................................................................................................................11
Section 2.55    Qualified Non-Elective Contributions ...................................................................11
Section 2.56    Retirement Committee ............................................................................................11
Section 2.57    Rollover Contribution .............................................................................................11
Section 2.58    Separation from Service .........................................................................................11
Section 2.59    SmartInvestor Employer Contribution ...................................................................11
Section 2.60    Top Paid Group.......................................................................................................11
Section 2.61    Trust or Trust Fund .................................................................................................12
Section 2.62    Trustee ....................................................................................................................12
Section 2.63    USERRA..................................................................................................................12
Section 2.64    Year of Benefit Service ..........................................................................................12
Section 2.65    Year of Participation Service ..................................................................................12
Section 2.66    Year of Service .......................................................................................................14
Section 2.67    Year of Vesting Service ..........................................................................................15

ARTICLE III PARTICIPATION ..............................................................................................15

Section 3.1     Eligibility to Participate .........................................................................................15
Section 3.2     Participation upon Re-Employment .......................................................................15
Section 3.3     Cessation of Participation .......................................................................................16
Section 3.4     Eligible Class of Employees ...................................................................................16

ARTICLE IV EMPLOYER CONTRIBUTIONS.......................................................................16

Section 4.1     Contribution Formula .............................................................................................16
Section 4.2     Participant's Salary Reduction Election...................................................................16

Section 4.3    Non-Elective Employer Contributions. ........................................20
Section 4.4    Amendment or Termination With Respect to Contribution ............21
Section 4.5    Limitation on Amount to be Contributed ......................................22
Section 4.6    Time of Payment of Contribution..................................................22
Section 4.7    Time of Payment of Elective Employer Contribution ...................22
Section 4.8    Permanent Discontinuance of Contribution...................................22
Section 4.9    Rollover Amount from Other Plans................................................22
Section 4.10   Qualified Military Service ............................................................24
Section 4.11   Qualified Voluntary Employee Contributions and After-Tax Contributions. 24

ARTICLE V INVESTMENT OF CONTRIBUTIONS ..............................................25

Section 5.1    Investment Funds ..........................................................................25
Section 5.2    Investment Directions by Participants............................................25
Section 5.3    Reinvestment of Fund Earnings.....................................................25
Section 5.4    Change of Investment Directions for Future Contributions ...........26
Section 5.5    Change of Investment Directions for Existing Employee Contribution
              Account Funds...............................................................................26
Section 5.6    Diversification and Election Rights................................................26
Section 5.7    Voting Company Stock...................................................................27
Section 5.8    Response to Tender or Exchange Offer...........................................27

ARTICLE VI ALLOCATIONS AND ADJUSTMENTS ..........................................27

Section 6.1    Employer Contribution and Forfeiture Allocation .........................27
Section 6.2    Participant Accounts......................................................................28
Section 6.3    Account Adjustments.....................................................................28
Section 6.4    Adjustment of Contributions .........................................................30
Section 6.5    Maximum Annual Additions .........................................................30
Section 6.6    Adjustment for Excess Annual Additions ......................................34
Section 6.7    Actual Deferral Percentage ("ADP").............................................34
Section 6.8    Adjustment to Actual Deferral Percentage Tests...........................37
Section 6.9    Actual Contribution Percentage ("ACP") Tests. ...........................40
Section 6.10   Adjustment to ACP Tests ..............................................................42

ARTICLE VII DETERMINATION OF BENEFITS ................................................45

Section 7.1    Normal Retirement Benefit............................................................45
Section 7.2    Delayed Retirement Benefit ..........................................................45
Section 7.3    Total and Permanent Disability Benefit .........................................45
Section 7.4    Death Benefit.................................................................................45
Section 7.5    Employment Termination Benefit ..................................................45
Section 7.6    Definition of Year of Vesting Service ............................................46
Section 7.7    Determination of Years of Vesting Service - Breaks in Service. ....46
Section 7.8    Forfeitures.....................................................................................47

ARTICLE VIII DISTRIBUTION OF BENEFITS ............................................................... 48

Section 8.1    Time of Payment of Benefits ................................................ 48
Section 8.2    Method of Payment ............................................................. 48
Section 8.3    Designation of Beneficiary ................................................. 50
Section 8.4    Required Minimum Distributions ........................................ 51
Section 8.5    Distributions to which Qualified Joint and Survivor and Pre-Retirement Survivor Annuities Apply ................................................. 55
Section 8.6    Direct Rollovers ................................................................. 55
Section 8.7    Claim and Review Procedure .............................................. 56
Section 8.8    No Assignment of Benefits .................................................. 61
Section 8.9    Medium of Payment ............................................................ 62
Section 8.10   Unclaimed Account Procedure ........................................... 62
Section 8.11   Payment in the Event of Legal Disability ............................ 62
Section 8.12   Retirement Committee Decisions ........................................ 63
Section 8.13   Execution of Receipts and Releases .................................... 63
Section 8.14   Financial Hardship Distribution from Employee Contribution Account. ...... 63
Section 8.15   Age 59½ In-Service Withdrawals ........................................ 65
Section 8.16   Roth Elective Deferrals ....................................................... 65
Section 8.17   Disclosure to Participants ................................................... 65

ARTICLE IX LOANS ....................................................................................................... 66

Section 9.1    Loans to Participants ........................................................... 66

ARTICLE X ADMINISTRATION OF THE PLAN ........................................................ 67

Section 10.1   Retirement Committee ......................................................... 67
Section 10.2   Plan Administrator .............................................................. 68
Section 10.3   Investment Direction ........................................................... 68
Section 10.4   Allocation of Responsibilities ............................................. 69
Section 10.5   Duties of Retirement Committee .......................................... 69
Section 10.6   Rules and Regulations for the Plan ...................................... 70
Section 10.7   Retirement Committee Internal Procedures .......................... 70
Section 10.8   Authorization of Benefit Payments ...................................... 70
Section 10.9   Application and Forms for Benefits ...................................... 71
Section 10.10  Assistants and Representatives ............................................ 71
Section 10.11  Multiple Fiduciary Capacities ............................................. 71
Section 10.12  Discretionary Acts .............................................................. 71
Section 10.13  Plan Administrative Expenses .............................................. 71
Section 10.14  Trustee's Expenses ............................................................. 71

ARTICLE XI TOP HEAVY PROVISIONS ..................................................................... 71

Section 11.1   Definitions .......................................................................... 71
Section 11.2   Top Heavy Determination .................................................... 75
Section 11.3   Requirements ...................................................................... 75

ARTICLE XII AMENDMENTS AND ACTIONS BY EMPLOYER.........................................77

    Section 12.1   Amendments..........................................................................................77
    Section 12.2   Amendment of Vesting Schedule ...........................................................77

ARTICLE XIII SUCCESSOR EMPLOYER AND MERGER OR CONSOLIDATION OF
    PLAN ..................................................................................................................78

    Section 13.1   Successor Employer...............................................................................78
    Section 13.2   Merger of Plan ......................................................................................78
    Section 13.3   Merger into Plan ...................................................................................78

ARTICLE XIV PLAN TERMINATION ......................................................................................78

    Section 14.1   Right to Terminate ................................................................................78
    Section 14.2   Partial Termination ...............................................................................78
    Section 14.3   Liquidation of the Trust ........................................................................78

ARTICLE XV ADOPTION BY AFFILIATED EMPLOYERS ......................................................79

    Section 15.1   Adoption by Affiliated Employers ........................................................79
    Section 15.2   Requirements to Participate...................................................................79
    Section 15.3   Designation of Agent ............................................................................79
    Section 15.4   Employee Transfers ..............................................................................79
    Section 15.5   Affiliated Employer's Contribution......................................................79
    Section 15.6   Amendment...........................................................................................80
    Section 15.7   Discontinuance of Participation.............................................................80
    Section 15.8   Retirement Committee's Authority .......................................................80

ARTICLE XVI MISCELLANEOUS .............................................................................................80

    Section 16.1   Employment Status ...............................................................................80
    Section 16.2   Titles ....................................................................................................80
    Section 16.3   Gender and Number of Words...............................................................80
    Section 16.4   Severability ..........................................................................................80
    Section 16.5   Notice ...................................................................................................80
    Section 16.6   Waiver of Notice...................................................................................80
    Section 16.7   Applicable Law.....................................................................................80
    Section 16.8   Heroes Earnings Assistance and Relief Tax Act of 2008 ............................80
    Section 16.9   Merger of SmartInvestor Retirement Plan.......................................................81

COMPASS SMARTINVESTOR
401(k) PLAN
as Amended and Restated
as of January 1, 2014

ARTICLE I
PURPOSE

Section 1.1    Nature of Plan.   The Plan and the Trust were created and shall be maintained to enable eligible employees of BBVA Compass Bancshares, Inc. and its Affiliated Employers to provide such employees with an opportunity to accumulate capital for their future economic security.   The Plan and the Trust are intended to meet the requirements of Sections 401(a), 401(k) and 501(a) of the Internal Revenue Code of 1986, as amended, and the requirements of the Employee Retirement Income Security Act of 1974.   An additional purpose of the Plan is to encourage Employee thrift through the establishment of a formal plan under which contributions by Participants are made by means of salary reduction elections and are supplemented by Employer contributions.   Prior to the consummation of the share exchange described in that certain Transaction Agreement entered into by and between Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") and Compass Bancshares, Inc. dated as of February 16, 2007 (the "Share Exchange"), the Plan constituted an employee stock ownership plan within the meaning of Section 4975(e)(7) of the Internal Revenue Code of 1986, as amended.   Effective January 1, 2013, the Compass SmartInvestor Retirement Plan (the "SmartInvestor Retirement Plan") was merged into the Plan.

Section 1.2    Purpose and Effect of Restatement of Plan.   The Plan is being amended and restated effective as of January 1, 2014 (except where otherwise provided), in order to incorporate prior amendments to the Plan document and in order to submit the Plan to the Internal Revenue Service for a determination that the Plan satisfies the requirements of the Pension Protection Act of 2006 and other items identified on the 2012 Cumulative List of Changes in Plan Qualification Requirements (IRS Notice 2012-76) that are applicable to the Plan.

ARTICLE II
DEFINITIONS

The following words and phrases, when used herein, shall have the following meanings:

Section 2.1    Account shall mean one of several bookkeeping accounts maintained to record a Participant's interest in the Plan.

Section 2.2    Accrued Benefit shall mean the amount standing in a Participant's Account as of any date derived from Employer contributions and Employee contributions, if any.

Section 2.3    Adjustment Date means the last day of March, June, September and December of each Plan Year or such other date or dates as determined by the Plan Administrator, including a daily basis (each regular business day) if the Plan Administrator shall authorize and implement a daily valuation system.

Section 2.4 _Adjustment Factor_ shall mean the cost of living adjustment factor prescribed by the Secretary of the Treasury under Section 415(d) of the Code, as applied to such items and in such manner as the Secretary shall provide.

Section 2.5 _Adopting Company_ shall mean any Affiliated Employer which is authorized by the Board to adopt the Plan and which adopts the Plan. The term shall also include any corporation into which an Adopting Company may be merged or consolidated or by which it may be succeeded, which is authorized by the Board to adopt or continue the Plan and which adopts or continues the Plan.

Section 2.6 _Affiliated Employer_ shall mean the Company and any corporation which is a member of a controlled group of corporations (as defined in Section 414(b) of the Code) which includes the Company; any trade or business (whether or not incorporated) which is under common control (as defined in Section 414(c) of the Code) with the Company; and any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Code) which includes the Company; and any other entity required to be aggregated with the Company pursuant to regulations under Section 414(o) of the Code.

Section 2.7 _Anniversary Date_ shall mean the 31st day of December of each year.

Section 2.8 _Annual Additions_ shall have the meaning set forth in Section 6.5(a).

Section 2.9 _Authorized Leave of Absence_ shall mean an approved absence from the employ of an Employer under the Employer's personnel practices. An absence due to service in the Armed Forces of the United States shall be considered an Authorized Leave of Absence provided the Employee returns to employment with the Employer with re-employment rights protected by law.

Section 2.10 _Beneficiary_ shall mean a person or persons designated by a Participant in accordance with the provisions of Section 8.3 to receive any benefits which shall be payable under this Plan upon or after the death of the Participant.

Section 2.11 _Board_ shall mean the Board of Directors of the Company.

Section 2.12 _Catch Up Contribution_ shall mean, effective January 1, 2002, Deferred Compensation made to the Plan by a Catch Up Eligible Participant during any taxable year of such Participant that is in excess of the following:

(i) A statutory limit on Deferred Compensation or "annual additions" provided in Code Sections 401(a)(30), 402(h), 403(b), 408, 415(c) or 457(b)(2) (without regard to Code Section 457(b)(3)), as applicable, or

(ii) A Plan limit on Deferred Compensation which is not a limit provided in (a) above).

Section 2.13 _Catch Up Eligible Participant_ shall mean, effective January 1, 2002, a Participant who is eligible to defer Compensation pursuant to Section 4.2 and will attain age 50 or higher before the end of his or her taxable year.

Section 2.14   Company shall mean BBVA Compass Bancshares, Inc., an Alabama corporation, and any successor, purchaser, or transferee of the operating assets and business of BBVA Compass Bancshares, Inc.

Section 2.15   Company Stock shall mean American Depository Shares ("ADSs") representing BBVA ordinary stock which were received in exchange for Compass Bancshares, Inc. common stock held in the Company Stock Fund immediately prior to the Share Exchange.

Section 2.16   Compensation shall mean with respect to any Participant, · such Participant's base salary or wages paid by the Employer during the period involved but excluding overtime, bonuses, incentive pay and other extraordinary remuneration, and special incentives or promotional programs including but not limited to referral fees, awards for outstanding achievement, and annual incentive bonuses.  "Base salary," in the case of sales persons, shall be based on draw pay.  Amounts contributed by the Employer under this Plan and under any other employee benefit plan and any other fringe benefits shall not be considered as Compensation except for contributions through a salary reduction agreement under Section 401(k) of the Internal Revenue Code pursuant to Section 4.2 of this Plan, under a cafeteria plan under Section 125 of the Internal Revenue Code, and under a qualified transportation fringe benefit plan under Section 132(f) of the Internal Revenue Code.  If a Participant receives such included compensation from more than one Employer in a calendar year, the amounts of all such included compensation shall be added together to determine the Participant's Compensation for the year.  Compensation in excess of $230,000 (or such other amount provided in the Code) shall be disregarded for all purposes other than for purposes of salary deferral elections pursuant to Section 4.2.  Such amount shall be adjusted for increases in the cost of living in accordance with Code Section 401(a)(17)(B), except that the dollar increase in effect on January 1 of any calendar year shall be effective for the Plan Year beginning with or within such calendar year.  For any "determination period" of less than twelve (12) months, the Compensation limit shall be an amount equal to the Compensation limit for the calendar year in which the "determination period" begins multiplied by the ratio obtained by dividing the number of full months in the short "determination period" by twelve (12).  A "determination period" is not less than twelve (12) months solely because a Participant's Compensation does not include Compensation paid during a determination period while the Participant was not a Participant in the Plan (or a component of the Plan).

The cost-of-living adjustment in effect for a calendar year applies to any period, not exceeding 12 months, over which Compensation is determined (determination period) beginning in such calendar year.  If a determination period consists of fewer than 12 months, the annual Compensation limit will be multiplied by a fraction, the numerator of which is the number of months in the determination period, and the denominator of which is 12.

Compensation shall be recognized as of an Employee's effective date of participation.

Effective for Plan Years 2003 through 2011, a Participant's Compensation for purposes of determining the Participant's deferral of Compensation pursuant to Section 4.2 shall include all commissions paid to such Participant.  Effective for Plan Years 2009 through 2011, a Participant's Compensation for purposes of determining the Safe-Harbor Matching Contribution pursuant to Section 4.3(a) shall include all commissions paid to such Participant.

Section 2.17   Date of Employment for Employees having no prior service with the Employer, shall mean the first date for which the Employee is credited with an Hour of Service and for all other Employees shall mean the first date for which the Employee is credited with an Hour of Service and which follows the last Plan Year in which the Employee has a One-Year Break in Service.

Section 2.18   Deferred Compensation shall mean with respect to that portion of such Participant's total compensation paid by the Employer for a Plan Year that such Participant has elected to defer pursuant to Section 4.2.

Section 2.19   Disability Retirement Date shall mean the first day of the calendar month following a determination that the Participant is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.  The Participant shall provide medical evidence to the Human Resources Director to substantiate his claim for disability retirement.  However, the Human Resources Director reserves the right to require the Participant to be evaluated by a licensed physician of the Employer's choice and to rely on that evaluation to determinate the Participant's disability status.  Also, if the Participant's condition constitutes total disability under the federal Social Security Acts, the Human Resources Director may rely upon such determination to conclude that the Participant is unable to engage in any substantial gainful activity in satisfaction of the standard provided in this Section 2.19.

Section 2.20   Discretionary Employer Non-Matching Contribution shall mean a contribution made pursuant to Section 4.3(b)(i).

Section 2.21   Elective Employer Contribution shall mean the contributions made pursuant to Section 4.2 excluding any amounts distributed as excess annual additions pursuant to Section 6.5.

Section 2.22   Eligible Employee shall mean any Employee whom the Employer treats as an employee for federal income tax purposes who has met the eligibility requirements of Article III, except that there shall be excluded from eligibility (i) any Employee classified as a project consultant, (ii) any individual classified as a Leased Employee, (iii) any individual classified as an independent contractor, (iv) any individual employed by BBVA, S.A., BBVA (or any non-U.S. subsidiary or affiliate thereof); (v) any employee of BBVA Securities, Inc. whose primary place of employment is New York City; and (vi) any individual who has been transferred from a foreign office of an Affiliated Employer and who is an active participant in a pension plan maintained for employees of such foreign office.   For purposes of determining Eligible Employees, the Employer's treatment of an individual for federal employment tax purposes shall control, regardless of whether a court or administrative agency determines that such individual should have been treated as an employee for federal employment tax purposes.  In the event the Employer is required to treat an individual as an employee for federal employment tax purposes during any retroactive period, such individual shall not be deemed an Eligible Employee during such period.

Section 2.23   Employee shall mean any person employed by an Employer.  The term "Employee" excludes any person who is employed as an independent contractor and any person who is a "leased employee" within the meaning of Section 414(n)(2) and Section 414(o)(2) of the Internal Revenue Code.  Individuals who are not contemporaneously classified as employees

of the Employer for purposes of the Employer's payroll system (including, without limitation, individuals employed by temporary help firms, technical help firms, staffing firms, employee leasing firms, professional employer organizations or other staffing firms whether or not deemed to be "common law" employees or "leased employees" within the meaning of Section 414(n) of the Code) are not considered to be eligible employees of the Employer and shall not be eligible to participate in the Plan.  In the event any such individuals are reclassified as employees for any purpose, including without limitation, common law or statutory employees, by any action of any third party, including, without limitation, any government agency, or as a result of a private lawsuit, action, or administrative proceeding, such individuals shall, notwithstanding such reclassification, remain ineligible for participation hereunder.   In addition to and not in derogation of the foregoing, the exclusive means for individuals who are not contemporaneously classified as an employee of the Employer on the Employer's payroll system to become eligible to participate in this Plan is through an amendment to this Plan, duly executed by the Employer, which specifically renders such individuals eligible for participation hereunder.

Section 2.24    Employee Contribution Account shall mean the account of a Participant consisting of his share of the Elective Employer Contributions (salary reduction contributions), together with any investment gains or losses allocated to it.

Section 2.25    Employer shall mean BBVA Compass Bancshares, Inc., or any corporation into which the Employer may be merged or consolidated or to which may be made a transfer of substantially all of its assets, and any Adopting Employer which may adopt the Plan pursuant to the terms hereof.

Section 2.26    Employer Contribution Account shall mean the account of a Participant consisting of his share of Non-Elective Employer Contributions, together with any investment gains or losses allocated to it.

Section 2.27    Employer Matching Contribution shall mean a contribution made pursuant to Section 4.3(a).

Section 2.28    Employer Non-Matching Contribution shall mean the contributions made pursuant to Section 4.3(b).

Section 2.29    Enrollment Date shall mean the first day of each pay period.

Section 2.30    ERISA shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time.

Section 2.31    Excess Aggregate Contributions shall mean, with respect to any Plan Year, the excess of the aggregate amount of the Employer Matching Contributions made pursuant to Section 4.3(a) (to the extent such Matching Contributions are not used to satisfy the safe harbor methods permitted by Code Sections 401(k)(12) and 401(m)(11)) and any Qualified Non-Elective Contributions or elective deferrals taken into account pursuant to Section 6.8(c) on behalf of Highly Compensated Participants for such Plan Year, over the maximum amount of such contributions permitted under the limitations of Section 6.9 (determined by hypothetically reducing contributions made on behalf of Highly Compensated Participants in order of the actual contribution ratios beginning with the highest of such ratios).  Such determination shall be made after first taking into account corrections of any Excess Deferred Compensation pursuant to Section 4.2(f) and taking into account any adjustments of any Excess Contributions pursuant to Section 6.8.

Section 2.32    Excess Contributions shall mean, with respect to a Plan Year, the excess of Elective Employer Contributions used to satisfy the "Actual Deferral Percentage" tests made on behalf of Highly Compensated Participants for the Plan Year over the maximum amount of such contributions permitted under Section 6.7 (determined by hypothetically reducing contributions made on behalf of Highly Compensated Participants in order of the actual deferral ratios beginning with the highest of such ratios). Excess Contributions shall be treated as an "Annual Addition" pursuant to Section 6.5.

Section 2.33    Excess Deferred Compensation shall mean, with respect to any taxable year of a Participant, the excess of the aggregate amount of such Participant's Deferred Compensation and the elective deferrals pursuant to Section 4.2 actually made on behalf of such Participant for such taxable year, over the dollar limitation provided for in Code Section 402(g), which is incorporated herein by reference. Excess Deferred Compensation shall be treated as an "Annual Addition" pursuant to Section 6.5 when contributed to the Plan unless distributed to the affected Participant not later than the first April 15th following the close of the Participant's taxable year. Additionally, for purposes of Section 6.7 and Section 11.1, Excess Deferred Compensation shall continue to be treated as Employer contributions even if distributed pursuant to Section 4.2. However, Excess Deferred Compensation of Non-Highly Compensated Participants is not taken into account for purposes of Section 6.7 to the extent such Excess Deferred Compensation occurs pursuant to Section 4.2(f).

Section 2.34    Five Percent Owner shall mean any Employee who owns or is considered to own under Section 318 of the Internal Revenue Code, more than 5% of the outstanding stock of the Company or stock possessing more than 5% of the total combined voting power of all stock of the Company.

Section 2.35    Forfeiture shall mean the portions of a Participant's Accounts which are forfeited pursuant to Section 7.8.

Section 2.36    415 Compensation with respect to any Participant means such Participant's wages, salaries, fees for professional services and other amounts received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment with the Employer maintaining the Plan to the extent that the amounts are includible in gross income (including, but not limited to, commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips, bonuses, fringe benefits, and reimbursements or other expense allowances under a nonaccountable plan (as described in Regulation 1.62-2(c)) for a Plan Year.

"415 Compensation" shall exclude (a)(1) contributions made by the Employer to a plan of deferred compensation to the extent that, the contributions are not includible in the gross income of the Participant for the taxable year in which contributed, (2) Employer contributions made on behalf of an Employee to a simplified employee pension plan described in Internal Revenue Code Section 408(k) to the extent such contributions are excludable from the Employee's gross income, (3) any distributions from a plan of deferred compensation; (b) amounts realized from the exercise of a non-qualified stock option, or when restricted stock (or property) held by an Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture; (c) amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and (d) other amounts which receive special tax benefits, or contributions made by the Employer (whether or not under a salary reduction

agreement) towards the purchase of any annuity contract described in Internal Revenue Code Section 403(b) (whether or not the contributions are actually excludable from the gross income of the Employee).

For purposes of this Section, the determination of "415 Compensation" shall include any elective deferral (as defined in Internal Revenue Code Section 402(g)(3)), and any amount which is contributed or deferred by the Employer at the election of the Participant by reason of Internal Revenue Code Sections 125, 132(f)(4) or 457.

If, in connection with the adoption of this amendment and restatement, the definition of "415 Compensation" has been modified, then, for Plan Years prior to the Plan Year which includes the adoption date of this amendment and restatement, "415 Compensation" means compensation determined pursuant to the Plan then in effect.

Section 2.37   414(s) Compensation with respect to any Participant means such Participant's "415 Compensation" paid during a Plan Year.  The amount of "414(s) Compensation" for the entire twelve (12) month period ending on the last day of such Plan Year, except that "414(s) Compensation" shall only be recognized for that portion of the Plan Year during which an Employee was a Participant in the Plan.

For purposes of this Section, the determination of "414(s) Compensation" shall be made by including amounts which are contributed by the Employer pursuant to a salary reduction agreement and which are not includible in the gross income of the Participant under Internal Revenue Code Sections 125, 132(f)(4), 402(e)(3), 401(h)(1)(B), 403(b) or 457(b), and Employee contributions described in Internal Revenue Code Section 414(h)(2) that are treated as Employer contributions.

"414(s) Compensation" in excess of $250,000 shall be disregarded.  Such amount shall be adjusted for increases in the cost of living in accordance with Internal Revenue Code Section 401(a)(17), except that the dollar increase in effect on January 1 of any calendar year shall be effective for the Plan Year beginning with or within such calendar year.  For any short Plan Year the "414(s) Compensation" limit shall be an amount equal to the "414(s) Compensation" limit for the calendar year in which the Plan Year begins multiplied by the ratio obtained by dividing the number of full months in the short Plan Year by twelve (12).

If, in connection with the adoption of this amendment and restatement, the definition of "414(s) Compensation" has been modified, then, for Plan Years prior to the Plan Year which includes the adoption date of this amendment and restatement, "414(s) Compensation" means compensation determined pursuant to the Plan then in effect.

Section 2.38   Highly Compensated Employee means an Employee described in Internal Revenue Code Section 414(q) and the Treasury Regulations thereunder, and generally means an Employee who performed services for the Employer during the "determination year" and is in one or more of the following groups:

(i)      Employees who at any time during the "determination year" or "look-back year" were "five percent owners" of the Employer.

(ii)     Employees who received 415 Compensation during the "look-back year" from the Employer in excess of $80,000 (as adjusted by the Secretary of Treasury under Section 415(d) of the Internal Revenue Code).

The "determination year" shall be the Plan Year for which testing is being performed, and the "look-back year" shall be the immediately preceding twelve-month period. However, for purposes of (ii) above, the "look-back year" shall be the calendar year beginning within the twelve-month period immediately preceding the "determination year."

For purposes of this Section, the determination of "415 Compensation" shall be made by including amounts which are contributed by the Employer pursuant to a salary reduction agreement and which are not includible in the gross income of the Participant under Internal Revenue Code Sections 125, 132(f)(4), 402(e)(3), 402(h)(1)(B), 403(b) or 457(b), and Employee contributions described in Internal Revenue Code Section 414(h)(2) that are treated as Employer contributions. Additionally, the dollar threshold amount specified in (ii) above shall be adjusted at such time and in the same manner as under Internal Revenue Code Section 415(d), except that the base period shall be the calendar quarter ending September 30, 1996.

In determining who is a Highly Compensated Employee, Employees who are non-resident aliens and who received no earned income (within the meaning of Internal Revenue Code Section 911(d)(2)) from the Employer constituting United States source income within the meaning of Internal Revenue Code Section 861(a)(3) shall not be treated as Employees. Additionally, all Affiliated Employers shall be taken into account as a single employer and Leased Employees within the meaning of Internal Revenue Code Sections 414(n)(2) and 414(o)(2) shall be considered Employees unless such Leased Employees are covered by a plan described in Internal Revenue Code Section 414(n)(5) and are not covered by any qualified plan maintained by the Employer. The exclusion of Leased Employees for this purpose shall be applied on a uniform and consistent basis for all of the Employer's retirement plans. Highly Compensated Former Employees shall be treated as Highly Compensated Employees without regard to whether they performed services during the "determination year."

A former Employee shall be treated as a Highly Compensated Employee if (a) such Employee was a Highly Compensated Employee when such Employee separated from service, or (b) such Employee was a Highly Compensated Employee at any time after attaining age 55.

Section 2.39   <u>Hour of Service</u> shall mean each hour for which an Employee is paid, or entitled to payment, by an Employer for the performance of duties during the applicable computation period. Hours of Service credited for the performance of duties shall be credited to the Employee for the computation period or periods in which the duties were performed.

Hours of Service shall include each hour for which back pay, irrespective of mitigation of damages, has been either awarded or agreed to by the Employer. Hours of Service for back pay shall be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made.

Hours of Service, in addition, shall include each hour for which an Employee is paid, or entitled to payment, by an Employer for reasons (such as vacations, holidays, sickness, disability, layoff and other paid periods) other than the performance of duties during the applicable computation period and shall be counted in the computation period in which either payment is actually made or amounts payable to the Employee become due. For purposes of determining Hours of Service for payments for reasons other than the performance of duties, the payments received shall be divided by the lesser of (a) the Employee's most recent hourly rate of compensation for the performance of duties, or (b) the Employee's average hourly rate of

compensation for the performance of duties for the most recent computation period in which the Employee completed more than 500 Hours of Service. Hours of Service for Employees whose compensation is not determined on the basis of certain amounts for each hour of work or other paid period, may be determined using an alternative method under which an Employee shall be credited with forty-five (45) Hours of Service for each week in which the Employee would be credited with one Hour of Service under the basic method of crediting one hour for each hour of work or other paid periods. Hours of Service shall be credited at the rate of forty (40) hours for each week during which an Employee (regardless of his compensation method) is on Authorized Leave of Absence. Anything herein to the contrary notwithstanding, however, Hours of Service shall not be credited more than once for any period of time.

Hours of Service will be credited for employment with other members of an affiliated service group (under Section 414(m)), a controlled group of corporations (under Section 414(b)), or a group of trades or businesses under common control (under Section 414(c)) of which the adopting employer is a member, and any other entity required to be aggregated with the Employer pursuant to Section 414(o) of the Code. Hours of Service will also be also be credited for any individual considered an employee for purposes of this Plan under Section 414(n) or Section 414(o).

Section 2.40    Internal Revenue Code or Code shall mean the Internal Revenue Code of 1986, as amended or replaced from time to time.

Section 2.41    Investment Fund shall mean any one of the funds described in Section 5.1 which constitutes part of the Trust Fund.

Section 2.42    Investment Manager shall have the meaning set forth in Section 10.3.

Section 2.43    Leased Employee shall mean any person (other than an Employee of the recipient) who pursuant to an agreement between the recipient and any other person ("leasing organization") has performed services for the recipient (or for the recipient and related persons determined in accordance with Internal Revenue Code Section 414(n)(6)) on a substantially full time basis for a period of at least one year, and such services are performed under the primary direction and control of the recipient Employer. Contributions or benefits provided a Leased Employee by the leasing organization which are attributable to services performed for the recipient Employer shall be treated as provided by the recipient Employer. A Leased Employee shall not be considered an Employee of the recipient if:

      (i)     such employee is covered by a money purchase pension plan providing:

      (a)     a non-integrated employer contribution rate of at least 10% of compensation, as defined in Internal Revenue Code Section 415(c)(3), but including amounts contributed pursuant to a salary reduction agreement which are excludable from the employee's gross income under Internal Revenue Code Sections 125, 132(f)(4), 402(a)(8), 402(h) or 403(1,);

      (b)     immediate participation; and

      (c)     full and immediate vesting.

      (ii)    Leased Employees do not constitute more than 20% of the recipient's nonhighly compensated work force.

Section 2.44    Limitation Year shall mean the period used to calculate the limitations imposed on benefits and contributions by Section 415 of the Internal Revenue Code and shall be the same period as the Plan Year.

Section 2.45    Named Fiduciary shall have the meaning set forth in Section 402(a) of ERISA.

Section 2.46    Non-Elective Employer Contribution shall mean the contributions by the Employer made pursuant to Section 4.3.

Section 2.47    Non-Highly Compensated Employee shall mean an Employee of the Employer who is not a Highly Compensated Employee.

Section 2.48    Normal Retirement Age shall mean age sixty-five (65). A Participant shall become fully vested in the Participant's Account upon attaining Normal Retirement Age.

Section 2.49    Normal Retirement Date shall mean the first day of the month coinciding with or next following the date a Participant attains sixty-five (65) years of age.

Section 2.50    One-Year Break in Service shall mean a Plan Year in which an Employee is credited with 500 or fewer Hours of Service. Solely for purposes of determining whether a One-Year Break in Service for participation and vesting purposes has occurred in a computation period, an Employee who is absent from work for maternity or paternity reasons shall receive credit for the hours of service which would otherwise have been credited to such Employee but for such absence, or in any case in which such hours cannot be determined, eight (8) hours of service per day of such absence. For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence (1) by reason of the pregnancy of the Employee, (2) by reason of a birth of a child of the Employee, (3) by reason of the placement of a child with the Employee in connection with the adoption of such child by such Employee, or (4) for purposes of caring for such child for a period beginning immediately following such birth or placement. The Hours of Service credited under this paragraph shall be credited (1) in the computation period in which the absence begins if the crediting is necessary to prevent a One-Year Break in Service in that period, or (2) in all other cases, in the following computation period. The total Hours of Service required to be credited under this paragraph shall not exceed 501. The provisions of Department of Labor Regulations 2530.200b-2(b) and 2(c) are incorporated herein by reference.

Effective January 1, 2013, a "One-Year Break in Service" shall mean a Period of Severance, as defined in Section 2.65, of at least twelve (12) consecutive months.

Section 2.51    Participant shall mean an Employee who participates in the Plan, having met the eligibility requirements set forth in Article III.

Section 2.52    Plan shall mean the Compass SmartInvestor 401(k) Plan as set forth herein and as hereafter amended from time to time, which plan prior to the consummation of the Share Exchange was known as the "Compass Bancshares, Inc. Employee Stock Ownership Plan" and which plan prior to October 16, 2000, was known as the "Compass Bancshares, Inc. Profit Sharing Plan" and which plan prior to September 8, 1999, was known as the "Compass Bancshares, Inc. Employee Stock Ownership Plan."

Section 2.53    Plan Administrator shall mean the Company as set forth in Section 2.14 hereof.

Section 2.54   Plan Year shall mean the twelve (12) consecutive month period ending December 31 of each calendar year.

Section 2.55   Qualified Non-Elective Contributions shall mean contributions (other than Employer Matching and Non-Matching Contributions) made by the Employer and allocated to Participants' accounts of Non-Highly Compensated Employees that the Participant may not elect to receive in cash until distributed from the Plan; that are 100 percent vested and nonforfeitable when made; and that are not distributable under the terms of the Plan to Participants or their Beneficiaries earlier than the earlier of:

(i)      Separation from Service, death, or disability of Participant;

(ii)     attainment of age 59-1/2 by the Participant;

(iii)    termination of the Plan without establishment of a successor plan;

(iv)    the events specified in Section 4.2(d); or

(v)     for Plan Years beginning before January 1, 1989, upon hardship of the Participant.

Non-elective contributions and Employer Matching Contributions may be treated as Elective Employer Contributions only in accordance with Code Section 401(k) and Treasury Regulation, Section 1.401(k)-1(b)(5), which are incorporated herein by reference.

Section 2.56   Retirement Committee shall mean the persons described in and appointed pursuant to the provisions of Section 10.1.

Section 2.57   Rollover Contribution shall mean a rollover amount or a rollover contribution, as defined in Section 402(c) of the Internal Revenue Code and made pursuant to Section 4.9.

Section 2.58   Separation from Service shall mean termination of employment with an Employer or Affiliated Employer for any reason; provided, however, that no Separation from Service shall be deemed to occur upon an Employee's transfer from the employ of one Employer or Affiliated Employer to another Employer or Affiliated Employer.

Section 2.59   SmartInvestor Employer Contribution shall mean a contribution made pursuant to Section 4.3(b)(ii).

Section 2.60   Top Paid Group means the top 20 percent of Employees who performed services for the Employer during the applicable year, ranked according to the amount of 415 Compensation (determined for this purpose in accordance with Section 2.36) received from the Employer during such year.  All Affiliated Employers shall be taken into account as a single employer, and Leased Employees within the meaning of Internal Revenue Code Sections 414(n)(2) and 414(o)(2) shall be considered Employees unless such Leased Employees are covered by a plan described in Internal Revenue Code Section 414(n)(5) and are not covered in any qualified plan maintained by the Employer.  Employees who are non-resident aliens and who received no earned income (within the meaning of Internal Revenue Code Section 911(d)(2)) from the Employer constituting United States source income within the meaning of Internal Revenue Code Section 861(a)(3) shall not be treated as Employees. Additionally, for the purpose of determining the number of active Employees in any year, the

following additional Employees shall also be excluded; however, such Employees shall still be considered for the purpose of identifying the particular Employees in the Top Paid Group:

    (i)      Employees with less than six (6) months of service;

    (ii)     Employees who normally work less than 17 ½ hours per week;

    (ii)     Employees who normally work less than six (6) months during a year; and

    (iv)    Employees who have not yet attained age 21.

In addition, if 90 percent or more of the Employees of the Employer are covered under agreements the Secretary of Labor finds to be collective bargaining agreements between Employee representatives and the Employer, and the Plan covers only Employees who are not covered under such agreements, then Employees covered by such agreements shall be excluded from both the total number of active Employees as well as from the identification of particular Employees in the Top Paid Group.

The foregoing exclusions set forth in this Section shall be applied on a uniform and consistent basis for all purposes for which the Internal Revenue Code Section 414(g) definition is applicable.

Section 2.61   Trust or Trust Fund shall mean the fund and trust known as the Compass SmartInvestor 401(k) Plan Trust, maintained and held by the Trustee in accordance with the terms of the trust agreement which constitutes a part of this Plan.

Section 2.62   Trustee shall mean the person or persons, corporate or individual, appointed from time to time, by the Board of Directors of the Company to administer and hold the Trust.

Section 2.63   USERRA shall mean the Uniformed Services Employment and Reemployment Rights Act of 1994. Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Internal Revenue Code Section 414(u).

Section 2.64   Year of Benefit Service shall mean a Plan Year for which a Participant is credited with 1,000 or more Hours of Service and is employed by an Employer on the last day of the Plan Year.

Section 2.65   Year of Participation Service shall mean (a) the twelve (12) month period beginning on an Employee's Date of Employment if, in that twelve (12) month period, the Employee is credited with 1,000 or more Hours of Service, or (b) the first Plan Year beginning after his Date of Employment in which he is credited with 1,000 or more Hours of Service. For the purpose of calculating an Employee's Years of Participation Service, all service with the Employer and any corporation which is, with the Employer, a member of a controlled group of corporations (as defined in Section 414(b) of the Internal Revenue Code) and any trade or business (whether or not incorporated) which is, with the Employer, under common control (as defined in Section 414(c) of the Internal Revenue Code); any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Internal Revenue Code) which includes the Employer; and any other entity required to be aggregated with the Employer pursuant to regulations under Section 414(o) of the Internal Revenue Code shall be treated as service with the Employer.

In the case of a Participant who does not have any vested interest in his Account balance derived from Employer contributions, Years of Participation Service before a period of consecutive One-Year Breaks in Service will not be taken into account in computing eligibility service if the number of consecutive One-Year Breaks in Service in such period equals or exceeds the greater of five (5) or the aggregate number of Years of Participation Service. Such aggregate number of Years of Participation Service will not include any Years of Participation Service disregarded under the preceding sentence by reason of prior One-Year Breaks in Service.

For purposes of calculating an Employee's Years of Participation Service, all continuous service from the Employee's most recent hire date with a predecessor employer as of the date such predecessor employer was merged with or acquired by the Employer shall be treated as service with the Employer if such Employee was employed by the predecessor employer on the merger or acquisition date.

Effective January 1, 2013, for every twelve (12) months of service (whether continuous or cumulative), an Employee shall be credited with a Year of Participation Service as of the beginning of the payroll period coinciding with or next following his completion of such twelfth (12th) month of service regardless of the number of Hours of Service completed during such period. Such twelve (12) month period shall be defined as a "Period of Service." Such Period of Service shall end on the date a One-Year Break in Service begins. The first day of employment or reemployment is the first day the Employee performs an Hour of Service. An Employee who incurs a Period of Severance of twelve (12) months or less will also receive service-spanning credit for all such Periods of Severance. A Participant's whole year Periods of Service is equal to the sum of all full and partial periods of service, whether or not such service is continuous or contiguous, and whether or not such service is actual service or imputed service (under the service-spanning rule above), expressed in the number of whole years represented by such sum. Each Employee will be credited with a month of service for each month in which the Employee performs an Hour of Service.

As a result of the change of the method of crediting service from the hour of service method to the elapsed time method as set forth in amendment and restatement of the Plan dated January 1, 2013, an Employee will receive credit for a Period of Service consisting of:

(a)     A number of years equal to the number of Years of Participation Service credited to the Employee before the computation period during which the amendment occurred; and

(b)     The greater of (1) the Periods of Service that would be credited to the Employee under the elapsed time method for service during the entire computation period in which the amendment occurred or (2) the service taken into account under the hour of service method as of the date of the amendment.

In addition, the Employee will receive credit for service subsequent to the amendment commencing on the day after the last day of the computation period in which the amendment occurred.

For purposes of this Section 2.65, "Period of Severance" shall mean a continuous period of time during which an Employee is not employed by the Employer. Such period begins on the date the Employee retires, quits or is discharged, or if earlier, the twelve (12) month anniversary of the date on which the Employee was otherwise first absent from service.

Section 2.66     Year of Service For purposes of determining the amount of SmartInvestor Employer Contributions in Section 4.3(b)(ii), a Year of Service shall be determined as follows:

(i)     A Participant who was a participant in the Retirement Plan on December 31, 2002, or was scheduled to be a participant on January 1, 2003, will be credited with the number of Years of Service credited to him under the Retirement Plan on December 31, 2002 for benefit purposes.  Thereafter, for every twelve (12) months of service (whether continuous or cumulative), such a Participant shall be credited with a year of service as of the beginning of the payroll period coinciding with or next following his completion of such twelfth (12th) month of service regardless of the number of Hours of Service completed during such period.

(ii)     In the case of Employees who were not participants in the Retirement Plan on December 31, 2002, or were scheduled to be participants on January 1, 2003, (including Former Participants who are rehired), they shall be credited with a year of service as of the beginning of the payroll period coinciding with or next following the completion of each twelfth (12th) month of service regardless of the number of Hours of Service completed during such period.

(iii)     For purposes of calculating an Employee's Years of Service, all continuous service from the Employee's most recent hire date with a predecessor employer as of the date such predecessor employer was merged with or acquired by the Employer shall be treated as service with the Employer if such Employee was employed by the predecessor employer on the merger or acquisition date.

(iv)     In the case of a former Participant who is later rehired, he shall be credited for any Years of Service earned prior to the date of such former Participant's termination of employment.

(v)     For purposes of calculating an Employee's Years of Service, all continuous service from the Employee's most recent hire date with one of the entities listed in Section 3.1(a)(iv) shall be treated as service with the Employer.

(vi)     For purposes of calculating an Employee's Years of Service, all continuous service from the Employee's most recent hire date with BBVA Bancomer USA ("BBVA Bancomer") shall be treated as service with the Employer if such Employee was employed by BBVA Bancomer on the date of BBVA Bancomer was merger into Compass Bank.

(vii)     For purposes of calculating an Employee's Years of Service, all continuous service from the Employee's most recent hire date with a failed bank whose assets are purchased by Compass Bank in 2009 pursuant to a purchase and assumption agreement in which the Federal Deposit Insurance Corporation is a party thereto shall be treated as service with the Employer if such Employee was employed by such failed bank on the date such failed bank's assets are purchased by Compass Bank.

(viii)     For purposes of calculating an Employee's Years of Service, all continuous service from the Employee's most recent hire date with a U.S. affiliate or office of BBVA ("BBVA USA Company") shall be treated as service with the Employer; provided, however, that any service by the Employee with a BBVA USA Company during which the Employee is employed as an expatriate shall not be treated as service with the Employer for purposes of calculating an Employee's Years of Service.   Service with a non-BBVA USA

Company will not be treated as service with the Employer for purposes of calculating an Employee's Years of Service.

Section 2.67    Year of Vesting Service shall have the meaning set forth in Section 7.6 and Section 7.7.

## ARTICLE III
## PARTICIPATION

Section 3.1    Eligibility to Participate.

(a)    Each Eligible Employee shall be eligible to defer his Compensation as provided in Article IV upon his commencement of employment and shall be eligible to receive Employer Matching Contributions described in Section 4.3(a) and Discretionary Employer Non-Matching Contributions described in Section 4.3(b)(i) effective as of the first day of the month coinciding with or immediately following when such Employee has completed one Year of Participation Service, provided such Employee is still employed by an Employer on such date; further provided that there shall be excluded from eligibility to participate in the salary reduction feature described in Section 4.2, and to receive Employer Matching Contributions described in Section 4.3(a) and Discretionary Employer Non-Matching Contributions described in Section 4.3(b)(i), any Employee employed by BBVA Bancomer, S.A., BBVA Bancomer Securities International, Inc., Bancomer Transfer Services, Inc., Bancomer Financial Services, Inc., BBVA Bancomer Foreign Exchange, Inc., BBVA Bancomer Financial Holdings, Inc., and BBVA USA, Inc.

(b)    Each Eligible Employee shall be eligible to receive SmartInvestor Employer Contributions described in Section 4.3(b)(ii) effective as of the first day of the month coinciding with or immediately following when such Employee has completed one Year of Participation Service, provide such Employee is still employed by an Employer on such date; further provided there shall be excluded from eligibility to receive the SmartInvestor Employer Contributions described in Section 4.3(b)(ii) any Employee (i) who elected to continue his participation in the Compass Retirement Plan (the "Retirement Plan") after December 31, 2002, pursuant to an election granted to Participants in the Retirement Plan, (ii) who is employed by an insurance affiliate, or insurance division of an affiliate, of the Company on or after December 31, 2001, plus all Employees who are employed by any affiliate the predominant business of which is investment advisory or investment management activities; provided however, the foregoing exclusion from eligibility shall not affect an Employee's eligibility to receive SmartInvestor Employer Contributions by virtue of his employment in any other capacity in a dual or multiple employment arrangement.  For purposes of Section 3.1(b), the term "Eligible Employee" shall include any individual described in Section 2.22 and shall also include any employee of an Adopting Company that had adopted the SmartInvestor Retirement Plan in writing prior to December 31, 2012; provided such employee would not be otherwise excluded pursuant to subparagraphs (i) and (ii) in this Section 3.1(b).

Section 3.2    Participation upon Re-Employment.  A former Participant who incurs one or more One-Year Breaks in Service and who had a vested interest in his Accounts shall be eligible to participate in the Plan immediately upon returning to the employ of an Employer.  A former Participant who did not have a vested interest in any portion of his Account balance

derived from Employer contributions at the time of termination of service will be considered a new Employee, for eligibility purposes, if the number of consecutive One-Year Breaks in Service equals or exceeds the greater of five or the aggregate number of Years of Participation Service before such One-Year Break in Service.   If such former Participant's Years of Participation Service before termination of service may not be disregarded pursuant to the preceding sentence, such former Participant shall participate immediately upon re-employment.

Section 3.3     Cessation of Participation.   A Participant ceases to be a Participant when all assets in his Accounts have been distributed or forfeited.

Section 3.4     Eligible Class of Employees.   In an event that a Participant becomes ineligible to participate because he is no longer a member of the class of persons eligible to participate, but he has not incurred a One-Year Break in Service, such individual shall participate immediately upon his return to an eligible class of persons.   If such Participant incurs a One-Year Break in Service while he is not a member of an eligible class of persons, his eligibility to participate shall be determined pursuant to Section 3.1.   In the event that an individual who is not a member of an eligible class of persons becomes a member of an eligible class, then such individual shall participate immediately if such individual has satisfied the service requirements and would have previously become a Participant had he been in an eligible class.

ARTICLE IV
EMPLOYER CONTRIBUTIONS

Section 4.1     Contribution Formula.   The Employer shall contribute to the Plan as follows:

(i)     The amount of the total salary reduction elections of all eligible Participants made pursuant to Section 4.2, which amount shall be deemed the Elective Employer Contribution, plus

(ii)     The Safe-Harbor Matching Contribution described in Section 4.3(a), plus

(iii)     A discretionary amount determined each year by the Employer pursuant to Section 4.3(b)(i), which amount shall be a Discretionary Employer Non-Matching Contribution, plus

(iv)     The SmartInvestor Employer Contribution described in Section 4.3(b)(ii).

Section 4.2     Participant's Salary Reduction Election.

(a)     For purposes of this Section 4.2, for Eligible Employees who are eligible to participate pursuant to Section 3.1(a), each such Eligible Employee may elect to defer his Compensation in any whole percentage amount which percentage is not less than 1% nor more than 75% of his Compensation by filing an election for payroll deduction for such amount for this purpose.   A Participant's initial election for payroll deduction (and any subsequent modification thereto) shall become effective as soon as it administratively feasible to process and implement such election for payroll deduction or subsequent modification thereto, provided that no such election can be applied to Compensation which is currently available on or before the date the Participant executed such election.

The amount by which Compensation is reduced shall be that Participant's Deferred Compensation and shall be treated as an Elective Employer Contribution and allocated to the Participant's Employee Contribution Account.   Any salary deferral election made by a

Participant under this Section shall be irrevocable for the Plan Year, or portion thereof, for which it is to be effective, except that (1) any salary deferral election may be amended prior to the first day of a payroll period upon thirty (30) days' notice (or such lesser period as shall be administratively feasible to be effective as of the first day of a payroll period) to change the whole deferral percentage amount applicable to Compensation payable for the remaining portion of the Plan Year and (2) a Participant may elect at any time to completely discontinue the elective deferrals of Compensation payable during the remainder of the Plan Year upon thirty (30) days' notice (or such lesser period as shall be administratively feasible to be effective as of the first day of a payroll period). A Participant's election is subject to the maximum limitations of Section 4.2(e) and such election may not cause the Plan to violate the provisions of Section 6.5 and Section 6.7.

Effective January 1, 2002, each Catch-Up Eligible Participant shall be eligible to make Catch-Up Contributions during the Plan Year in accordance with, and subject to the limitations of, Code Section 414(v). Such Catch-Up Contributions shall not be taken into account for purposes of Code Sections 402(g) and 415(c). Catch-Up Contributions shall be a percentage of Compensation for each payroll period not to exceed the applicable dollar limit under Code Section 414(v), pursuant to procedures established by the Plan Administrator. The Plan shall not be treated as failing to satisfy the provisions of the Plan implementing the requirements of Code Section 401(k)(3), 401(k)(12), 416 or 410(b), as applicable, by reason of the making of such Catch-Up Contributions.

(b) A Participant who has not elected to defer his Compensation may later elect to defer his Compensation. Such election may be made prior to the first day of a payroll period upon thirty (30) days' notice (or such lesser period as shall be administratively feasible to be effective as of the first day of the payroll period).

(c) The balance in each Participant's Employee Contribution Account shall be nonforfeitable at all times and shall not be subject to forfeiture for any reason.

(d) Amounts held in the Employee Contribution Account may not be distributable (including any offset of loans) earlier than:

(1) a Participant's severance of employment;

(2) a Participant's Disability Retirement Date;

(3) a Participant's death;

(4) the proven hardship of a Participant as described in Section 8.14;

(5) a Participant's attainment of age 59 ½ in accordance with Section 8.15;

(6) the termination of the Plan without the existence at the time of Plan termination of an alternative defined contribution plan or the establishment of an alternative defined contribution plan by the Employer or an Affiliated Employer within the period ending twelve months after distribution of all assets from the Plan maintained by the Employer. For this purpose, a defined contribution plan is not treated as an alternative defined contribution plan if the plan is an employee stock ownership plan (as defined in Code Section 4975(e)(7) or 409), a simplified employee pension plan (as defined in Code Section 408(k)), a SIMPLE IRA plan

(as defined in Code Section 408(p)), a plan or contract that satisfies the requirements of Code Section 403(b), or a plan that is described in Code Sections 457(b) or 457(f). Furthermore, if at all times during the 24-month period beginning 12 months before the date of the Plan's termination, fewer than 2% of the Participants in the Plan as of the date of Plan termination are eligible under the other defined contribution plan, then the other defined contribution plan is not an alternative defined contribution plan.

(7)   the date of disposition by the Employer to an entity that is not an Affiliated Employer of substantially all of the assets (within the meaning of Code Section 409(d)(2)) used in a trade or business of such corporation if such corporation continues to maintain this Plan after the disposition with respect to a Participant who continues employment with the corporation acquiring such assets; or

(8)   the date of disposition by the Employer or an Affiliated Employer who maintains the Plan of its interest in a subsidiary (within the meaning of Code Section 409(d)(3)) to an entity which is not an Affiliated Employer but only with respect to a Participant who continues employment with such subsidiary.

(e)   For each Plan Year, a Participant's Deferred Compensation made under this Plan and all other plans, contracts or arrangements of the Employer maintaining this Plan during any calendar year shall not exceed the limitation imposed by Code Section 402(g), as in effect at the beginning of such calendar year, except to the extent permitted under Code Section 414(v), if applicable. If such dollar limitation is exceeded, a Participant may have the excess amount distributed as provided in (f) below.

(f)   If a Participant's Deferred Compensation under this Plan together with any elective deferrals (as defined in Regulations 1.402(g)-1(b) and 1.414(v)-1(g)(2)) under another qualified cash or deferred arrangement (as described in Code Section 401(k)), a simplified employee pension (as described in Code Section 408(k)(6)), a simple individual retirement account plan (as described in Code Section 408(p)), a salary reduction arrangement (within the meaning of Code Section 3121(a)(5)(D)), a deferred compensation plan under Code Section 457(b), or a trust described in Code Section 501(c)(18) cumulatively exceed the limitation imposed by Code Section 402(g) (as adjusted annually in accordance with the method provided in Code Section 415(d) pursuant to Regulations) for such Participant's taxable year, the Participant may, not later than March 1st following the close of the Participant's taxable year, notify the Plan Administrator in writing of such excess and request that the Participant's Deferred Compensation under this Plan be reduced by an amount specified by the Participant. In such event, the Plan Administrator may direct the Trustee to distribute such excess amount (and any income allocable to such excess amount) to the Participant not later than the first April 15 following the close of the Participant's taxable year. Any distribution of less than the entire amount of Excess Deferred Compensation and income shall be treated as a pro rata distribution of Excess Deferred Compensation and income. The amount distributed shall not exceed the Participant's Deferred Compensation under the Plan for the taxable year (and any income allocable to such excess amount). Any distribution on or before the last day of the Participant's taxable year must satisfy each of the following conditions:

(1)     the distribution must be made after the date on which the Plan received the Excess Deferred Compensation;

(2)     the Participant shall designate the distribution as Excess Deferred Compensation; and

(3)     the Plan must designate the distribution as a distribution of Excess Deferred Compensation.

Any distribution made pursuant to this paragraph (f) shall be made first from unmatched Deferred Compensation and, thereafter, from Deferred Compensation which is matched. Matching contributions which relate to such Deferred Compensation shall be treated as a Forfeiture. Distributions of Excess Deferred Compensation must be adjusted for income (gain or loss), including, to the extent required by Regulations, an adjustment for income for the period between the end of the Plan Year and the date of the distribution (the "gap period"); provided, however, that allocable income for the gap period will not be calculated and distributed beginning January 1, 2008. The Plan Administrator has the discretion to determine and allocate income using any of the methods set forth below:

(1)     Reasonable method of allocating income. The Plan Administrator may use any reasonable method for computing the income allocable to Excess Deferred Compensation, provided that the method does not violate Code Section 401(a)(4), is used consistently for all Participants and for all corrective distributions under the Plan for the Plan Year, and is used by the Plan for allocating income to Participant's accounts. A Plan will not fail to use a reasonable method for computing the income allocable to Excess Deferred Compensation merely because the income allocable to Excess Deferred Compensation is determined on a date that is no more than seven (7) days before the distribution.

(2)     Alternative method of allocating income. The Plan Administrator may allocate income to Excess Deferred Compensation for the Plan Year by multiplying the income for the Plan Year allocable to the Elective Employer Contributions, by a fraction, the numerator of which is the Excess Deferred Compensation for the Employee for the Plan Year, and the denominator of which is the sum of the account balance attributable to Elective Employer Contributions.

(3)     Safe harbor method of allocating gap period income. The Plan Administrator may use the safe harbor method in this paragraph to determine income on Excess Deferred Compensation for the gap period. Under this safe harbor method, income on Excess Deferred Compensation for the gap period is equal to ten percent (10%) of the income allocable to Excess Deferred Compensation for the Plan Year that would be determined under paragraph (2) above, multiplied by the number of calendar months that have elapsed since the end of the Plan Year. For purposes of calculating the number of calendar months that have elapsed under the safe harbor method, a corrective distribution that is made on or before the fifteenth (15th) day of a month is treated as made on the last day of the preceding month and a distribution made after the fifteenth day of a month is treated as made on the last day of the month.

(4)     Alternative method for allocating Plan Year and gap period income.  The Plan Administrator may determine the income for the aggregate of the Plan Year and the gap period, by applying the alternative method provided by paragraph (2) above to this aggregate period.   This is accomplished by (a) substituting the income for the Plan Year and the gap period, for the income for the Plan Year, and (b) substituting Elective Employer Contributions for the Plan Year and the gap period, for Elective Employer Contributions for the Plan Year in determining the fraction that is multiplied by that income.

(g)     At the Normal Retirement Date, or such other date when the Participant shall be entitled to receive benefits, the fair market value of the Participant's Employee Contribution Account shall be used to provide additional benefits to the Participant pursuant to Article VIII.

(h)     At least thirty (30) days, but not more than ninety (90) days, before the beginning of the Plan Year, will provide each eligible Employee a comprehensive notice, which notice is hereby incorporated by reference and made a part of the Plan, of the Employee's rights and obligations under the Plan, written (or in such other form as permitted by the Internal Revenue Service) in a manner calculated to be understood by the average Employee.  If an Employee becomes eligible after the ninetieth (90th) day before the beginning of the Plan Year and does not receive the notice for that reason, the notice must be provided no more than ninety (90) days before the Employee becomes eligible but not later than the date the Employee becomes eligible.  In addition to any other election periods provided under this Section 4.2, each eligible Employee may make or modify a salary reduction election during the thirty (30) day period immediately following receipt of the notice described above.

(i)     In any case, where any of the foregoing provisions of this Section 4.2 are not in conformity with regulations of the Department of the Treasury that are from time to time promulgated, the nonconforming provisions may be amended retroactively to assure conformity.

Section 4.3     <u>Non-Elective Employer Contributions.</u>

(a)     <u>Employer Matching Contribution</u>.  For purposes of this Section 4.3(a), on behalf of Eligible Employees who are eligible to participate pursuant to Section 3.1(a), the Employer shall contribute to the Plan a matching contribution equal to the sum of 100% of the amount of the Participant's Deferred Compensation (including Catch-Up Contributions made pursuant to Section 414(v) of the Code) that is not in excess of 3% of the Participant's Compensation, plus 50% of the amount of the Participant's Deferred Compensation (including Catch-Up Contributions made pursuant to Section 414(v) of the Code) that exceeds 3% of the Participant's Compensation but not in excess of 5% of the Participant's Compensation. Contributions made to the Plan pursuant to this this Section 4.3(a) are intended to comply with the ADP and ACP safe-harbor methods permitted by Code Sections 401(k)(12) and 401(m)(11) and shall be referred to herein as "Safe-Harbor Matching Contributions."  Notwithstanding any provision in this Plan to the contrary, all Safe-Harbor Matching Contributions shall be fully vested and non-forfeitable at all times, subject to the same withdrawal restrictions that are applicable to a Participant's Employee Contribution Account as set forth in Section 4.2(d) of the Plan, determined and contributed to the Plan as soon as administratively practicable following

the end of each payroll period, and shall not be subject to the Participant being employed on the last day of the Plan Year or a requirement that the Participant complete a certain number of Hours of Service during the Plan Year.

    (b)    <u>Employer Non-Matching Contributions.</u>

        (i)    Discretionary Employer Non-Matching Contribution.  On behalf of Eligible Employees who are eligible to participate pursuant to Section 3.1(a), the Employer may make an additional contribution in such amount as determined in the sole discretion of the Board of Directors of the Employer or of the Company. The amount of an Employer's Discretionary Non-Matching Contribution shall be established by resolution of the Board of Directors and the substance of the resolution will be communicated to the Participants.

        (ii)    SmartInvestor Employer Contribution.  For purposes of this Section 4.3(b)(ii), all Eligible Employees who are eligible to participate in the Plan pursuant to Section 3.1(b) are entitled to receive a SmartInvestor Employer Contribution.  On behalf of each such Eligible Employee, the Employer shall contribute to the Plan as follows:

| Years of Service | Employer Contribution |
| --- | --- |
| 1 - 3 | 2% of Compensation |
| 4 - 7 | 3% of Compensation |
| 8 or more | 4% of Compensation |

    The SmartInvestor Employer Contributions shall be made on behalf of such Eligible Employees for each payroll period regardless of Hours of Service credited during the Plan Year.  Years of Service for purposes of this Section 4.3(b)(ii) shall be determined under Section 2.66 hereof.

    (c)    <u>Form of Employer Matching and Non-Matching Contributions</u>.  Prior to August 1, 2007, all Employer Contributions, including Employer Matching Contributions, Employer Non-Matching Contributions, and Qualified Non-Elective Contributions were invested in the Employer Company Stock Fund without regard to the investment direction of any Participant in respect of contributions made on his behalf.  Effective as of August 1, 2007, all Employer Matching Contributions, including Employer Matching Contributions, Employer Non-Matching Contributions and Qualified Non-Elective Contributions, are to be made in cash and shall be invested based upon the investment directions of the Participants in the same manner and subject to the same procedures as are applicable to the investment of Elective Employer Contributions under Article V hereof.

    Section 4.4    <u>Amendment or Termination With Respect to Contribution</u>.  Each Employer intends to make annual contributions to the Trust during the continuation of the Plan subject to the limitations set out herein; provided, however, that the Employer undertakes no binding obligation to make payments of any nature to the Trust, and that this instrument shall not be construed as any contractual liability on the part of an Employer so to do.  Each Employer

expressly reserves the right to discontinue contributions to the Trust at any time prior to the close of any Plan Year.

Section 4.5    Limitation on Amount to be Contributed.  Each Employer shall be limited to the making of a contribution for a Plan Year which shall not be in excess of the maximum amount which the Employer is permitted to deduct as an expense for that Plan Year for federal income tax purposes.

Section 4.6    Time of Payment of Contribution.  Each Employer shall make payment of its contribution for any Plan Year on the date or dates designated by the Company; provided, however, that the total amount of all contributions for any Plan Year shall be made in full on or before the time prescribed by law for filing of the federal income tax return of the Employer, including extensions.  All contributions under this Plan shall be paid to the Trustee and deposited in the Trust.

Section 4.7    Time of Payment of Elective Employer Contribution.  The Employer shall pay to the Trustee its Elective Employer Contribution to the Plan for each Plan Year as soon as administratively practicable after the payroll period for which such contributions were withheld. The provisions of Department of Labor regulations 2510.3-102 are hereby incorporated by reference.

Section 4.8    Permanent Discontinuance of Contribution.   In the event an Employer should permanently discontinue making contributions to the Plan for any reason, all sums allocated to its Participants will vest irrevocably in them and will be distributed as the Retirement Committee shall decide.  In no event will all or any portion of the contribution made by an Employer under this Plan reinvest in the Employer in the event that contributions should be permanently discontinued.

Section 4.9    Rollover Amount from Other Plans.

(a)    An Employee eligible to participate in the Plan, regardless of whether he has satisfied the participation requirements of Article III or regardless of whether he has elected to make salary reduction contributions hereunder, may if permitted by the Retirement Committee rollover to the Trust Fund amounts from an eligible retirement plan provided that the trust fund from which the funds are transferred permits the rollover to be made and the rollover will not jeopardize the tax exempt status of the Plan and Trust or create adverse tax consequences for the Employer.

(b)    For purposes of this Section, the following definitions shall apply:

(1)    A "rollover" means: (i) amounts transferred to this Plan directly from another "eligible retirement plan;" (ii) distributions received by an Employee from other "eligible retirement plans" which are eligible for tax free rollover to an "eligible retirement plan" and which are transferred by the Employee to this Plan within sixty (60) days following receipt thereof; (iii) amounts transferred to this Plan from a conduit individual retirement account provided that the conduit individual retirement account has no assets other than assets which (A) were previously distributed to the Employee by another "eligible retirement plan," (B) were eligible for tax free rollover to an "eligible retirement plan" and (C) were deposited in such conduit individual retirement account within sixty (60) days of receipt thereof; (iv) amounts distributed to the Employee from a

conduit individual retirement account meeting the requirements of clause (iii) above, and transferred by the Employee to this Plan within sixty (60) days of receipt thereof from such conduit individual retirement account; and (v) any other amounts which are eligible to be rolled over to this Plan pursuant to the Code.

(2)      An "eligible retirement plan" means an individual retirement account described in Code Section 408(a), an individual retirement annuity described in Code Section 408(b) (other than an endowment contract), a qualified trust (an employees' trust described in Code Section 401(a) which is exempt from tax under Code Section 501(a)), an annuity plan described in Code Section 403(a), an eligible deferred compensation plan described in Code Section 457(b) which is maintained by an eligible employer described in Code Section 457(e)(1)(A), and an annuity contract described in Code Section 403(b).

(c)      Trustee to trustee transfers will be permitted only in the discretion of the Retirement Committee.  The Retirement Committee shall develop such procedures, and may require information from an Employee desiring to make such a rollover, as it deems necessary or desirable to determine that the proposed rollover will meet the requirements of this Section.  Upon approval by the Retirement Committee, the amount rolled over shall be deposited in the Trust Fund and shall be credited to a Rollover Contribution Account.  Such account shall be one hundred percent (100%) vested in the Employee, shall share in allocations of income and loss and appreciation and depreciation.  Upon termination of employment, the total amount of the Employee's Rollover Contribution Account shall be distributed in accordance with Article VIII below.   Furthermore, amounts in the Participant's Rollover Contribution Account, with respect to distributions made on and after January 1, 2002 to Participants who separate from service on and after January 1, 2002 shall not be considered as part of a Participant's benefit in determining whether the $5,000 threshold has been exceeded for purposes of the timing or form of payments under the Plan. Notwithstanding the foregoing, amounts in a Participant's Rollover Contribution Account, with respect to distributions made on or after March 28, 2005 shall be considered in determining whether a mandatory involuntary cash-out distribution of benefits may be made without Participant consent.

(d)      Upon such a rollover by an Employee who is otherwise eligible to participate in the Plan but who has not yet completed the participation requirements of Section 3.1, or who has elected not to make salary reduction contributions hereunder, his Rollover Contribution Account shall represent his sole interest in the Plan until he becomes a Participant.

(e)      The Retirement Committee shall develop such procedures, and may require information from an Employee desiring to make such a transfer, as it deems necessary or desirable to determine that the proposed transfer will meet the requirements of this Section.  Upon approval by the Retirement Committee, the amount transferred shall be deposited in the Trust Fund and shall be credited to the Employee's Employee Contribution Account.  Such funds shall be one hundred percent (100%) vested in the Employee.  The Employee shall thereafter be entitled to direct the funds in the manner and subject to the conditions and restrictions as apply to all Participants with respect to their Employee Contribution Accounts in Article V.   The rollover amount shall share in allocations of income and loss and appreciation and depreciation in accordance with Section 6.3, but shall

not share in Employer Matching or Discretionary Employer Contribution allocations. Upon termination of employment, the rollover amount held in the Employee Contribution Account shall be distributed in accordance with Article VIII below.

(f)     Upon such a transfer by an Employee who is otherwise eligible to participate in the Plan but who has not yet completed the participation requirements of Section 3.1, or who has elected not to make salary reduction contributions hereunder, his rollover contribution to his Employee Contribution Account shall represent his sole interest in the Plan until he becomes a Participant. Regardless of any language to the contrary, the Plan will not accept trustee to trustee transfers from a money purchase pension plan or defined benefit pension plan.

(g)     For taxable years beginning after December 31, 2006, a participant may elect to transfer employee (after-tax) or Roth elective deferral contributions by means of a direct rollover to a qualified plan or to a 403(b) plan that agrees to account separately for amounts so transferred, including accounting separately for the portion of such distribution which is includible in gross income and the portion of such distribution which is not includible in gross income.

Section 4.10    Qualified Military Service. Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with § 414(u) of the Internal Revenue Code.

Section 4.11 Qualified    Voluntary    Employee    Contributions    and    After-Tax Contributions.

(a)     Any voluntary employee contribution made in cash after December 31, 1981 attributable to taxable years ending before January 1, 1987, shall be treated as a "Qualified Voluntary Employee Contribution" within the meaning of Code Section 219(e)(2) as it existed prior to the enactment of the Tax Reform Act of 1986, and held in a separate Qualified Voluntary Employee Contribution Account.

(b)     The balance in each Participant's Qualified Voluntary Employee Contribution Account shall be fully vested at all times and shall not be subject to forfeiture for any reason.

(c)     A Participant may, upon written request delivered to the Administrator, make withdrawals from his Qualified Voluntary Employee Contribution Account. Any distribution shall be made in a manner which is consistent with and satisfies the provisions of Article VIII, including, but not limited to, all notice and consent requirements of Code Section 411(a)(11) and the Regulations thereunder.

(d)     At Normal Retirement Date, or such other date when the Participant or his Beneficiary shall be entitled to receive benefits, the fair market value of the Qualified Voluntary Employee Contribution Account shall be used to provide additional benefits to the Participant or his Beneficiary pursuant to Article VIII.

(e)     In the event a qualified pension plan containing after-tax employee contributions is merged into this Plan or consolidated into the Plan, or transfers its assets and liabilities to this Plan, then, with respect to such amounts that are after-tax employee contributions which are transferred to this Plan pursuant to such merger, consolidation or transfer of assets and liabilities only, the Plan shall treat and account for such after-tax

employee contributions in the same manner as Qualified Voluntary Employee Contributions.

## ARTICLE V
## INVESTMENT OF CONTRIBUTIONS

Section 5.1   Investment Funds.   Elective Employer Contributions and Non-Elective Employer Contributions which are paid to the Trustee shall be added to such one or more Investment Funds which are selected by the Retirement Committee and which may be any or all of separately managed portfolios, commingled funds, registered investment company shares (mutual fund shares), or Company Stock (the "Company Stock Fund") in such proportions and amounts as may be determined in accordance with this Article V.

Investment Funds other than those selected initially may subsequently be established and maintained hereunder, pursuant to the directions of the Retirement Committee.   In addition, Investment Funds initially or subsequently established hereunder may, pursuant to directions of the Retirement Committee, be withdrawn from time to time.   In the event that an Investment Fund is added or an existing Investment Fund is withdrawn, the Participants shall be permitted to make a transfer to the new Investment Fund or from a terminated Investment Fund in accordance with procedures established by the Retirement Committee.

Section 5.2   Investment Directions by Participants.   Each Participant shall direct, at the time he elects to participate in the Plan, that the Elective Employer Contributions made on his behalf be invested in one or more of the Investment Funds, provided the election is a whole percentage amount subject to any minimum percentage amount as shall be specified by the Retirement Committee.

Section 5.3   Reinvestment of Fund Earnings.   Effective as of August 1, 2007, a Participant is no longer permitted to direct that the Elective Employer Contributions and Non-Elective Employer Contributions made on his or her behalf be invested into the Company Stock and any investment election made by a Participant which directs the investment of any portion of such Elective Employer Contributions and Non-Elective Employer Contributions into the Company Stock Fund is void and the portion of such Participant's Elective Employer Contributions and Non-Elective Employer Contributions that would otherwise be invested in the Company Stock Fund shall be invested based upon the other investment directions of the Participant in the same manner and subject to the same procedures as are applicable to the investment of Elective Employer Contributions under this Article V.   Effective as of August 1, 2007, exchanges from other Investment Funds into the Company Stock are not permitted.

Effective as of August 1, 2007, dividends and other cash distributions received by the Trustee with respect to the Company Stock Fund are to be invested based upon the investment directions of the Participants in the same manner and subject to the same procedures as are applicable to the investment of Elective Employer Contributions under this Article V.   Interest, dividends and other distributions received by the Trustee with respect to Investment Funds other than the Company Stock Fund are to be reinvested in the Investment Fund from which such income or other distribution was derived.

Notwithstanding any provision in the Plan to the contrary, any Script Dividend (as defined below) that is payable with respect to the ADSs held by the Trustee in the Company

Stock Fund, shall be received by the Trustee in the form of additional ADSs.  For purposes of this Section 5.3, the term "Script Dividend" shall mean a dividend that becomes payable pursuant to the BBVA 2011 Dividend Option Plan which offers holders of ADSs the choice of receiving a dividend in the form of (i) cash, (ii) additional ADSs or (iii) the ability to instruct the U.S depositary with regard to the ADSs (currently BNY Mellon), to sell this right to receive additional ADSs on the Spanish stock exchange for cash.  In addition, the provisions of this Section 5.3 shall apply to all future Script Dividends to the extent such future Script Dividends are substantially similar to the Script Dividends paid pursuant to the BBVA 2011 Dividend Option Plan.

Section 5.4    Change of Investment Directions for Future Contributions.    Any investment direction given by a Participant shall continue in effect until changed by the Participant.  A Participant may change his investment direction by giving at least thirty (30) days (or such lesser number of days as the Retirement Committee may specify) prior notice directing that such contributions, beginning as soon as administratively possible after receipt of such notice by his Employer, be invested in one of the other ways specified in Section 5.1 provided the election is a whole percentage as to any one Investment Fund.  A new investment direction shall be on a form to be provided for the purpose and shall be signed by the Participant and delivered to his Employer, provided, however, the Retirement Committee is authorized to implement a voice response system or usage of the Internet for making investment electives in lieu of written investment directions.

Section 5.5    Change of Investment Directions for Existing Employee Contribution Account Funds.  A Participant (or his Beneficiary in the event of the death of a Participant) may direct, in accordance with the provisions of this Section 5.5, that all of his interest in the Investment Funds attributable to the Elective Employer Contributions made on his behalf, or any whole percentage of such total amount, to the credit of his Account be reduced to cash as of such date and such cash be invested by the Trustee as soon as administratively convenient in any other type of investment specified in Section 5.1 which the Participant (or his Beneficiary in the event of the death of a Participant) shall designate, provided the election is a whole percentage as to any one Investment Fund.  Direction shall be given in writing at least thirty (30) days (or such lesser number of days as the Retirement Committee may specify) prior to such date and shall be on a form to be provided by the Retirement Committee for the purpose.  The form shall be signed by the Participant (or his Beneficiary in the event of the death of a Participant) and delivered to his Employer.  The Retirement Committee is further authorized to implement a voice response system or usage of the Internet for making investment changes in lieu of a system of written authorizations.

Section 5.6    Diversification and Election Rights.    Effective as of July 1, 2007, Participants shall have the right to elect, at any time a transfer to any of the three or more investment funds selected by the Retirement Committee which funds may consist of the investment funds available for the investment of Elective Employer Contributions, of the value (determined as of the last preceding allocation date) of all or part of the number of shares of Company Stock credited to his Employer Contribution Account.  If the Participant elects such a transfer, the transfer will be made as soon as reasonably practicable after the election is made.

Section 5.7    Voting Company Stock.

(a)    Each Participant, and the Beneficiary of a deceased Participant, shall have the right, with respect to shares of Company Stock allocated to his Account, to direct the Trustee in writing as to the manner of voting such Company Stock at any annual or special meeting of the shareholders of the Company.  The Trustee shall send each Participant or Beneficiary a copy of the proxy solicitation material for the meeting, together with a form requesting confidential instructions to the Trustee on how to vote the Company Stock allocated to his Account.  The Trustee shall vote such Company Stock as so instructed.  The instructions received by the Trustee shall be held in strict confidence and shall not be divulged to anyone.  In the absence of timely instructions from the Participant or his Beneficiary on how to vote the Company Stock allocated to his Account, the Trustee will not vote such Company Stock.

(b)    Any shares of Company Stock that are not allocated to a Participant's Account shall be voted by the Trustee or not voted in the same proportion as it casts the votes and refrains from voting Company Stock allocated to the Accounts of Participants.

Section 5.8    Response to Tender or Exchange Offer.

(a)    Each Participant, and the Beneficiary of a deceased Participant, shall have the right, with respect to shares of Company Stock allocated to his Account, to direct the Trustee in writing as to the manner in which to respond to a tender or exchange offer with respect to Company Stock.  In the event of a tender or exchange offer for Company Stock, the Trustee shall inform each Participant or Beneficiary of the offer and shall send them all information distributed to shareholders of the Company in connection with the offer, together with a form requesting confidential instructions to the Trustee on how to respond to the offer with respect to shares of Company Stock allocated to his Account.  The Trustee shall respond to such offer as so instructed.  A Participant or Beneficiary's instructions shall remain in force until superseded in writing.  The instructions received by the Trustee shall be held in strict confidence and shall not be divulged to anyone; provided, however, that the Trustee shall advise the Company, upon request, of the total number of shares not subject to instructions to tender or exchange.  If the Trustee shall not receive timely instructions from a Participant or Beneficiary regarding how to respond to any tender or exchange offer with respect to shares of Company Stock allocated to his Account, the Trustee shall have no discretion in such matter and shall not tender or exchange the shares of Company Stock allocated to such Account.

(b)    The Trustee shall respond to a tender or exchange offer with respect to shares of Company Stock that are not allocated to a Participant's Account in the same proportion as it responds with respect to all shares of Company Stock allocated to the Accounts of Participants, including allocated shares with respect to which no instructions are received.

## ARTICLE VI
## ALLOCATIONS AND ADJUSTMENTS

Section 6.1    Employer Contribution and Forfeiture Allocation.  As of each Adjustment Date, the Elective Employer Contributions, the Employer Matching Contributions, the

SmartInvestor Employer Contribution, and as of the Anniversary Date, the Discretionary Employer Non-Matching Contributions (if any), shall be allocated to the Employee and Employer Contribution Accounts of Participants as follows:

(i) Elective Employer Contribution:  The Elective Employer Contribution (salary reduction) shall be allocated to each Participant's Employee Contribution Account in an amount equal to each such Participant's Deferred Compensation.

(ii)  Employer Non-Elective Contributions:

(a)  Matching Contribution:  The Safe Harbor Matching Contribution shall be allocated to each Participant's Employer Contribution Account as soon as administratively practicable following the end of each payroll period.

(b)  Discretionary Employer Non-Matching Contribution:  If the Employer chooses to make any Employer Non-Matching Contributions, these additional Employer contributions shall be allocated to the Employer Contribution Accounts of Participants, whether or not they elected to make salary reduction contributions that year, who are credited with a Year of Benefit Service for the Plan Year in the proportion that each such Participant's Compensation for the Plan Year bears to the total of all such Participant's Compensation for the Plan Year.

(c)  SmartInvestor Employer Contribution:  The SmartInvestor Employer Contribution shall be based upon the percentage of Compensation applicable to the Participant under Section 4.3(b)(ii) and shall be allocated to each eligible Participant's Employer Contribution Account as soon as administratively practicable following the end of each payroll period.

Each Participant will be furnished quarterly (or on such more frequent basis as authorized by the Retirement Committee) a statement of his Accounts.  It shall reflect all Elective Employer Contributions and Non-Elective Employer Contributions and the earnings and/or losses thereon.

Section 6.2    Participant Accounts.  The Plan Administrator shall account separately for each Investment Fund in respect of Elective Employer Contributions and Non-Elective Employer Contributions.  A Participant's Accounts shall show the balance standing to his credit.  The Retirement Committee shall establish accounting procedures for the purpose of debiting and crediting such Accounts to reflect transactions occurring between and as of the Adjustment Dates, and shall maintain adequate records for debiting the vested portion of Employer Company Stock Fund, and the average cost basis of shares of Company Stock credited to the respective Participants' Employee Company Stock Fund and Employer Company Stock Fund.  The Plan Administrator shall account separately for Employer Matching Contributions and Employer Non-Matching Contributions.  The maintenance of Accounts shall be for accounting purposes only and a segregation of the assets of the Trust Fund to each Account shall not be required.

Section 6.3    Account Adjustments.  A Participant's Account in respect of his interest in the Investment Funds other than the Company Stock Fund shall be expressed in dollars.  A Participant's Account as of each Adjustment Date in respect of his interest in the Investment Funds other than the Company Stock Fund shall be credited or charged, as the case may be, as soon as practicable after each Adjustment Date with the contributions, income, gains,

appreciation, losses, depreciation, expenses and other transactions for the quarterly period during which such credit or charge accrued. Such credits or charges to a Participant's Account shall be made in such proportions and by such method or formula as shall be deemed by the Retirement Committee to be necessary or appropriate to account for each Participant's proportionate beneficial interest in the Trust Fund in respect of his interest in the Investment Funds other than the Company Stock Fund as of the applicable Adjustment Date. Investments of the Investment Funds other than the Company Stock Fund shall be valued at their fair market values as of each Adjustment Date as determined by the Trustee and such valuation shall conclusively establish such value.

The Employee Company Stock Fund of each Participant shall be an Account credited as of each Adjustment Date with his shares of Company Stock (including fractional shares) purchased for his Account and shall be credited with dividends on Company Stock held in his Account for periods ending before August 1, 2007. A Participant's Account in respect of his interest in the Employee Company Stock Fund, shall be represented by shares of Company Stock (and fractions of shares carried to three decimal places).

The Employer Company Stock Account of each Participant shall be an Account credited as of each Adjustment Date with his allocated share of Company Stock (including fractional shares) purchased and paid for by the Trust or contributed in kind by an Employer as a result of Employer Matching Contributions and for periods prior to August 1, 2007, with dividends on Company Stock held in the Account derived from Employer Matching Contributions, and as of each Anniversary Date with his allocated share of Company Stock (including fractional shares) purchased and paid for by the Trust or contributed in kind by an Employer as the result of Employer Non-Matching Contributions, and for periods prior to August 1, 2007, with dividends on Company Stock held in the Account derived from Employer Non-Matching Contributions. A Participant's Account in respect of his interest in the Employer Company Stock Fund, shall be represented by shares of Company Stock (and fractions of shares carried to three decimal places). As soon as practicable after each Adjustment Date, each Participant's Account shall be adjusted as of such Adjustment Date to reflect any increase or any decrease (resulting from contributions, earnings, withdrawals and expenses charged to the Participant's Account or attributable to Employer Matching Contributions) in the number of shares credited to his Account for the period during which such increase or decrease occurred. As soon as practicable after each Anniversary Date (or Adjustment Date if so directed by the Plan Administrator), each Participant's Account shall be adjusted as of such Anniversary Date (or Adjustment Date if so directed by the Plan Administrator) to reflect any increase or decrease (resulting from contributions, earnings, Forfeitures and expenses charged to the Participant's Account or attributable to Employer Non-Matching Contributions) in the number of shares credited to his Account for the period during which such increase or decrease occurred. Such credits or charges to a Participant's Account shall be made in such proportions and by such method or formula as shall be deemed by the Retirement Committee to be necessary or appropriate to account for each Participant's proportionate beneficial interest in the Trust Fund in respect of his interest in his Account attributable to Employer Matching Contributions as of the Adjustment Date and in respect of his interest in his Account attributable to Employer Non-Matching Contributions as of each Anniversary Date (or Adjustment Date if so directed by the Plan Administrator).

Effective as of August 1, 2007, all dividends and cash distributions payable with respect to Company Stock held in the Employee Company Stock Fund are to be invested in accordance with the investment directions of the Participants in the same manner and subject to the same procedures as are applicable to the investment of Elective Employer Contributions under Article V hereof.  Effective as of August 1, 2007, future (a) Employer Contributions are to be made in cash and shall be invested in accordance with the investment directions of the Participants as are in effect with respect to Elective Employer Contributions under Article V hereof and (b) dividends and cash distributions payable with respect to Company Stock held in the Employer Company Stock Fund are to be invested in accordance with the investment directions of the Participants as in effect with respect to Elective Employer Contributions under Article V hereof.

Subject to the provisions of Section 7.5, in the event a Participant or Beneficiary requests payment of his Plan benefit, the Accounts of the Participant or Beneficiary will not be increased or decreased to reflect earnings after the date payment is requested and benefits shall be based upon the value of the Employee Contribution Account and the Employer Contribution Account attributable to Employer Matching Contributions as of the preceding Adjustment Date (or the processing date in the event a daily valuation system shall be implemented) and the value of the Employee Contribution Account attributable to Employer Non-Matching Contributions as of the preceding Anniversary Date (or Adjustment Date if so directed by the Plan Administrator or the processing date in the event a daily valuation system shall be in place).

The Retirement Committee shall be authorized to permit more frequent allocations of earnings and losses than is hereinbefore provided to be effective on such dates as it shall specify, including on a daily basis (each regular business day) if a daily valuation system shall be in place.

Section 6.4    Adjustment of Contributions.    Notwithstanding any other provision contained herein to the contrary, contributions hereunder and the allocation of such contributions shall comply with the provisions of this Article, and, in the event of noncompliance, the Retirement Committee shall have the right to make the adjustments described in this Article or such Contributions shall be subject to refund as provided herein.

Section 6.5    Maximum Annual Additions.

(a)    For each Limitation Year, the maximum Annual Additions credited to a Participant's accounts for any Limitation Year shall equal the lesser of: (1) $40,000 adjusted annually as provided in Code Section 415(d) pursuant to the Regulations, or (2) one hundred percent (100%) of the Participant's 415 Compensation for such Limitation Year.  If the Employer contribution that would otherwise be contributed or allocated to the Participant's accounts would cause the Annual Additions for the Limitation Year to exceed the maximum Annual Additions, the amount contributed or allocated will be reduced so that the Annual Additions for the Limitation Year will equal the maximum Annual Additions, and any amount in excess of the maximum Annual Additions, which would have been allocated to such Participant may be allocated to other Participants.  For any short Limitation Year, the dollar limitation in (1) above shall be reduced by a fraction, the numerator of which is the number of full months in the short Limitation Year and the denominator of which is twelve (12).

(b)    For purposes of applying the limitations of Code Section 415, Annual Additions means the sum credited to a Participant's accounts for any Limitation Year of (1)

Employer contributions, (2) Employee contributions, (3) Forfeitures, (4) amounts allocated, after March 31, 1984, to an individual medical account, as defined in Code Section 415(l)(2) which is part of a pension or annuity plan maintained by the Employer, (5) amounts derived from contributions paid or accrued after December 31, 1985, in taxable years ending after such date, which are attributable to post-retirement medical benefits allocated to the separate account of a key employee (as defined in Code Section 419A(d)(3)) under a welfare benefit plan (as defined in Code Section 419(e)) maintained by the Employer and (6) allocations under a simplified employee pension plan.  Except, however, the "415 Compensation" percentage limitation referred to in paragraph (a)(2) above shall not apply to: (1) any contribution for medical benefits after separation from service (within the meaning of Code Sections 401(h) or 419A(f)(2)) which is otherwise treated as an Annual Addition, or (2) any amount otherwise treated as an Annual Addition under Code Section 415(l)(1).

Annual Additions for purposes of Code Section 415 shall not include restorative payments.  A restorative payment is a payment made to restore losses to a Plan resulting from actions by a fiduciary for which there is reasonable risk of liability for breach of a fiduciary duty under ERISA or under other applicable federal or state law, where Participants who are similarly situated are treated similarly with respect to the payments.  Generally, payments are restorative payments only if the payments are made in order to restore some or all of the plan's losses due to an action (or a failure to act) that creates a reasonable risk of liability for such a breach of fiduciary duty (other than a breach of fiduciary duty arising from failure to remit contributions to the Plan).  This includes payments to a plan made pursuant to a Department of Labor order, the Department of Labor's Voluntary Fiduciary Correction Program or a court-approved settlement, to restore losses to a qualified defined contribution plan on account of the breach of fiduciary duty (other than a breach of fiduciary duty arising from failure to remit contributions to the Plan).  Payments made to the Plan to make up for losses due merely to market fluctuations and other payments that are not made on account of a reasonable risk of liability for breach of a fiduciary duty under ERISA are not restorative payments and generally constitute contributions that are considered annual additions.

If the Annual Additions under the Plan would cause the maximum Annual Additions to be exceeded for any Participant, and all or a portion of the "excess amount" is treated as a Catch Up Contribution, then any Matching Contributions which relate to such Catch Up Contribution will be used to reduce the Employer contribution in the next Limitation Year.

(c)     For purposes of applying the limitations of Code Section 415, the transfer of funds from one qualified plan to another is not an Annual Addition.  In addition, the following are not Employee contributions for the purposes of Section 6.5(b): (1) Rollover Contributions (as defined in Code Sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3) and 457(e)(16)); (2) repayments of loans made to a Participant from the Plan; (3) repayments of distributions received by an Employee pursuant to Code Section 411(a)(7)(B) (cash outs); (4) repayments of distributions received by an Employee pursuant to Code Section 411(a)(3)(D) (mandatory contributions); (5) Catch Up Contributions; and (6) Employee contributions to a simplified employee pension excludable from gross income under Code Section 408(k)(6).

(d)     For purposes of applying the limitations of Code Section 415, the Limitation Year shall be the Plan Year.

(e)     For the purpose of this Section, all qualified defined benefit plans (whether terminated or not) ever maintained by the Employer shall be treated as one defined benefit plan, and all qualified defined contribution plans (whether terminated or not) ever maintained by the Employer shall be treated as one defined contribution plan.

(f)     For the purpose of this Section, if the Employer is a member of a controlled group of corporations, trades or businesses under common control (as defined by Code Section 1563(a) or Code Section 414(b) and (c) as modified by Code Section 415(h)), is a member of an affiliated service group (as defined by Code Section 414(m)), or is a member of a group of entities required to be aggregated pursuant to Regulations under Code Section 414(o), all Employees of such Employers shall be considered to be employed by a single Employer.

(g)     If this is a plan described in Code Section 413(c) (other than a plan described in Code Section 413(f)), then all of the benefits or contributions attributable to a Participant from all of the Employers maintaining this Plan shall be taken into account in applying the limits of this Section with respect to such Participant.  Furthermore, in applying the limitations of this Section with respect to such a Participant, the total 415 Compensation received by the Participant from all of the Employers maintaining the Plan shall be taken into account.

(h)     If a Participant participates in more than one defined contribution plan maintained by the Employer which have different Anniversary Dates, the maximum Annual Additions under this Plan shall equal the maximum Annual Additions for the Limitation Year minus any Annual Additions previously credited to such Participant's accounts during the Limitation Year.

(i)     If a Participant participates in both a defined contribution plan subject to Code Section 412 and a defined contribution plan not subject to Code Section 412 maintained by the Employer which have the same Anniversary Date, Annual Additions will be credited to the Participant's accounts under the defined contribution plan subject to Code Section 412 prior to crediting Annual Additions to the Participant's accounts under the defined contribution plan not subject to Code Section 412.

(j)     If a Participant participates in more than one defined contribution plan not subject to Code Section 412 maintained by the Employer which have the same Anniversary Date, the maximum Annual Additions under this Plan shall equal the product of (A) the maximum Annual Additions for the Limitation Year minus any Annual Additions previously credited under subparagraphs (1) or (2) above, multiplied by (B) a fraction (i) the numerator of which is the Annual Additions which would be credited to such Participant's accounts under this Plan without regard to the limitations of Code Section 415 and (ii) the denominator of which is such Annual Additions for all plans described in this subparagraph.

(k)     The definition of 415 Compensation shall be adjusted as set forth herein for the following types of compensation paid after a Participant's Separation from Service with the Employer maintaining the Plan or any Affiliated Employer.  However, amounts described in subsections (1) and (2) below may be included in 415 Compensation only to the extent such amounts are paid by the later of 2 1/2 months after Separation from Service or by the end of the Limitation Year that includes the date of such Separation from Service.  Any other payment of compensation paid after Separation from Service that is not

described in the following types of compensation is not considered 415 Compensation within the meaning of Code Section 415(c)(3), even if payment is made within the time period specified above.

(1)     Regular Pay.   415 Compensation shall include regular pay after Separation from Service if:

a   The payment is regular compensation for services during the Participant's regular working hours, or compensation for services outside the Participant's regular working hours (such as overtime or shift differential), commissions, bonuses, or other similar payments; and

b   The payment would have been paid to the Participant prior to a Separation from Service if the Participant had continued in employment with the Employer.

(2)     Leave Cashouts.   Leave cashouts shall be included in 415 Compensation if those amounts would have been included in the definition of 415 Compensation if they were paid prior to the Participant's Separation from Service, and the amounts are payment for unused accrued bona fide sick, vacation, or other leave, but only if the Participant would have been able to use the leave if employment had continued.

(3)     Deferred Compensation.   Deferred compensation shall be included in 415 Compensation if the compensation would have been included in the definition of 415 Compensation if it had been paid prior to the Participant's Separation from Service, and the compensation is received pursuant to a nonqualified unfunded deferred compensation plan, but only if the payment would have been paid at the same time if the Participant had continued in employment with the Employer and only to the extent that the payment is includible in the Participant's gross income.

(4)     Salary Continuation Payments for Military Service Participants. 415 Compensation shall not include payments to an individual who does not currently perform services for the Employer by reason of qualified military service (as that term is used in Code Section 414(u)(1)) to the extent those payments do not exceed the amounts the individual would have received if the individual had continued to perform services for the Employer rather than entering qualified military service.

(5)     Salary Continuation Payments for Disabled Participants.   415 Compensation shall not include compensation paid to a Participant who has a total disability under the federal Social Security Acts.

(l)     415 Compensation for a Limitation Year shall include amounts earned but not paid during the Limitation Year solely because of the timing of pay periods and pay dates, provided the amounts are paid during the first few weeks of the next Limitation Year, the amounts are included on a uniform and consistent basis with respect to all similarly situated Participants, and no compensation is included in more than one Limitation Year.

Notwithstanding anything contained in this Section to the contrary, the limitations, adjustments and other requirements prescribed in this Section shall at all times comply with the provisions of Code Section 415 and the Treasury Regulations thereunder.

Section 6.6    <u>Adjustment for Excess Annual Additions</u>.  If the Annual Additions are exceeded for any Participant, then the Plan may only correct such excess in accordance with the Employee Plans Compliance Resolution System ("EPCRS") as set forth in Revenue Procedure 2008-50 or any superseding guidance, including but not limited to, the preamble to the final Section 415 Treasury Regulations.

Section 6.7    <u>Actual Deferral Percentage ("ADP")</u>.

(a)    Maximum Annual Allocation: For each Plan Year, the annual allocation derived from Elective Employer Contributions to a Highly Compensated Participant's Employee Contribution Account shall satisfy one of the following tests:

(1)    The "Actual Deferral Percentage" for the Highly Compensated Participant group shall not be more than the "Actual Deferral Percentage" of the Non-Highly Compensated Participant group (for the preceding Plan Year if the prior year testing method is used to calculate the "Actual Deferral Percentage" for the Non-Highly Compensated Participant group) multiplied by 1.25, or

(2)    The excess of the "Actual Deferral Percentage" for the Highly Compensated Participant group over the "Actual Deferral Percentage" for the Non-Highly Compensated Participant group (for the preceding Plan Year if the prior year testing method is used to calculate the "Actual Deferral Percentage" for the Non-Highly Compensated Participant group) shall not be more than two percentage points.  Additionally, the "Actual Deferral Percentage" for the Highly Compensated Participant group shall not exceed the "Actual Deferral Percentage" for the Non-Highly Compensated Participant group (for the preceding Plan Year if the prior year testing method is used to calculate the "Actual Deferral Percentage" for the Non-Highly Compensated Participant group) multiplied by 2. The provisions of Code Section 401(k)(3) and Regulation 1.401(k)-1(b) are incorporated herein by reference.

(b)    For the purposes of this Section "Actual Deferral Percentage" means, with respect to the Highly Compensated Participant group and Non-Highly Compensated Participant group for a Plan Year, the average of the ratios, calculated separately for each Participant in such group, of the amount of Elective Employer Contributions (less Catch-Up Contributions) allocated to each Employee Contribution Account for such Plan Year, to such Participant's "414(s) Compensation" for such Plan Year.  The actual deferral ratio for each Participant and the "Actual Deferral Percentage" for each group shall be calculated to the nearest one hundredth of one percent.  Elective Employer Contributions (less Catch Up Contributions) allocated to each Non-Highly Compensated Participant's Employee Contribution Account shall be reduced by Excess Deferred Compensation to the extent such excess amounts are made under this Plan or any other plan maintained by the Employer and by any matching contributions which relate to such Excess Deferred Compensation.

Notwithstanding the above, if the prior year testing method is used to calculate the "Actual Deferral Percentage" for the Non-Highly Compensated Participant group for the first

Plan Year of this amendment and restatement, the "Actual Deferral Percentage" for the Non-Highly Compensated Participant group for the preceding Plan Year shall be calculated pursuant to the provisions of the Plan then in effect.

(c)     For the purposes of Section 6.7(a) and Section 6.8, a Highly Compensated Participant and a Non-Highly Compensated Participant shall include any Employee eligible to make a deferral election pursuant to Section 4.2, whether or not such deferral election was made or suspended pursuant to Section 4.2.

Notwithstanding the above, if the prior year testing method is used to calculate the "Actual Deferral Percentage" for the Non-Highly Compensated Participant group for the first Plan Year of this amendment and restatement, for purposes of Section 6.7(a) and Section 6.8, a Non-Highly Compensated Participant shall include any such Employee eligible to make a deferral election, whether or not such deferral election was made or suspended, pursuant to the provisions of the Plan in effect for the preceding Plan Year.

(d)     For purposes of this Section and Code Sections 401(a)(4), 410(b) and 401(k), this Plan may not be combined with any other plan.

(e)     For the purpose of this Section, when calculating the "Actual Deferral Percentage" for the Non-Highly Compensated Participant group, the current year testing method shall be used. Any change from the current year testing method to the prior year testing method shall be made pursuant to Internal Revenue Service Notice 98-1, Section VII (or superseding guidance), the provisions of which are incorporated herein by reference.

(f)     Notwithstanding anything in this Section to the contrary, the provisions of this Section and Section 6.8 may be applied separately (or will be applied separately to the extent required by Regulations) to each "plan" within the meaning of Regulation Section 1.401(k)-6. Furthermore, the provisions of Code Section 401(k)(3)(F) may be used to exclude from consideration all Non-Highly Compensated Employees who have not satisfied the minimum age and service requirements of Code Section 410(a)(1)(A). For purposes of applying this provision, the Plan Administrator may use any effective date of participation that is permitted under Code Section 410(b) provided such date is applied on a consistent and uniform basis to all Participants.

(g)     In any Plan Year in which this Plan satisfies the provisions of Code Section 401(k)(12) the provisions of this Section 6.7 shall not apply.

(h)     Notwithstanding the preceding, Qualified Nonelective Contributions (as defined in Regulation Section 1.401(k)-6) cannot be taken into account in determining the Actual Deferral Ratio for a Plan Year for a Non-Highly Compensated Employee to the extent such contributions exceed the product of that Non-Highly Compensated Employee's Code Section 414(s) Compensation and the greater of five percent (5%) or two (2) times the Plan's "representative contribution rate." Any Qualified Nonelective Contribution taken into account under an Actual Contribution Percentage (ACP) test under Regulation Section 1.401(m)-2(a)(6) (including the determination of the representative contribution rate for purposes of Regulation Section 1.401(m)-2(a)(6)(v)(B)), is not permitted to be taken into account for purposes of this Section (including the determination of the "representative contribution rate" under this Section). For purposes of this Section:

(1)     The Plan's "representative contribution rate" is the lowest "applicable contribution rate" of any eligible Non-Highly Compensated Employee among a group of eligible Non-Highly Compensated Employees that consists of half of all eligible Non-Highly Compensated Employees for the Plan Year (or, if greater, the lowest "applicable contribution rate" of any eligible Non-Highly Compensated Employee who is in the group of all eligible Non-Highly Compensated Employees for the Plan Year and who is employed by the Employer on the last day of the Plan Year), and

(2)     The "applicable contribution rate" for an eligible Non-Highly Compensated Employee is the sum of the Qualified Matching Contributions (as defined in Regulation Section 1.401(k)-6) taken into account in determining the Actual Deferral Ratio for the eligible Non-Highly Compensated Employee for the Plan Year and the Qualified Nonelective Contributions made for the eligible Non-Highly Compensated Employee for the Plan Year, divided by the eligible Non-Highly Compensated Employee's Code Section 414(s) Compensation for the same period.

Notwithstanding the above, Qualified Nonelective Contributions that are made in connection with an Employer's obligation to pay prevailing wages under the Davis-Bacon Act (46 Stat. 1494), Public Law 71-798, Service Contract Act of 1965 (79 Stat. 1965), Public Law 89-286, or similar legislation can be taken into account for a Plan Year for an Non-Highly Compensated Employee to the extent such contributions do not exceed 10 percent (10%) of that Non-Highly Compensated Employee's Code Section 414(s) Compensation.

Qualified Matching Contributions may only be used to calculate an Actual Deferral Ratio to the extent that such Qualified Matching Contributions are matching contributions that are not precluded from being taken into account under the ACP test for the Plan Year under the rules of Regulation Section 1.401(m)-2(a)(5)(ii) and as set forth in Section 6.9.

(i)     Qualified Nonelective Contributions and Qualified Matching Contributions cannot be taken into account to determine an Actual Deferral Ratio to the extent such contributions are taken into account for purposes of satisfying any other ADP test, any ACP test, or the requirements of Regulation Section 1.401(k)-3, 1.401(m)-3, or 1.401(k)-4. Thus, for example, matching contributions that are made pursuant to Regulation Section 1.401(k)-3(c) cannot be taken into account under the ADP test. Similarly, if a plan switches from the current year testing method to the prior year testing method pursuant to Regulation Section 1.401(k)-2(c), Qualified Nonelective Contributions that are taken into account under the current year testing method for a year may not be taken into account under the prior year testing method for the next year.

(j)     The Actual Deferral Ratio of any Participant who is a Highly Compensated Employee for the Plan Year and who is eligible to have Elective Employer Contributions (as defined in Regulation Section 1.401(k)-6) (and Qualified Nonelective Contributions and/or Qualified Matching Contributions, if treated as Elective Employer Contributions for purposes of the ADP test) allocated to such Participant's accounts under two (2) or more cash or deferred arrangements described in Code Section 401(k), that are maintained by the same Employer, shall be determined as if such Elective Employer

Contributions (and, if applicable, such Qualified Nonelective Contributions and/or Qualified Matching Contributions) were made under a single arrangement.  If a Highly Compensated Employee participates in two or more cash or deferred arrangements of the Employer that have different Plan Years, then all Elective Employer Contributions made during the Plan Year being tested under all such cash or deferred arrangements shall be aggregated, without regard to the plan years of the other plans.  However, for Plan Years beginning before the effective date of this Amendment, if the plans have different Plan Years, then all such cash or deferred arrangements ending with or within the same calendar year shall be treated as a single cash or deferred arrangement.  Notwithstanding the foregoing, certain plans shall be treated as separate if mandatorily disaggregated under the Regulations of Code Section 401(k).

(k)     Plans using different testing methods for the ADP and ACP test.  Except as otherwise provided in this Section, the Plan may use the current year testing method or prior year testing method for the ADP test for a Plan Year without regard to whether the current year testing method or prior year testing method is used for the ACP test for that Plan Year.  However, if different testing methods are used, then the Plan cannot use:

(1)     The recharacterization method of Regulation Section 1.401(k)-2(b)(3) to correct excess contributions for a Plan Year;

(2)     The rules of Regulation Section 1.401(m)-2(a)(6)(ii) to take Elective Employer Contributions into account under the ACP test (rather than the ADP test); or

(3)     The rules of Regulation Section 1.401(k)-2(a)(6)(v) to take Qualified Matching Contributions into account under the ADP test (rather than the ACP test).

(l)     ADP when no Non-Highly Compensated Employees.  If, for the applicable year for determining the ADP of the Non-Highly Compensated Employees for a Plan Year, there are no eligible Non-Highly Compensated Employees, then the Plan is deemed to satisfy the ADP Test for the Plan Year.

Section 6.8     Adjustment to Actual Deferral Percentage Tests.  In the event (or if it is anticipated) that the initial allocations of the Elective Employer Contributions made pursuant to Section 4.2 do (or might) not satisfy one of the tests set forth in Section 6.7(a), the Plan Administrator shall adjust Excess Contributions pursuant to the options set forth below:

(a)     On or before the fifteenth day of the third month following the end of each Plan Year, but in no event later than the close of the following Plan Year, the Highly Compensated Participant having the largest dollar amount of Elective Employer Contributions (less Catch Up Contributions) shall have a portion of such Participant's Elective Employer Contributions treated as Catch Up Contributions and/or distributed until the total amount of Excess Contributions has been treated as Catch Up Contributions and/or distributed, or until the amount of such Participant's remaining Elective Employer Contributions equals the Elective Employer Contributions (less Catch Up Contributions) of the Highly Compensated Participant having the second largest dollar amount of Elective Employer Contributions (less Catch Up Contributions).  This process shall continue until the total amount of Excess Contributions has been eliminated.  In determining the amount of

Excess Contributions to be treated as Catch Up Contributions and/or distributed with respect to an affected Highly Compensated Participant as determined herein, such amount shall be reduced pursuant to Section 4.2(f) by any Excess Deferred Compensation previously distributed to such affected Highly Compensated Participant for such Participant's taxable year ending with or within such Plan Year and any forfeited matching contributions which relate to such Excess Deferred Compensation.

      (1)     With respect to the distribution of Excess Contributions pursuant to (a) above, such distribution:

          a.  may be postponed but not later than the close of the Plan Year following the Plan Year to which they are allocable;

          b.  shall be designated by the Employer as a distribution of Excess Contributions (and income).

Any distribution of Excess Contributions made pursuant to this subsection shall be made first from unmatched Elective Deferrals and, thereafter, from Elective Deferrals which are matched. Employer Matching Contributions which relate to Elective Deferrals that are distributed pursuant to this subsection shall be treated as a Forfeiture to the extent required pursuant to Code Section 401(a)(4) and the Regulations thereunder, unless the related Employer Matching Contribution is distributed as an Excess Aggregate Contribution pursuant to Section 6.9.

      (2)     Any distribution of less than the entire amount of Excess Contributions shall be treated as a pro rata distribution of Excess Contributions and income.

      (3)     Employer Matching Contributions which relate to Excess Contributions shall be forfeited unless the related Employer Matching Contribution is distributed as an Excess Aggregate Contribution pursuant to Section 6.9.

      (b)     Distributions of Excess Contributions must be adjusted for income (gain or loss), including an adjustment for income for the period between the end of the Plan Year and the date of the distribution (the "gap period"); provided, however, that allocable income for the gap period will not be calculated and distributed beginning January 1, 2008. The Plan Administrator shall determine and allocate income using any reasonable method for computing the income allocable to Excess Contributions, provided that the method does not violate Code Section 401(a)(4), is used consistently for all Participants and for all corrective distributions under the Plan for the Plan Year, and is used by the Plan for allocating income to Participant's accounts. A Plan will not fail to use a reasonable method for computing the income allocable to Excess Contributions merely because the income allocable to Excess Contributions is determined on a date that is no more than seven (7) days before the distribution.

      (c)     Notwithstanding the above, within twelve (12) months after the end of the Plan Year, the Employer may make a special Qualified Non-Elective Contribution in accordance with one of the following provisions which contribution shall be allocated to the Employee Contribution Account of each Non-Highly Compensated Participant eligible to

38

share in the allocation in accordance with such provision. The Employer shall provide the Plan Administrator with written notification of the amount of the contribution being made and for which provision it is being made pursuant to:

(1)     A special Qualified Non-Elective Contribution may be made on behalf of Non-Highly Compensated Participants in an amount sufficient to satisfy (or to prevent an anticipated failure of) one of the tests set forth in Section 6.7(a). Such contribution shall be allocated in the same proportion that each Non-Highly Compensated Participant's 414(s) Compensation for the year (or prior year if the prior year testing method is being used) bears to the total 414(s) Compensation of all Non-Highly Compensated Participants for such year.

(2)     A special Qualified Non-Elective Contribution may be made on behalf of Non-Highly Compensated Participants in an amount sufficient to satisfy (or to prevent an anticipated failure of) one of the tests set forth in Section 6.7(a). Such contribution shall be allocated to each Non-Highly Compensated Participant electing salary reductions pursuant to Section 4.2(a) in the same proportion that each such Non-Highly Compensated Participant's Deferred Compensation (less Catch Up Contributions) for the year (or at the end of the prior Plan Year if the prior year testing method is being used) bears to the total Deferred Compensation (less Catch Up Contributions) of all such Non-Highly Compensated Participants for such year.

(3)     A special Qualified Non-Elective Contribution may be made on behalf of Non-Highly Compensated Participants in an amount sufficient to satisfy (or to prevent an anticipated failure of) one of the tests set forth in Section 6.7(a). Such contribution shall be allocated in equal amounts (per capita). However, the maximum amount allocated to any Participant pursuant to this subsection shall be limited to the amount that may be taken into account in applying the ADP test in Section 6.7(a).

(4)     A special Qualified Non-Elective Contribution may be made on behalf of Non-Highly Compensated Participants electing salary reductions pursuant to Section 4.2(a) in an amount sufficient to satisfy (or to prevent an anticipated failure of) one of the tests set forth in Section 6.7(a). Such contribution shall be allocated for the year (or at the end of the prior Plan Year if the prior year testing method is used) to each Non-Highly Compensated Participant electing salary reductions pursuant to Section 4.2(a) in equal amounts (per capita). However, the maximum amount allocated to any Participant pursuant to this subsection shall be limited to the amount that may be taken into account in applying the ADP test in Section 6.7(a).

(5)     A special Qualified Non-Elective Contribution may be made on behalf of Non-Highly Compensated Participants in an amount sufficient to satisfy (or to prevent an anticipated failure of) one of the tests set forth in Section 6.7(a). Such contribution shall be allocated to the Non-Highly Compensated Participant having the lowest 414(s) Compensation, until one of the tests set forth in Section 6.7(a) is satisfied (or is anticipated to be satisfied), or until such Non-Highly Compensated Participant has received the maximum "Annual Addition" pursuant

to Section 6.5. This process shall continue until one of the tests set forth in Section 6.7(a) is satisfied (or is anticipated to be satisfied). However, the maximum amount allocated to any Participant pursuant to this subsection shall be limited to the amount that may be taken into account in applying the ADP test in Section 6.7(a).

Notwithstanding the above, at the Employer's discretion, Non-Highly Compensated Participants who are not employed at the end of the Plan Year (or at the end of the prior Plan Year if the prior year testing method is being used) shall not be eligible to receive a special Qualified Non-Elective Contribution and shall be disregarded.

Notwithstanding the above, if the testing method changes from the current year testing method to the prior year testing method, then for purposes of preventing the double counting of Qualified Non-Elective Contributions for the first testing year for which the change is effective, any special Qualified Non-Elective Contribution on behalf of Non-Highly Compensated Participants used to satisfy the "Actual Deferral Percentage" or "Actual Contribution Percentage" test under the current year testing method for the prior testing year shall be disregarded.

(d)     If during a Plan Year, it is projected that the aggregate amount of Elective Employer Contributions to be allocated to all Highly Compensated Participants under this Plan would cause the Plan to fail the tests set forth in Section 6.7(a), then the Plan Administrator may automatically reduce the deferral amount of affected Highly Compensated Participants, beginning with the Highly Compensated Participant who has the highest deferral ratio until it is anticipated the Plan will pass the tests or until the actual deferral ratio equals the actual deferral ratio of the Highly Compensated Participant having the next highest actual deferral ratio. This process may continue until it is anticipated that the Plan will satisfy one of the tests set forth in Section 6.7(a). Alternatively, the Employer may specify a maximum percentage of Compensation that may be deferred.

(e)     Any Excess Contributions (and income) which are distributed on or after 2 1/2 months after the end of the Plan Year shall be subject to the ten percent (10%) Employer excise tax imposed by Code Section 4979.

Section 6.9   Actual Contribution Percentage ("ACP") Tests.

(a)     The ACP for the Highly Compensated Participant group shall not exceed the greater of:

(1)     125 percent of such percentage for the Non-Highly Compensated Participant group (for the preceding Plan Year if the prior year testing method is used to calculate the ACP for the Non-Highly Compensated Participant group); or

(2)     the lesser of 200 percent of such percentage for the Non-Highly Compensated Participant group (for the preceding Plan Year if the prior year testing method is used to calculate the ACP for the Non-Highly Compensated Participant group), or such percentage for the Non-Highly Compensated Participant group (for the preceding Plan Year if the prior year testing method is used to calculate the ACP for the Non-Highly Compensated Participant group)

plus 2 percentage points.  The provisions of Code Section 401(m) and Regulation 1.401(m)-1(b) are incorporated herein by reference.

(b)     For the purposes of this Section and Section 6.10, ACP for a Plan Year means, with respect to the Highly Compensated Participant group and Non-Highly Compensated Participant group (for the preceding Plan Year if the prior year testing method is used to calculate the ACP for the Non-Highly Compensated Participant group), the average of the ratios (calculated separately for each Participant in each group and rounded to the nearest one hundredth of one percent) of:

(1)     the sum of Employer Matching Contributions made pursuant to Section 4.3(a) on behalf of each such Participant for such Plan Year; to

(2)     the Participant's "414(s) Compensation" for such Plan Year.

Notwithstanding the above, if the prior year testing method is used to calculate the ACP for the Non-Highly Compensated Participant group for the first Plan Year of this amendment and restatement, for purposes of Section 6.8(a), the ACP for the Non-Highly Compensated Participant group for the preceding Plan Year shall be determined pursuant to the provisions of the Plan then in effect.

(c)     For purposes of determining the "Actual Contribution Percentage," only Employer Matching Contributions contributed to the Plan prior to the end of the succeeding Plan Year shall be considered.  In addition, the Plan Administrator may elect to take into account, with respect to Employees eligible to have Employer Matching Contributions pursuant to Section 4.3(a) allocated to their accounts, non-elective contributions (as described in Code Section 401(k)(12)(C)) (to the extent such non-elective contributions are not used to satisfy the safe harbor methods permitted by Code Sections 401(k)(12) and 401(m)(11)), elective deferrals (as defined in Regulation 1.402(g)-1(b)) and qualified non-elective contributions (as defined in Code Section 401(m)(4)(C)) contributed to any plan maintained by the Employer.  Such non-elective contributions, elective deferrals and qualified non-elective contributions shall be treated as Employer matching contributions subject to Regulation 1.401(m)-1(b)(5) which is incorporated herein by reference.  However, the Plan Year must be the same as the plan year of the plan to which the non-elective contributions, elective deferrals and the qualified non-elective contributions are made.

(d)     For purposes of this Section and Code Sections 401(a)(4), 410(b) and 401(m), this Plan may not be combined with any other plan.

(e)     For purposes of Section 6.9(a) and Section 6.10, a Highly Compensated Participant and Non-Highly Compensated Participant shall include any Employee eligible to have Employer matching contributions (whether or not a deferral election was made or suspended) allocated to the Participant's account for the Plan Year.

Notwithstanding the above, if the prior year testing method is used to calculate the ACP for the Non-Highly Compensated Participant group for the first Plan Year of this amendment and restatement, for the purposes of Section 6.9(a), a Non-Highly Compensated Participant shall include any such Employee eligible to have Employer matching contributions (whether or not a deferral election was made or suspended) allocated to the Participant's account for the preceding Plan Year pursuant to the provisions of the Plan then in effect.

(f)      For the purpose of this Section, when calculating the ACP for the Non-Highly Compensated Participant group, the current year testing method shall be used. Any change from the current year testing method to the prior year testing method shall be made pursuant to Internal Revenue Service Notice 98-1, Section VII (or superseding guidance), the provisions of which are incorporated herein by reference.

(g)      Notwithstanding anything in this Section to the contrary, the provisions of this Section 6.9 and Section 6.10 may be applied separately (or will be applied separately to the extent required by Regulations) to each "plan" within the meaning of Regulation 1.401(m)-5. Furthermore, the provisions of Code Section 401(m)(5)(C) may be used to exclude from consideration all Non-Highly Compensated Employees who have not satisfied the minimum age and service requirements of Code Section 410(a)(1)(A). For purposes of applying this provision, the Plan Administrator may use any effective date of participation that is permitted under Code Section 410(b) provided such date is applied on a consistent and uniform basis to all Participants.

(h)      Notwithstanding the above Safe-Harbor Matching Contributions made pursuant to Section 4.3(a) above are intended to comply with Section 6.9 pursuant to the alternative methods permitted by Code Section 401(m)(11). In any Plan Year in which the Plan satisfies the provisions of Code Section 401(m)(11), the provisions of this Section 6.9 of the Plan shall not apply.

Section 6.10      Adjustment to ACP Tests.

(a)      In the event (or if it is anticipated) that the ACP for the Highly Compensated Participant group exceeds (or might exceed) the ACP for the Non-Highly Compensated Participant group pursuant to Section 6.9(a), the Plan Administrator (on or before the fifteenth day of the third month following the end of the Plan Year, but in no event later than the close of the following Plan Year) shall direct the Trustee to distribute to the Highly Compensated Participant having the largest dollar amount of contributions determined pursuant to Section 6.9(b), the vested portion of such contributions (and income allocable to such contributions) and, if forfeitable, forfeit such non-vested Excess Aggregate Contributions (if any) attributable to Employer Matching Contributions (and income allocable to such forfeitures) until the total amount of Excess Aggregate Contributions has been distributed, or until the Participant's remaining amount equals the amount of contributions determined pursuant to Section 6.9(b) of the Highly Compensated Participant having the second largest dollar amount of contributions. This process shall continue until the total amount of Excess Aggregate Contributions has been distributed.

(b)      Any distribution and/or forfeiture of less than the entire amount of Excess Aggregate Contributions (and income) shall be treated as a pro rata distribution and/or forfeiture of Excess Aggregate Contributions and income. Distribution of Excess Aggregate Contributions shall be designated by the Employer as a distribution of Excess Aggregate Contributions (and income). Forfeitures of Excess Aggregate Contributions shall be applied to reduce Employer Matching Contributions for the Plan Year in which the forfeiture occurs.

(c)      Distributions of Excess Aggregate Contributions must be adjusted for income (gain or loss), including an adjustment for income for the period between the end of the Plan Year and the date of the distribution (the "gap period"); provided, however, that

allocable income for the gap period will not be calculated and distributed beginning January 1, 2008.  The Plan Administrator shall determine and allocate income as set forth in Section 4.2(f) for Excess Contributions.

(d)     Excess Aggregate Contributions, including forfeited matching contributions, shall be treated as Employer contributions for purposes of Code Sections 404 and 415 even if distributed from the Plan.

Forfeited Employer Matching Contributions that are reallocated to Participants' Accounts for the Plan Year in which the forfeiture occurs shall be treated as an "Annual Addition" pursuant to Section 6.5 for the Participants to whose Accounts they are reallocated and for the Participants from whose Accounts they are forfeited.

(e)     If during a Plan Year the projected aggregate amount of Employer Matching Contributions to be allocated to all Highly Compensated Participants under this Plan would, by virtue of the tests set forth in Section 6.9(a), cause the Plan to fail such tests, then the Plan Administrator may automatically reduce proportionately or in the order provided in Section 6.10(a) each affected Highly Compensated Participant's projected share of such contributions by an amount necessary to satisfy one of the tests set forth in Section 6.9(a).

(f)     Notwithstanding the above, within twelve (12) months after the end of the Plan Year, the Employer may make a special Qualified Non-Elective Employer Contribution in accordance with one of the following provisions which contribution shall be allocated to the Participant's Account of each Non-Highly Compensated Participant eligible to share in the allocation in accordance with such provision.  The Employer shall provide the Plan Administrator with written notification of the amount of the contribution being made and for which provision it is being made pursuant to:

(1)     A special Qualified Non-Elective Employer Contribution may be made on behalf of Non-Highly Compensated Participants in an amount sufficient to satisfy (or to prevent an anticipated failure of) one of the tests set forth in Section 6.9(a).  Such contribution shall be allocated in the same proportion that each Non-Highly Compensated Participant's 414(s) Compensation for the year (or prior year if the prior year testing method is being used) bears to the total 414(s) Compensation of all Non-Highly Compensated Participants for such year.

(2)     A special Qualified Non-Elective Employer Contribution may be made on behalf of Non-Highly Compensated Participants in an amount sufficient to satisfy (or to prevent an anticipated failure of) one of the tests set forth in Section 6.9(a).   Such contribution shall be allocated to each Non-Highly Compensated Participant electing salary reductions pursuant to Section 4.2 in the same proportion that each such Non-Highly Compensated Participant's Deferred Compensation (less Catch Up Contributions) for the year (or at the end of the prior Plan Year if the prior year testing method is being used) bears to the total Deferred Compensation (less Catch Up Contributions) of all such Non-Highly Compensated Participants for such year.

(3)     A special Qualified Non-Elective Employer Contribution may be made on behalf of Non-Highly Compensated Participants in an amount sufficient

to satisfy (or to prevent an anticipated failure of) one of the tests set forth in Section 6.9(a). Such contribution shall be allocated in equal amounts (per capita). However, the maximum amount allocated to any Participant pursuant to this subsection shall be limited to the amount that may be taken into account in applying the ACP test in Section 6.9.

(4)     A special Qualified Non-Elective Employer Contribution may be made on behalf of Non-Highly Compensated Participants electing salary reductions pursuant to Section 4.2 in an amount sufficient to satisfy (or to prevent an anticipated failure of) one of the tests set forth in Section 6.9(a). Such contribution shall be allocated for the year (or at the end of the prior Plan Year if the prior year testing method is used) to each Non-Highly Compensated Participant electing salary reductions pursuant to Section 4.2 in equal amounts (per capita). However, the maximum amount allocated to any Participant pursuant to this subsection shall be limited to the amount that may be taken into account in applying the ACP test in Section 6.9.

(5)     A special Qualified Non-Elective Employer Contribution may be made on behalf of Non-Highly Compensated Participants in an amount sufficient to satisfy (or to prevent an anticipated failure of) one of the tests set forth in Section 6.9(a). Such contribution shall be allocated to the Non-Highly Compensated Participant having the lowest 414(s) Compensation, until one of the tests set forth in Section 6.9(a) is satisfied (or is anticipated to be satisfied), or until such Non-Highly Compensated Participant has received the maximum "annual addition" pursuant to Section 6.5. This process shall continue until one of the tests set forth in Section 6.9(a) is satisfied (or is anticipated to be satisfied). However, the maximum amount allocated to any Participant pursuant to this subsection shall be limited to the amount that may be taken into account in applying the ACP test in Section 6.9.

(g)     Notwithstanding the above, at the Employer's discretion, Non-Highly Compensated Participants who are not employed at the end of the Plan Year (or at the end of the prior Plan Year if the prior year testing method is being used) shall not be eligible to receive a special Qualified Non-Elective Employer Contribution and shall be disregarded.

(h)     Notwithstanding the above, if the testing method changes from the current year testing method to the prior year testing method, then for purposes of preventing the double counting of Qualified Non-Elective Employer Contributions for the first testing year for which the change is effective, any special Qualified Non-Elective Employer Contribution on behalf of Non-Highly Compensated Participants used to satisfy the "Actual Deferral Percentage" or ACP test under the current year testing method for the prior year testing year shall be disregarded.

(i)     Any Excess Aggregate Contributions (and income) which are distributed on or after 2 1/2 months after the end of the Plan Year shall be subject to the ten percent (10%) Employer excise tax imposed by Code Section 4979.

ARTICLE VII
DETERMINATION OF BENEFITS

Section 7.1    Normal Retirement Benefit.  Each Participant's Accounts shall vest fully on his Normal Retirement Age.  The Participant's benefit shall equal his Accounts on the Adjustment Date next following his Normal Retirement Age, or should a Participant retire on an Adjustment Date, his Accounts as of such date.

Section 7.2    Delayed Retirement Benefit.  A Participant may elect to remain in the employ of the Employer beyond his Normal Retirement Age.  The Participant shall be eligible to retire on his delayed retirement date, which shall be the date on which he actually retires.  A Participant retiring on his delayed retirement date shall be entitled to receive a benefit equal to his Accounts on the Adjustment Date next following his delayed retirement date, or should a Participant retire on an Adjustment Date, his Accounts as of such date.

Section 7.3    Total and Permanent Disability Benefit.  Each Participant's Accounts shall vest fully on his Disability Retirement Date.  The Participant's benefit shall equal his Accounts on the Adjustment Date next following his Disability Retirement Date, or should a Participant retire on an Adjustment Date, his Accounts as of such date.

Section 7.4    Death Benefit.  Upon the death of a Participant while in the employ of the Employer or while on Authorized Leave of Absence, his Accounts shall fully vest and his Beneficiary shall be entitled to a benefit equal to his Accounts on the Adjustment Date next following the date of his death, or should a Participant die on an Adjustment Date, his Accounts as of such date.

Section 7.5    Employment Termination Benefit.  If a Participant's employment with the Employer is terminated, voluntarily or involuntarily, other than by normal retirement, delayed retirement, disability retirement or death, he shall be entitled to an employment termination benefit which shall be an amount equal to (A) the entire balance to the credit of the Participant in his Employee Contribution Account (which shall be nonforfeitable at all times) as it existed on the Adjustment Date next following his termination of employment, plus (B) for Employees hired on or before December 31, 2000, the entire balance to the credit of the Participant in his Employer Contribution Account attributable to Employer Matching Contributions (which shall be nonforfeitable at all times) as it existed on the Adjustment Date next following his termination of employment (or as of the date of termination of employment if such date coincides with an Adjustment Date and as of the processing date in the event a daily valuation system is in place), and for Employees hired on or after January 1, 2001, except for Employees who are former employees of FirstTier Bank or First Companies (who shall have all Employer Matching Contributions made on their behalf be nonforfeitable), a percentage of his Employer Contribution Account attributable to Employer Matching Contributions as it existed on the Adjustment Date next following his termination of employment (or as of such date if such date coincides with an Adjustment Date and as of the processing date in the event a daily valuation system is in place), based on his Years of Vesting Service according to the vesting schedule below:

### Vesting Schedule

| Years of Vesting Service | Nonforfeitable Percentage |
| --- | --- |
| less than 1 | 0 |
| 1 | 33% |
| 2 | 67% |
| 3 | 100% |

Safe-Harbor Matching Contributions made on or after January 1, 2008 shall be fully vested at all times, plus (C) a percentage of his Employer Contribution Account attributable to Employer Non-Matching Contributions as it existed on the Anniversary Date (or Adjustment Date if the Retirement Committee elects to value such Account as of each Adjustment Date) immediately preceding his termination of employment (or a percentage of such Account as of the date of termination of employment if such date coincides with an Anniversary Date), based on his Years of Vesting Service according to the vesting schedule below:

With respect to Participants who are not credited with at least one Hour of Service on or after January 1, 2007, the vesting schedule shall be as follows:

### Vesting Schedule

| Years of Vesting Service | Nonforfeitable Percentage |
| --- | --- |
| 0-4 | 0 |
| 5 or more | 100 |

With respect to Participants who are credited with at least one Hour of Service on or after January 1, 2007, the vesting schedule shall be as follows:

### Vesting Schedule

| Years of Vesting Service | Nonforfeitable Percentage |
| --- | --- |
| 0-2 | 0 |
| 3 or more | 100 |

Section 7.6    Definition of Year of Vesting Service.  Each Participant shall receive one Year of Vesting Service for each Plan Year of employment for which he is credited with 1,000 or more Hours of Service.  In the event a Participant's first Year of Participation Service overlaps two Plan Years and the Participant is not credited with 1,000 Hours of Service in both of the Plan Years, the Year of Participation Service shall also be considered a Year of Vesting Service ending on December 31st of the second Plan Year.

Effective January 1, 2013, with respect to those Participants who are credited with at least one Hour of Service on or after January 1, 2013, each such Participant shall receive one Year of Vesting Service for each Period of Service, as determined in accordance with Section 2.65.

Section 7.7    Determination of Years of Vesting Service - Breaks in Service.

(a)    For the purpose of calculating an Employee's Years of Vesting Service, all service with the Employer and any corporation which is, with the Employer, a member of a controlled group of corporations (as defined in Section 414(b) of the Internal

Revenue Code); any trade or business (whether or not incorporated) which is, with the Employer, under common control (as defined in Section 414(c) of the Internal Revenue Code); any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Internal Revenue Code) which includes the Employer; and any other entity required to be aggregated with the Employer pursuant to regulations under Section 414(o) of the Internal Revenue Code shall be treated as service with the Employer. For purposes of calculating an Employee's Years of Vesting Service, all continuous service from the Employee's most recent hire date with a predecessor employer as of the date such predecessor employer was merged with or acquired by the Employer shall be treated as service with the Employer if such Employee was employed by the predecessor employer on the merger or acquisition date.

For purposes of calculating an Employee's Years of Vesting Service, all continuous service from the Employee's most recent hire date with a failed bank whose assets are purchased by Compass Bank in 2009 pursuant to a purchase and assumption agreement in which the Federal Deposit Insurance Corporation is a party thereto shall be treated as service with the Employer if such Employee was employed by such failed bank on the date such failed bank's assets are purchased by Compass Bank.

(b)     If any former Participant is reemployed after a One-Year Break in Service has occurred Years of Vesting Service shall include Years of Vesting Service prior to his One-Year Break in Service subject to the following rules:

(1)  If a former Participant has a One-Year Break in Service, his pre-break and post-break service shall be used for computing Years of Vesting Service;

(2)     Each non-vested former Participant shall lose credits otherwise allowable under (i) above if his consecutive One-Year Breaks in Service equal or exceed the greater of (A) five (5) or (B) the aggregate number of his pre-break Years of Participation Service;

(3)     After five (5) consecutive One-Year Breaks in Service, a former Participant's prior vested Account balance attributable to pre-break service shall not be increased as a result of post-break service.

Separate accounts will be maintained for the Participant's pre-break and post-break Employer derived account balances. Both accounts will share in earnings and losses of the Trust Fund.

Section 7.8     Forfeitures. The portion of a Participant's Accounts which are not vested shall be Forfeited upon the earlier of the following:

(a)     the distribution of the entire vested portion of a terminated Participant's accounts, or

(b)     the last day of the Plan Year in which the Participant incurs five (5) consecutive One-Year Breaks in Service.

In the case of a terminated Participant whose vested benefit is zero, such terminated participant shall be deemed to have received a distribution of his vested benefit upon his termination of employment. If the Participant receives a distribution (or was deemed to have received as a distribution) pursuant to this Section which is less than the value of his Employer Contribution Account and resumes employment covered under the Plan, the Participant's Employer

Contribution Account will be restored to the amount on the date of distribution if the Participant repays (or restoration occurs upon reemployment in the case of a deemed distribution) in cash to the Plan the full amount of the distribution on or before the earlier of five (5) years after the date on which the Participant is subsequently reemployed by the Employer or the close of the first period in which the Participant incurs five (5) consecutive Breaks in Service following the date of distribution. The amount repaid shall be allocated to the Participant's Accounts among the Investment Funds in the same proportions in which he received the distribution. The amount allocated to Company Stock Fund shall be applied as promptly as possible by the Trustee to the purchase of the maximum number of shares of Company Stock which can be purchased with such amount. The source for the reinstatement shall first be any Forfeitures occurring during the Plan Year. If such source is insufficient, then the Employer shall contribute an amount which is sufficient to restore any forfeited Accounts. Upon the reemployment of a Participant with no vested benefit upon termination, the Participant shall be deemed to have repaid his distribution and will be fully restored if he is reemployed before incurring five (5) consecutive Breaks in Service. Forfeitures remaining after satisfaction of any reinstatement obligations under this Section 7.8 shall be applied in the following order:

      (i) To pay for administrative expenses;

      (ii) To reduce SmartInvestor Employer Contributions under Section 4.3(b)(ii) for the Plan Year in which the Forfeiture occurs;

      (iii) To reduce Employer Matching Contributions under Section 4.3(a) for the Plan Year in which the Forfeiture occurs; and

      (iv) To be allocated to Participant accounts on the basis as if such amount was treated as a Discretionary Employer Non-Matching Contribution.

## ARTICLE VIII
## DISTRIBUTION OF BENEFITS

    **Section 8.1**   <u>Time of Payment of Benefits</u>. The distribution of benefits to a Participant or Beneficiary shall begin as soon as reasonably practicable but not later than the 60th day after the later of the close of the Plan Year in which the Participant attains age sixty-five (65) or the Plan Year in which his employment with an Employer is terminated. The Retirement Committee may cause such benefits to be paid on such earlier date or dates following such termination as it may deem advisable.

    Notwithstanding the foregoing sentence, if the amount of the payment required to commence on the date determined under this Section cannot be ascertained by such date, a payment retroactive to such date may be made, provided that such retroactive payment is made no later than sixty (60) days after the earliest date on which the amount of such payment can be ascertained under the Plan. The failure of a Participant to consent to a distribution while a benefit is immediately distributable under this Section 8.1, shall be deemed an election to defer commencement of payment of any benefit sufficient to satisfy this Section 8.1.

    **Section 8.2**   <u>Method of Payment</u>. In the event of a Participant's termination of employment as a result of the Participant's retirement, disability or other event other than death, the benefits provided hereunder shall be payable in a single distribution consisting of cash in respect of his interest in the Investment Funds other than Company Stock Funds and consisting

of whole shares of Company Stock, cash, or a combination of both (with a cash adjustment for any fractional share) in respect of his interest in Company Stock Funds provided, however, that the Retirement Committee shall notify the Participant of his right to demand distribution of his interest in Company Stock Funds entirely in cash. If the distribution of the Participant's interest in Company Stock Funds is to be made in cash, the amount of the cash distribution shall be based upon the fair market value of the Company Stock at the time the distribution becomes payable or as close in time thereto as is administratively practicable.

In the event of the Participant's death, his Beneficiary shall have the option to make an irrevocable election in accordance with procedures established by the Retirement Committee to receive the benefits provided hereunder in a single distribution in cash and whole shares of Company Stock in the manner as described previously in this Section 8.2 or in annual installments over either a five-year or ten-year period, as the Beneficiary shall determine, in the form of cash in respect of his interest in the Investment Funds other than Company Stock Funds, whole shares of Company Stock (with a cash adjustment for any fractional share) in respect of his interest in Company Stock Funds, cash, or a combination of both; provided, however, that the Beneficiary shall have a right to accelerate the installment payments by requesting that the unpaid balance thereof be received in a single lump sum distribution, and provided further that the Retirement Committee shall notify the Beneficiary of his right to demand a distribution of his interest in Company Stock Funds entirely in cash. If the Beneficiary shall fail to make a timely election, the benefit shall be paid in a lump sum.

Notwithstanding the preceding provisions of this Section 8.2, the Participant (or his Beneficiary in the event of the death of the Participant) shall have the option to elect to receive an amount equal to his Accrued Benefit as of December 31, 1986, if any, in monthly installments not to exceed 180, as the Participant (or his Beneficiary in the event of the death of the Participant) shall determine in the form of cash in respect of his interest in the Investment Funds other than the Company Stock Fund, whole shares of Company Stock (with a cash adjustment for any fractional share) in respect of his interest in the Company Stock Fund; provided, however, that the Retirement Committee shall notify the Participant of his right to demand a distribution of his interest in the Company Stock Fund entirely in cash.

The amount of cash and/or the number of shares of Company Stock in each installment shall be equal to the proportionate value on each Adjustment Date immediately preceding payment of the balance then to the credit of the Participant in his Account with respect to each Investment Fund in which he had an interest eligible for installment payments determined by dividing the amount credited to his Account as of such Adjustment Date by the number of payments remaining to be made.

If a Participant who is receiving installment payments shall establish to the satisfaction of the Retirement Committee in accordance with principles and procedures established by the Retirement Committee which are applicable to all persons similarly situated that a financial emergency exists in his affairs, such as illness or accident to the Participant or a member of his immediate family or other similar contingency, the Retirement Committee may, in its discretion, for the purpose of alleviating such emergency, accelerate the time of payment of some or all of the remaining installments.

If a Participant dies before receiving all of the amount to the credit of his Account in accordance with this Section 8.2, the amount remaining to the credit of his Account at his death shall be distributed to his Beneficiary as soon as practicable in accordance with Section 8.3.

If the value of the Participant's balance in his Account derived from Employer contributions exceeds $1,000, the Participant must consent to any distribution from such account balance. With regard to this required consent:

 (a) The Participant must be informed of his right to defer receipt of the distribution. If a Participant fails to consent, it shall be deemed an election to defer the commencement of payment of any benefit. However, any election to defer the receipt of benefits shall not apply with respect to minimum distributions which are required under Section 8.4.

 (b) Notice of the rights specified under this paragraph shall be provided no less than 30 days and no more than 90 days before the first day on which all events have occurred which entitle the Participant to such benefit.

 (c) Written consent of the Participant to the distribution must not be made before the Participant receives the notice and must not be made more than 90 days before the first day on which all events have occurred which entitle the Participant to such benefit.

 (d) No consent shall be valid if a significant detriment is imposed under the Plan on any Participant who does not consent to the distribution.

 (e) If a distribution is one to which Sections 401(a)(11) and 417 of the Internal Revenue Code do not apply, such distribution may commence less than 30 days after the notice required under Section 1.411(a)-11(c) of the Income Tax Regulations is given, provided that:

  (1) the Plan Administrator clearly informs the Participant that the Participant has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and

  (2) the Participant, after receiving the notice, affirmatively elects a distribution.

Section 8.3 <u>Designation of Beneficiary</u>. Each Participant shall designate a Beneficiary or Beneficiaries to whom his Plan benefits are to be paid if the Participant dies before receipt of all such benefits. Each Beneficiary designation shall be on a form prescribed by the Retirement Committee and will be effective only when filed with the Retirement Committee. A Participant may designate a different Beneficiary at any time by delivering a new written designation to the Retirement Committee. The last effective designation received by the Retirement Committee shall supersede all prior designations. A designation of a Beneficiary shall be effective only if the Beneficiary survives the Participant. If a Participant fails to designate a Beneficiary, or if no designated Beneficiary survives the Participant, the Participant shall be deemed to have designated the following Beneficiaries (if then living) in the following order of priority: (1) spouse, (2) children, including adopted children, in equal shares, (3) parents, in equal shares, and (4) Participant's estate.

Notwithstanding the provisions of the first paragraph of this Section 8.3, a Participant with a surviving spouse shall have his Plan benefit payable to his surviving spouse unless the spouse consents in writing to the designation of another Beneficiary and the spouse's consent acknowledges the effect of the election and is witnessed by a Plan representative or a notary public in a manner as required by Section 205(c)(2)(A) of ERISA unless such consent was unnecessary because such spouse could not be located (or because of such other circumstances as may be prescribed by Treasury Regulations).   The election made by the Participant and consented to by his spouse may be revoked by the Participant in writing without the consent of the spouse at any time.  The number of revocations shall not be limited.  Any new election must comply with the requirements of this Section 8.3.  A former spouse's waiver shall not be binding on a new spouse.  If the Participant has designated a spouse as a Beneficiary, then a divorce decree or legal separation that relates to such spouse shall revoke the Participant's designation of the spouse as a Beneficiary unless the decree or qualified domestic relations order ("QDRO") (within the meaning of Section 414(p) of the Code) provides otherwise.

Section 8.4    <u>Required Minimum Distributions.</u>

   (a)    <u>General Rules.</u>

      (1)    Precedence.   The requirements of this Section 8.4 will take precedence over any inconsistent provisions of the Plan.

      (2)    Requirements of Treasury Regulations Incorporated.    All distributions required under this Section 8.4 will be determined and made in accordance with the Treasury Regulations under Section 401(a)(9) of the Code.

      (3)    TEFRA Section 242(b)(2) Elections.   Notwithstanding the other provisions of this Section 8.4, distributions may be made under a designation made before January 1, 1984, in accordance with Section 242(b)(2) of the Tax Equity and Fiscal Responsibility Act (TEFRA) and the provisions of the Plan that relate to Section 242(b)(2) of TEFRA.

   (b)    <u>Time and Manner of Distribution.</u>

      (1)    Required Beginning Date.  The Participant's entire interest will be distributed, or begin to be distributed, to the Participant no later than the Participant's Required Beginning Date.

      (2)    Death of Participant Before Distributions Begin.  If the Participant dies before distributions begin, the Participant's entire interest will be distributed, or begin to be distributed, no later than as follows:

         a.  If the Participant's surviving spouse is the Participant's sole designated beneficiary, then, except as otherwise provided herein, distributions to the surviving spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age 70½, if later.

         b.  If the Participant's surviving spouse is not the Participant's sole designated beneficiary, then distributions to the designated beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died.

c. If there is no designated beneficiary as of September 30 of the year following the year of the Participant's death, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

d. If the Participant's surviving spouse is the Participant's sole designated beneficiary and the surviving spouse dies after the Participant but before distributions to the surviving spouse begin, this Subsection (2) of Section 8.4(b)), other than Subparagraph a of this Subsection (2), will apply as if the surviving spouse were the Participant.

For purposes of this Subsection (2) of Section 8.4(b)) and Section 8.4(d), unless the Subparagraph d above applies, distributions are considered to begin on the Participant's Required Beginning Date. If Subparagraph d applies, distributions are considered to begin on the date distributions are required to begin to the surviving spouse under Subparagraph a of this Subsection (2) of Section 8.4(b). If distributions under an annuity purchased from an insurance company irrevocably commence to the Participant before the Participant's Required Beginning Date (or to the Participant's surviving spouse before the date distributions are required to begin to the surviving spouse under Subparagraph a of this Subsection (2) of Section 8.4(b)), the date distributions are considered to begin is the date distributions actually commence.

(3)    Forms of Distribution.   Unless the Participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the Required Beginning Date, as of the first distribution calendar year distributions will be made in accordance with Section 8.4(c) and Section 8.4(d). If the Participant's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Section 401(a)(9) of the Code and the Treasury Regulations.

(c)    Required Minimum Distributions During Participant's Lifetime.

(1)    Amount of Required Minimum Distribution For Each Distribution Calendar Year. During the Participant's lifetime, the minimum amount that will be distributed for each distribution calendar year is the lesser of:

a. the quotient obtained by dividing the Participant's account balance by the distribution period in the Uniform Lifetime Table set forth in Section 1.401(a)(9)-9 of the Treasury Regulations, using the Participant's age as of the Participant's birthday in the distribution calendar year; or

b. if the Participant's sole designated beneficiary for the distribution calendar year is the Participant's spouse, the quotient obtained by dividing the Participant's account balance by the number in the Joint and Last Survivor Table set forth in Section 1.401(a)(9)-9 of the Treasury Regulations, using the Participant's and spouse's attained ages as of the Participant's and spouse's birthdays in the distribution calendar year.

(2)     Lifetime Required Minimum Distributions Continue Through Year of Participant's Death.  Required minimum distributions will be determined under this Section 8.4(c) beginning with the first distribution calendar year and up to and including the distribution calendar year that includes the Participant's date of death.

(d)     <u>Required Minimum Distributions After Participant's Death.</u>

(1)     Death On or After Date Distributions Begin.

a.     Participant Survived by Designated Beneficiary.   If the Participant dies on or after the date distributions begin and there is a designated beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the longer of the remaining life expectancy of the Participant or the remaining life expectancy of the Participant's designated beneficiary, determined as follows:

i. The Participant's remaining life expectancy is calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

ii. If the Participant's surviving spouse is the Participant's sole designated beneficiary, the remaining life expectancy of the surviving spouse is calculated for each distribution calendar year after the year of the Participant's death using the surviving spouse's age as of the spouse's birthday in that year.   For distribution calendar years after the year of the surviving spouse's death, the remaining life expectancy of the surviving spouse is calculated using the age of the surviving spouse as of the spouse's birthday in the calendar year of the spouse's death, reduced by one for each subsequent calendar year.

iii.   If the Participant's surviving spouse is not the Participant's sole designated beneficiary, the designated beneficiary's remaining life expectancy is calculated using the age of the beneficiary in the year following the year of the Participant's death, reduced by one for each subsequent year.

b.     No Designated Beneficiary.  If the Participant dies on or after the date distributions begin and there is no designated beneficiary as of September 30 of the year after the year of the Participant's death, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the Participant's remaining life expectancy calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

(2)     Death Before Date Distributions Begin.

a.      Participant Survived by Designated Beneficiary.   If the Participant dies before the date distributions begin and there is a designated beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the remaining life expectancy of the Participant's designated beneficiary, determined as provided in Subsection (1) of Section 8.4(d).

b.      No Designated Beneficiary.   If the Participant dies before the date distributions begin and there is no designated beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

c.      Death of Surviving Spouse Before Distributions to Surviving Spouse Are Required to Begin.   If the Participant dies before the date distributions begin, the Participant's surviving spouse is the Participant's sole designated beneficiary, and the surviving spouse dies before distributions are required to begin to the surviving spouse under Section 8.4(b)(2)(a), this Section 8.4(d)(2) will apply as if the surviving spouse were the Participant.

(e)      Definitions.

(1)      Designated Beneficiary.   The individual who is designated as the beneficiary under Section 8.3 and is the designated beneficiary under Code Section 401(a)(9) and Section 1.401(a)(9)-1, Q&A-4, of the Treasury regulations.

(2)      Distribution Calendar Year.   A calendar year for which a minimum distribution is required.   For distributions beginning before the Participant's death, the first distribution calendar year is the calendar year immediately preceding the calendar year which contains the Participant's Required Beginning Date.   For distributions beginning after the Participant's death, the first distribution calendar year is the calendar year in which distributions are required to begin under Section 8.4(b)(2).   The required minimum distribution for the Participant's first distribution calendar year will be made on or before the Participant's Required Beginning Date.   The required minimum distribution for other distribution calendar years, including the required minimum distribution for the distribution calendar year in which the Participant's Required Beginning Date occurs, will be made on or before December 31 of that distribution calendar year.

(3)      Life Expectancy.   Life expectancy as computed by use of the Single Life Table in Section 1.401(a)(9)-9 of the Treasury regulations.

(4)      Participant's Account Balance.   The account balance as of the last valuation date in the calendar year immediately preceding the distribution calendar year (valuation calendar year) increased by the amount of any contributions made and allocated or forfeitures allocated to the account balance as of dates in the valuation calendar year after the valuation date and decreased by

distributions made in the valuation calendar year after the valuation date. The account balance for the valuation calendar year includes any amounts rolled over or transferred to the Plan either in the valuation calendar year or in the distribution calendar year if distributed or transferred in the valuation calendar year.

(5)    Required Beginning Date. With respect to any Participant, April 1st of the calendar year following the later of the calendar year in which the Participant attains age 70 1/2 or the calendar year in which the Participant retires, except that benefit distributions to a "5 percent owner" must commence by April 1st of the calendar year following the calendar year in which the Participant attains age 70 1/2.

(6)    5-Percent Owner. A Participant who is a 5 percent owner as defined in Code Section 416 at any time during the Plan Year ending with or within the calendar year in which such owner attains age 70 1/2. Once distributions have begun to a 5-percent owner under this Section they must continue to be distributed, even if the Participant ceases to be a 5 percent owner in a subsequent year.

Section 8.5    Distributions to which Qualified Joint and Survivor and Pre-Retirement Survivor Annuities Apply. Notwithstanding anything herein to the contrary, in the event, with respect to any Participant, the Plan is a direct or indirect transferee, after December 31, 1984, of any defined benefit plan or defined contribution plan which is subject to the funding standards of Section 412 of the Code, then the distribution of any such amount subject to the funding standards of Section 412 of the Code will be made in accordance with the requirements applicable to such distributions under the Code and Treasury Regulations.

Section 8.6    Direct Rollovers. Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this Section, a distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

(a)    Eligible rollover distribution: An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Section 401(a)(9) of the Internal Revenue Code; any hardship distribution described in Section 401(k)(B)(i)(iv) received after December 31, 1998; the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities) and any other distribution that is reasonably expected to total less than $200 during a year.

Notwithstanding the above, a portion of a distribution shall not fail to be an "eligible rollover distribution" merely because the portion consists of after tax Employee contributions which are not includible in gross income. However, such portion may be transferred only to an individual retirement account or annuity described in Code Section 408(a)

or (b), or to a qualified defined contribution plan described in Code Section 401(a) or 403(a) that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

        (b)    <u>Eligible retirement plan</u>:  An "eligible retirement plan" is an individual retirement account described in Code Section 408(a) or Code Section 408A(b), an individual retirement annuity described in Code Section 408(b) (other than an endowment contract), a qualified trust (an employees' trust) described in Code Section 401(a) which is exempt from tax under Code Section 501(a), an annuity plan described in Code Section 403(a), an eligible deferred compensation plan described in Code Section 457(b) which is maintained by an eligible employer described in Code Section 457(e)(1)(A), and an annuity contract described in Code Section 403(b), that accepts the "distributee's" "eligible rollover distribution." However, in the case of an "eligible rollover distribution" to the surviving spouse, an "eligible retirement plan" is an individual retirement account or individual retirement annuity.

        (c)    <u>Distributee</u>: A distributee includes an Employee or former Employee. In addition, the Employee's or former Employee's surviving spouse and the Employee's or former Employee's spouse or former spouse who is the alternate payee under a QDRO are distributees with regard to the interest of the spouse or former spouse.

        (d)    <u>Direct rollover</u>:  A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

        (e)    <u>Non-Spouse Beneficiary Rollover Right</u>.  A non-spouse beneficiary who is a "designated beneficiary" under Code Section 401(a)(9)(E) and the regulations thereunder, by a direct trustee-to-trustee transfer, may roll over all or any portion of his/her distribution to an individual retirement account or individual retirement annuity described in Section 408(a) or 408(b) of the Code that the beneficiary establishes for purposes of receiving the distribution. In order to be able to roll over the distribution, the distribution otherwise must satisfy the definition of an eligible rollover distribution set forth in Section 8.6(a) of the Plan.

        (1)    Although a non-spouse beneficiary may roll over directly a distribution as provided in the above paragraph, the distribution is not subject to the direct rollover requirements of Code Section 401(a)(31), the notice requirements of Code Section 402(f) or the mandatory withholding requirements of Code Section 3405(c).  If a non-spouse beneficiary receives a distribution from the Plan, the distribution is not eligible for a "60-day" rollover.

        (2)    If the Participant's named beneficiary is a trust, the Plan may make a direct rollover to an individual retirement account on behalf of the trust, provided the trust is a designated beneficiary within the meaning of Code Section 401(a)(9)(E).

        (3)    A non-spouse beneficiary may not roll over an amount which is a required minimum distribution under Code Section 401(a)(9).

    Section 8.7   <u>Claim and Review Procedure</u>.  In the following claims procedures, the person making the claim (either the Participant or his beneficiary) is called the "claimant."  The claimant is entitled to have a representative (such as an attorney) assist him or handle his claim and any appeal, and such a representative is called an "authorized representative."

(a)    General Claim Procedure.

(1)   Claim Denial.   If a claim for benefits under the Plan is wholly or partially denied, the Retirement Committee shall furnish the claimant or authorized representative with a written or electronic notice of the denial within a reasonable period of time (generally 90 days after the Retirement Committee receives the claim, or 180 days if the Retirement Committee determines that special circumstances require an extension of time for processing the claim and furnishes written notice of the extension to the claimant or authorized representative before the initial 90-day period ends).    The Retirement Committee's written extension notice must indicate the special circumstances requiring an extension of time for processing the claim and the date by which the Retirement Committee expects to render its decision on the claim.

Any written or electronic notice of denial of benefits shall set forth, in an understandable manner, the following information:

a.   The specific reason(s) for the denial of the claim;

b.   Reference to the specific Plan provision(s) on which the denial is based;

c.   A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why that material or information is necessary; and

d.   A description of the Plan's review procedures and the time limits applicable to those procedures, including a statement of the claimant's right to bring a civil action under ERISA Section 502(a) following a denial on review.

(2)  Appeal of Denied Claim.  The claimant or authorized representative may appeal the Retirement Committee's decision denying the claim within 60 days after the claimant or authorized representative receives the Retirement Committee's notice denying the claim by submitting a written appeal to the Retirement Committee.  The claimant or authorized representative may submit to the Retirement Committee written comments, documents, records and other information relating to the claim.  The claimant or authorized representative shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claim.

The Retirement Committee will make the decision on the appeal of a denied claim.  The Retirement Committee's review of the denied claim shall take into account all comments, documents, records and other information submitted by the claimant or authorized representative relating to the claim, without regard to whether these materials were submitted or considered by the Retirement Committee in its initial decision on the claim.

The Retirement Committee's decision on the appeal of a denied claim shall be made within a reasonable period of time (generally 60 days after the receipt of the claim or 120 days if the Retirement Committee determines that special circumstances require an extension of time for processing the claim and

furnishes written notice of the extension to the claimant or authorized representative before the initial 60-day period ends indicating the special circumstances requiring extension of time and the date by which the Retirement Committee expects to render a decision on the claim). The Retirement Committee will furnish the claimant or authorized representative with written or electronic notice of the decision on appeal. In the case of a decision on appeal upholding the Retirement Committee's initial denial of the claim, the Retirement Committee's notice of its decision on appeal shall set forth, in an understandable manner, the following information:

    a. The specific reason(s) for the decision on appeal;

    b. Reference to the specific Plan provision(s) on which the decision on appeal is based;

    c. A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claim for benefits; and

    d. A statement of the claimant's right to bring a civil action under ERISA Section 502(a).

    (b)    <u>Benefit Claims Procedure for Claims Arising in Connection With Disability</u>

    (1)    <u>Claim Denial</u>. If a claim for disability benefits under the Plan is wholly or partially denied, the Retirement Committee shall furnish the claimant or his authorized representative with written or electronic notice of the denial, within a reasonable period of time, generally not to exceed 45 days after the Human Resources Director receives the medical evidence provided by the Participant or, in the event the Human Resources Director has the Participant evaluated by a licensed physician, 45 days after the Human Resources Director receives the results of the evaluation. This 45-day period may be extended for up to 30 days, if the Retirement Committee both determines that such an extension is necessary due to matters beyond its control and notifies the claimant in writing, prior to the expiration of the initial 45-day period, of the circumstances requiring the extension of time and the date by which the Retirement Committee expects to render a decision. If, prior to the end of the first 30-day extension period, the Retirement Committee determines that, due to matters beyond its control, it cannot render a decision within that extension period, the period for making the decision may be extended for up to an additional 30 days, provided that the Retirement Committee notifies the claimant in writing, prior to the expiration of the first 30-day extension period, of the circumstances requiring the second extension and the date by which the Retirement Committee expects to render a decision. In the case of any extension, the notice of extension shall specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed

to resolve those issues, and the claimant will be given at least 45 days within which to provide the specified information.

Any written or electronic notice of the denial of disability benefits shall set forth, in an understandable manner, the following information:

> a. The specific reason(s) for the denial of the claim;

> b. Reference to the specific Plan provision(s) on which the denial is based;

> c. A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

> d. A description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under Section 502(a) of the ERISA following a denial on review; and

> e. If the Retirement Committee relied upon an internal rule, guideline, protocol, or other similar criterion in making the adverse determination, the notice shall set forth the specific rule, guideline, protocol, or other similar criterion or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request. If the adverse benefit determination is based on a medical judgment, the notice also shall set forth an explanation of the scientific or clinical judgment for the determination, applying the Plan's terms to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

(2)    Appeal of Denied Claim.    The claimant or authorized representative may appeal the Retirement Committee's decision denying his claim within 180 days after the claimant or authorized representative receives the Retirement Committee's notice denying the claim. The claimant or authorized representative may submit written comments, documents, records, and other information relating to the claim. The claimant or authorized representative shall be provided, upon request and free of charge, reasonable access to, and copies of all documents, records, and other information relevant to the claim.

The review of the Retirement Committee's initial adverse benefit determination shall not give deference to such initial determination and shall be conducted by a named fiduciary ("Reviewer") of the Plan who is (and whose members are) neither the individual who made the initial adverse benefit determination nor a subordinate of that individual. The review of the claim and the Retirement Committee's denial of the claim shall take into account all comments, documents, records, and other information submitted by the claimant or authorized representative relating to the claim, without regard to whether these

materials were submitted or considered in the initial decision on the claim. In deciding an appeal of any initial adverse benefit determination that is based, in whole or in part, on a medical judgment, the Reviewer shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment. Medical or vocational experts whose advice was obtained on behalf of the Retirement Committee in connection with its adverse benefit determination shall be identified to the claimant or authorized representative, regardless of whether the Retirement Committee relied upon the advice in making the benefit determination. The health care professional whom the Reviewer consults in making its review of the initial adverse benefit determination shall be an individual who is neither an individual whom the Retirement Committee consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual.

The Reviewer's decision on the appeal of a denied claim shall be made within a reasonable period of time (not to exceed 45 days after receipt of the claimant's request for review, unless the Reviewer determines that special circumstances (such as a need to hold a hearing) require an extension of time for processing the claim and furnishes written notice of the extension to the claimant or his authorized representative before the initial 45-day period. In no event shall such extension exceed a period of 45 days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Reviewer expects to render the determination on review. The Reviewer will furnish the claimant or authorized representative with a written or electronic notice of the decision on appeal. In the case of a decision on appeal upholding the Retirement Committee's initial denial of the claim, the Reviewer's notice of the decision on appeal shall set forth, in an understandable manner, the following information:

a. The specific reason(s) for the decision on appeal;

b. Reference to the specific Plan provision(s) on which the decision on appeal is based; and

c. A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim for benefits; and

d. If the Reviewer relied upon an internal rule, guideline, protocol, or other similar criterion in making the adverse determination, the notice shall set forth the specific rule, guideline, protocol, or other similar criterion or a statement that such rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

If the adverse benefit determination is based on a medical judgment, the notice also shall set forth an explanation of the scientific or clinical judgment for the determination, applying the Plan's terms to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

(c)     Exhaustion of Claims.  After exhaustion of the claims and review procedure as provided herein, nothing shall prevent the claimant from pursing any other legal or equitable remedy otherwise available, including the right to bring a civil action under Section 502(a) of ERISA, if applicable.  Notwithstanding the foregoing, no legal action may be commenced or maintained against the Company, Adopting Company or the Retirement Committee more than ninety (90) days after the claimant has exhausted the administrative remedies set forth in this Section 8.7.

Section 8.8     No Assignment of Benefits.  The right of any Participant or Beneficiary to any benefit or payment under the Plan or Trust or to any Account maintained as provided by the Plan shall not be subjected to voluntary or involuntary transfer, alienation or assignment, and to the fullest extent permitted by law, shall not be subject to attachment, execution, garnishment, sequestration or other legal or equitable process.  The preceding sentence shall also apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a Participant pursuant to a domestic relations order, unless such order is determined to be a QDRO, or any domestic relations order entered before January 1, 1985.  The Plan Administrator shall establish a written procedure to determine the qualified status of domestic relations orders and to administer distributions under qualified orders.  To the extent provided under such QDROs, a former spouse of a Participant shall be treated as the spouse or surviving spouse for all purposes under the Plan.

If the Participant's Account under the Plan shall become subject to any "domestic relations order" which (1) is a "qualified domestic relations order" satisfying the requirements of Section 414(p) of the Internal Revenue Code and (2) requires the immediate distribution in a single lump sum of the entire portion of the Participant's Account required to be segregated for the benefit of an Alternate Payee, then the entire interest of such Alternate Payee shall be distributed in a single lump sum within ninety (90) days following the Employer's notification to the Participant and the Alternate Payee that the domestic relations order is qualified under Section 414(p) of the Internal Revenue Code, or as soon as practicable thereafter.  Such distribution to an Alternate Payee shall be made even if the Participant has not separated from the service of the Employer.  Any other distribution pursuant to a QDRO shall not be made earlier than the Participant's termination of service, or his attainment of age fifty (50), if earlier, and only in a manner permitted under the Plan.

For purposes of this Section 8.8, "Alternate Payee" shall mean any spouse, former spouse, child or other dependent of a Participant who is recognized by a domestic relations order as having a right to receive all or a portion of the benefits payable under the Plan with respect to such Participant.  The restrictions of this Section 8.8 will not apply to an offset to a Participant's benefit against an amount that the Participant is ordered to pay the Plan with respect to a judgment, order or decree issued or a settlement entered into, on or after August 5, 1997, in accordance with Code Section 401(a)(13)(C) and (D).

Effective April 6, 2007, a domestic relations order that otherwise satisfies the requirements for a QDRO will not fail to be a QDRO: (i) solely because the order is issued after, or revises, another domestic relations order or QDRO; or (ii) solely because of the time at which the order is issued, including issuance after the annuity starting date or after the participant's death. Such a domestic relations order is subject to the same requirements and protections that apply to QDROs.

Section 8.9   Medium of Payment.   Distribution of benefits in respect of a Participant's interest in the Investment Funds other than the Company Stock Funds shall be made in cash. Distribution of benefits in respect of a Participant's interest in the Company Stock Funds will be made in whole shares of Company Stock, cash or a combination of both (except that the value of any fractional shares will be paid in cash); provided, however, that the Retirement Committee shall notify the Participant of his right to demand distribution of his interest in the Company Stock Funds entirely in cash.   The Trustee will make distributions from the Trust only on instructions from the Retirement Committee and neither the Company nor the Trustee shall be required to register Company Stock in order to distribute the Company Stock.   Company Stock to be distributed shall be subject to such restrictions (executed by legends on certificates, stop transfer orders and other commercially reasonable means) and each Participant or Beneficiary shall be required to execute such investment letter or other documents as may, in the opinion of counsel to the Company, be required to distribute the Company Stock without registration under any applicable federal or state securities laws.

Section 8.10   Unclaimed Account Procedure.   Neither the Trustee nor the Retirement Committee shall be obliged to search for, or ascertain the whereabouts of, any Participant or Beneficiary.   The Retirement Committee, by certified or registered mail addressed to his last known address of record with the Retirement Committee or the Employer, shall notify any Participant or Beneficiary that he is entitled to a distribution under this Plan, and the notice shall quote the provisions of this Section.   If the Participant fails to claim his benefits or make his whereabouts known in writing to the Retirement Committee within a reasonable period of time and the Retirement Committee does not know the whereabouts of the Participant or his Beneficiary, the Retirement Committee shall then notify the Social Security Administration of the Participant's (or Beneficiary's) failure to claim the distribution to which he is entitled.   The Retirement Committee shall request the Social Security Administration to notify the Participant (or Beneficiary) pursuant to the procedures it has established for this purpose.   If the Participant or Beneficiary fails to claim his benefits or make his whereabouts known in writing to the Retirement Committee after such a diligent effort to ascertain his whereabouts, the amount so distributable shall be treated as a forfeiture pursuant to the Plan.   In the event a Participant or Beneficiary is located subsequent to his benefit being reallocated, such benefit shall be restored.

Section 8.11   Payment in the Event of Legal Disability.   Payments to any Participant or Beneficiary shall be made to the recipient entitled thereto in person or upon his personal receipt, in form satisfactory to the Retirement Committee, except when the recipient entitled thereto shall be under a legal disability, or, in the sole judgment of the Retirement Committee, shall otherwise be unable to apply such payment in furtherance of his own interest and advantage.   The Retirement Committee may, in such event, in its sole discretion, direct all or any portion of such payments to be made in any one or more of the following ways:

(i)   To such person directly;

(ii)     To the guardian of his person or conservator of his estate;

(iii)    To a relative or friend of such person, to be expended for his benefit; or

(iv)     To a custodian for such person under any Uniform Gifts to Minors Act.

Section 8.12   <u>Retirement Committee Decisions</u>. The decision of the Retirement Committee, in each case, will be final, binding, and conclusive upon all persons ever interested hereunder.  The Retirement Committee shall not be obliged to see to the proper application or expenditure of any payment so made.  Any payment made pursuant to the power herein conferred upon the Retirement Committee shall operate as a complete discharge of all obligations of the Trustee and the Retirement Committee, to the extent of the distributions so made.

Section 8.13   <u>Execution of Receipts and Releases</u>.  Any payment to any Participant, or to his legal representative or Beneficiary, in accordance with the provisions of the Plan, shall to the extent thereof be in full satisfaction of all claims hereunder against the Plan and Trust.  The Retirement Committee may require such Participant, legal representative, or Beneficiary, as a condition precedent to such payment, to execute a receipt and release therefor in such form as it shall determine.

Section 8.14   <u>Financial Hardship Distribution from Employee Contribution Account.</u>

(a)     In the event the Plan Administrator determines that a Participant has a financial hardship, the Plan Administrator shall direct the Trustee to distribute to the Participant, in one lump-sum, all or part of the Participant's Employee Contribution Account that is attributable to the Participant's Elective Employer Contributions and the income allocable to such contributions that has been credited to the Participant's Employee Contribution Account as of December 31, 1988.

(b)     The Plan Administrator shall not allow a financial hardship distribution to be made to a Participant unless the requirements of Section 8.14 are satisfied.

(1)   The Participant applies in writing for the distribution and submits written documentation to the Plan Administrator indicating that his or her requested distribution is necessary to satisfy a financial need arising from:

a.  expenses for (or necessary to obtain) medical care that would be deductible under Section 213(d) (determined without regard to whether the expenses exceed 7.5% of adjusted gross income) for the Participant or the Participant's dependents;

b.    the purchase (excluding mortgage payments) of the Participant's principal residence;

c.  the payment of tuition and related educational fees and room and board for the next twelve months of post-secondary education for the Participant, the Participant's spouse, the Participant's children, or Internal Revenue Code Section 152 dependents without regard to Section 152(b)(1), (b)(2), and (d)(1)(B);

d.  the Participant's need to prevent the eviction from his principal residence or the foreclosure on the mortgage of the Participant's principal residence;

e.  the Participant's need to pay burial or funeral expenses for the Participant's deceased parent, spouse, children or dependents as defined in Section 152 without regard to Section 152(b)(1), (b)(2), and (d)(1)(B);

f.  the payment for expenses for the repair of damage to the Participant's residence that would qualify for the casualty deduction under Section 165 (determined without regard to whether the loss exceeds 10% of adjusted gross income); or

g.  such other events that the Commissioner of the Internal Revenue Service specifies, through the publication of revenue rulings, notices and other documents of general availability, as giving rise to an immediate and heavy financial need.

(2)  The Participant's hardship distribution:

a.  must be in an amount not exceeding the amount of the need arising under Section 8.14(b)(1)(a)-(g) above, including amounts necessary to pay any federal, state or local income tax or penalties reasonably anticipated to result from the distribution and not reasonably available from other resources of the Participant. For this purpose, the Participant's resources shall be deemed to include those assets of his spouse and minor children that are reasonably available to the Participant;

b.  cannot be made until the Participant has obtained all distributions, other than hardship distributions, and all nontaxable loans that are currently available under all qualified and nonqualified plans of the Employer; and

c.  shall result in the Participant being suspended from making Elective Employer Contributions or after-tax contributions to the Plan and all other plans maintained by the Employer for the six-month period beginning on the date the Participant receives a distribution pursuant to this Section 8.14.

(3)  The Participant's hardship distribution is made in an amount not exceeding the amount of the need arising under paragraph (b)(1)(a)-(g) above, and the distribution satisfies such other conditions as the Commissioner of the Internal Revenue Service specifies, through the publication of revenue rulings, notices, and other documents of general availability, as necessary to cause a hardship distribution to be deemed to satisfy the Participant's immediate and heavy financial need.

(c)  A distribution may be treated as necessary to satisfy a financial need if the Plan Administrator relies upon the Participant's written representation (unless the Plan Administrator has actual knowledge to the contrary) that the need cannot be relieved:

(1)     Through reimbursement or compensation by insurance or otherwise;

(2)     By liquidation of the Participant's assets, to the extent such liquidation would not itself cause an immediate and heavy financial need;

(3)     By cessation of salary reduction contributions; or

(4)     By other distributions or non-taxable loans from the Plan or any other qualified retirement plan, or by borrowing from commercial sources on reasonable commercial terms.

Section 8.15    Age 59½ In-Service Withdrawals.  In the event a qualified pension plan containing a provision permitting a Participant to withdraw all or a portion of his or her account balance upon reaching age 59½ while still employed is merged into this Plan or consolidated into the Plan, or transfers its assets and liabilities to this Plan, then, with respect to such amounts that were available for withdrawal under such other plan's age 59½ in-service withdrawal provision which are transferred to this Plan pursuant to such merger, consolidation or transfer of assets and liabilities only, the Plan shall permit such Participant to withdraw such amounts upon the attainment of age 59½.

Section 8.16    Roth Elective Deferrals.  In the event a qualified pension plan containing Roth Elective Deferrals is merged into this Plan or consolidated into the Plan, or transfers its assets and liabilities to this Plan, then, with respect to such amounts that are Roth Elective Deferrals which are transferred to this Plan pursuant to such merger, consolidation or transfer of assets and liabilities only, the Plan shall (a) separately account for such Roth Elective Deferrals (and the investment earnings and losses thereon) in a Roth Elective Deferral Account and (b) treat the Roth Elective Deferrals in the same manner as Elective Employer Contributions for all Plan purposes.  The Plan Administrator is authorized to implement an ordering rules procedure for withdrawals from a Participant's Account attributable to Elective Employer Contributions and Roth Elective Deferrals (including, but not limited to, hardships, in-service withdrawals and Plan loans).  For purposes of this Section 8.16, "Roth Elective Deferrals" shall mean an elective deferral that was included in the Participant's gross income at the time the deferral was made and was irrevocably designated as a Roth Elective Deferral by the Participant in his or her deferral election.

Section 8.17    Disclosure to Participants.  The following information will be provided to Participants:

(a)     Quarterly Reports - As of each Adjustment Date, the Retirement Committee shall furnish a quarterly report to each Participant setting forth the balances, if any, credited to his Employee and Employer Contribution Accounts including a statement of his interests in the Investment Funds.

(b)     Summary Plan Description - Each Participant shall be furnished with a Summary Plan Description of the Plan, as required by ERISA, which shall be updated from time to time as required by ERISA and Department of Labor regulations thereunder.

(c)     Summary Annual Report - Within nine (9) months after the end of each Plan Year, or such later date permitted by regulations of the Department of Labor, each

Participant shall be furnished with the summary annual report of the Plan as required by ERISA in the form prescribed by regulations of the Department of Labor.

(d)    <u>Additional Disclosure</u> - The Committee shall make available for examination by any Participant copies of the Plan, the Trust Agreement and the last annual report of the Plan filed (on Form 5500) with the Internal Revenue Service. Upon written request of any Participant, the Retirement Committee shall furnish copies of such documents, and may make a reasonable charge to cover the cost of furnishing such copies as provided in the regulations of the Department of Labor.

ARTICLE IX

LOANS

Section 9.1    <u>Loans to Participants.</u>

(a)    The Retirement Committee, upon the written application of a Participant, may in its sole discretion, based on procedures and rules established by the Board, make loans to Participants and Beneficiaries under the following circumstances: (1) loans shall be made available to all Participants and Beneficiaries on a reasonably equivalent basis; (2) loans shall not be made available to Highly Compensated Employees in an amount greater than the amount made available to other Participants and Beneficiaries; (3) loans shall bear a reasonable rate of interest; (4) loans shall be adequately secured; and (5) shall provide for repayment over a reasonable period of time.

(b)    The principal amount of any loan made pursuant to this Section 9.1 shall be obtained from applying an amount up to one-half of the value of a Participant's vested Account. The principal amount of the loan shall be obtained from the Participant's vested interest in each sub account in the proportion to each sub account on the date of the loan and the principal amount withdrawn from the Participant's vested Account shall be obtained from the Participant's interests in the Investment Funds in proportion to their relative value on the date of the loan.

(c)    A loan to a Participant shall be a Participant-directed investment of his Account. No Account other than the borrowing Participant's Account shall share in the interest paid on the loan or bear any expense or loss because of the loan. The repayment of principal and interest shall be proportionately divided between the Participant's sub accounts based upon the relative amounts withdrawn from each sub account. Repayments allocated to each sub account shall be reinvested in accordance with the Participant's investment direction in effect on the date of such repayment pursuant to Article V of the Plan.

(d)    Loans made pursuant to this Section (when added to the outstanding balance of all other loans made by the Plan to the Participant) shall be limited to the lesser of:

(1)    $50,000 reduced by the excess (if any) of the highest outstanding balance of loans from the Plan to the Participant during the one year period ending on the day before the date on which such loan is made, over the outstanding balance of loans from the Plan to the Participant on the date on which such loan was made, or

(2)      one-half (1/2) of the present value of the nonforfeitable Accrued Benefit of the Participant under the Plan attributable to the Participant's Employee Contribution Account, Rollover Contribution Account, and the vested portion of the Employer Contribution Account.

For purposes of this limit, all plans of the Employer shall be considered one plan.

(e)      Loans shall provide for level amortization with payments to be made not less frequently than quarterly over a period not to exceed five (5) years.  However, loans used to acquire any dwelling unit which, within a reasonable time, is to be used (determined at the time the loan is made) as a principal residence of the Participant shall provide for periodic repayment over a reasonable period of time that may exceed five (5) years.  For this purpose, a principal residence has the same meaning as a principal residence under Internal Revenue Code Section 1034.

(f)      Any loans granted or renewed shall be made pursuant to a Participant loan program.  Such loan program shall be established in writing and must include, but need not be limited to, the following:

(1)      the identity of the person or positions authorized to administer the Participant loan program;

(2)      a procedure for applying for loans;

(3)      the basis on which loans will be approved or denied;

(4)      limitations, if any, on the types and amounts of loans offered and the minimum loan permitted under the Plan;

(5)      the procedure under the program for determining a reasonable rate of interest;

(6)      the types of collateral which may secure a Participant loan; and

(7)      the events constituting default and the steps that will be taken to preserve Plan assets.

## ARTICLE X
## ADMINISTRATION OF THE PLAN

Section 10.1   Retirement Committee.  A Retirement Committee consisting of from three to nine persons shall be appointed by and serve at the pleasure of the Company.  The Retirement Committee shall be the Named Fiduciary with respect to the management and operation of the Plan.  All usual and reasonable expenses of the Retirement Committee shall be paid by the Company.  Any members of the Retirement Committee who are Employees shall not receive compensation for their services on the Retirement Committee.  The Retirement Committee shall have the powers, duties and responsibilities given to it in this Plan, together with such other powers, duties and responsibilities delegated to it by the Board.  The members of the Retirement Committee shall serve without compensation for their services hereunder.  To the extent permitted by ERISA, the Company shall indemnify the members of the Retirement Committee for and hold them harmless against any and all liabilities, losses, costs or expenses (including reasonable legal fees and expenses) of whatsoever kind and nature which may be imposed on, incurred by or asserted against a Retirement Committee member at any time by reason of service

on the Retirement Committee, provided that the same did not arise on account of the dishonesty, gross negligence or willful misconduct of such Retirement Committee member.

Section 10.2    Plan Administrator.  The Company shall be the Plan Administrator.  The Plan Administrator shall be a Named Fiduciary responsible for the performance of all reporting and disclosure obligations under ERISA.  The Plan Administrator shall be the designated agent for service of legal process.

Section 10.3    Investment Direction.

(a)      The Company may direct, by written notice to the Trustee, the segregation of any portion or portions of the Trust Fund constituting the Investment Funds other than the Company Stock Funds in an investment account or investments accounts and in such event may direct investment or appoint an Investment Manager to direct the investment and reinvestment of any such investment account.   Any such Investment Manager shall either (i) be registered as an investment adviser under the Investment Advisers Act of 1940; (ii) be a bank, as defined in that Act; or (iii) be an insurance company qualified to perform investment management services under the laws of more than one state. If investment of the Trust Fund is to be directed in whole or in part by an Investment Manager, the Company shall deliver to the Trustee a copy of the instruments appointing the Investment Manager and evidencing the Investment Manager's acceptance of such appointment, an acknowledgment in writing by the Investment Manager that it is a fiduciary of the Plan, and, if applicable, a certificate evidencing the Investment Manager's current registration under said Act.  The Trustee shall be fully protected in relying upon such instruments and certificate until otherwise notified in writing by the Company.

(b)      The Trustee shall follow the directions of the Company, its agent, or Investment Manager regarding the investment and reinvestment of the Trust Fund, or such portion thereof as shall be under management by the Company or an Investment Manager. The Trustee shall be under no duty or obligation to review any investment to be acquired, held or disposed of pursuant to such directions nor to make any recommendations with respect to the disposition or continued retention of any such investment.  The Trustee shall have no liability or responsibility for acting or not acting pursuant to the direction of, or failing to act in the absence of any direction from, the Company or Investment Manager, unless the Trustee knows that by such action or failure to act it would be itself committing a breach of fiduciary duty or participating in a breach of fiduciary duty by the Company or Investment Manager.  The Company hereby agrees to indemnify the Trustee and hold it harmless from and against any claim or liability which may be asserted against the Trustee by reason of its acting or not acting pursuant to any direction or refraining from acting pursuant to any direction from the Company or an Investment Manager or failing to act in the absence of any such direction.

(c)      An Investment Manager, at any time and from time to time, may issue orders for the purchase or sale of securities directly to a broker, and in order to facilitate such transaction, the Trustee upon request shall execute and deliver appropriate trading authorizations.   Written notification of the issuance of each such order shall be given promptly to the Trustee by the Investment Manager, and the execution of each such order shall be confirmed by written advice to the Trustee by the broker.  Such notification shall be

authority for the Trustee to pay for securities purchased against receipt thereof and to deliver securities sold against payment thereof, as the case may be.

(d)     In the event that an Investment Manager should resign or be removed by the Company, the Trustee, after written notification of such resignation or removal, shall manage the investment of the portions of the Trust Fund previously managed by the Investment Manager unless and until it is notified that the Company will direct investment or it is notified of the appointment of another Investment Manager with respect thereto.

(e)     The accounts, books and records of the Trustee shall reflect the segregation of any portion or portions of the Trust Fund with respect to which investments are directed by an Investment Manager or the Company in a separate account or accounts.

Section 10.4     Allocation of Responsibilities.    The Retirement Committee, the Plan Administrator, the Company, each Employer, any Investment Manager, and the Trustee each shall be a Named Fiduciary of the Plan.  Each fiduciary shall have only those specific powers, duties, responsibilities and obligations as are specifically given to it under the Plan and Trust. Each fiduciary shall be responsible for the proper exercise of its own powers, duties and responsibilities and obligations under the Plan and Trust, but shall not be responsible for any act or failure to act of another fiduciary.  Each fiduciary may rely upon any direction, information or action of another fiduciary as being proper under the Plan and the Trust, and no fiduciary is required to inquire into the propriety of any such direction, information or action.  Responsibility shall be allocated among the Named Fiduciaries as follows:

(a)     The Trustee shall be responsible for the management and investment of the Trust Fund unless directed by the Company or any Investment Manager appointed by the Company, as a Named Fiduciary.

(b)     The Company shall be responsible for all functions assigned or reserved to it under the Plan and the Trust, including the right to remove or replace the Trustee, to appoint additional fiduciaries, to amend the Plan and the Trust, to direct investment, and to appoint an Investment Manager.

(c)     Each Employer shall be responsible for determining Authorized Leaves of Absence and eligibility for retirement of a Disability Retirement Date.

(d)     The Plan Administrator shall be responsible for all reporting and disclosure.

(e)     The Retirement Committee shall be responsible for the management, operation and administration of the Plan, and shall have all powers necessary to accomplish that purpose.  The Retirement Committee's duties include those described in Section 10.5.

(f)     The Investment Manager shall be responsible for functions described in Section 10.3.

Section 10.5     Duties of Retirement Committee.  The Retirement Committee shall:

(a)     Construe and interpret the Plan, decide all questions of eligibility including, without limitation, the determination of those individuals who are deemed employees of the Employer (or any Affiliated Employer) and determine and manner of payment of any benefits hereunder;

(b)     Determine whether any amount is included in a Participant's Compensation;

(c)     Prescribe procedures to be followed by Participants or Beneficiaries in filing for benefits;

(d)     Receive from any Employer and from the Participants such information as shall be necessary for the proper administration of the Plan;

(e)     Furnish any Employer, upon request, such annual reports with respect to the administration of the Plan as are reasonable and appropriate;

(f)     Receive from the Trustee, review, and keep on file (as it deems convenient or required reports of the financial condition and of the receipts and disbursements of the Trust Fund;

(g)     Establish a funding policy for the Plan and Trust;

(h)     Determine the time of distribution of benefits; and

(i)     Determine whether and on what terms to enter into an acquisition loan on behalf of the Plan.

The Retirement Committee shall have no power to add to, subtract from or modify any of the terms of the Plan, or to change or add to any benefits provided by the Plan, or to waive or fail to apply any requirements of eligibility for a benefit under the Plan. The Committee's decision shall be final, binding and conclusive on all parties having or claiming a benefit under this Plan. Any discretionary action to be taken under the Plan by the Committee with respect to Employees and Participants or with respect to benefits shall be uniform in their nature and applicable to all persons similarly situated.

Section 10.6   Rules and Regulations for the Plan.   The Retirement Committee may adopt such rules as it deems necessary, desirable or appropriate. When making a determination or calculation, the Retirement Committee shall be entitled to rely upon information furnished by a Participant or Beneficiary, an Employer, representatives of an Employer, or the Trustee.

Section 10.7   Retirement Committee Internal Procedures.   The Retirement Committee may act at a meeting or in writing without a meeting. The Retirement Committee shall elect one of its members as chairman, appoint a secretary, who may or may not be a Retirement Committee member, and advise the Trustee of such actions in writing. The secretary shall keep a record of all meetings and forward all necessary communications to the Employers and the Trustee. The Retirement Committee may adopt such by-laws or regulations as it deems desirable for the conduct of its affairs. All decisions of the Retirement Committee shall be made by the vote of the majority, including actions in writing taken without a meeting. A dissenting Retirement Committee member who, within a reasonable time after he has knowledge of any action or failure to act by the majority, registers his dissent in writing delivered to the other Retirement Committee members, the Employers, and the Trustee, shall not be responsible for any such action or failure to act.

Section 10.8   Authorization of Benefit Payments.   The Retirement Committee shall issue directions to the Trustee concerning all benefits which are to be paid from the Trust Fund pursuant to the provisions of the Plan.

{02693933.4}                                                    70

Section 10.9   Application and Forms for Benefits.   The Retirement Committee may require a Participant to complete and file with the Retirement Committee an application for a benefit and all other forms approved by the Retirement Committee, and to furnish all pertinent information requested by the Retirement Committee.  The Retirement Committee may rely upon all such information so furnished it, including the Participant's current mailing address.

Section 10.10  Assistants and Representatives.   The Retirement Committee, the Plan Administrator, the Trustee, the Company and any Employer may appoint such assistants or representatives, including counsel (who may be counsel for the Company), as they deem necessary for the effective exercise of their duties in administering the Plan and the Trust.  The Retirement Committee, the Plan Administrator, the Trustee, the Company and any Employer may rely on an opinion of such counsel and may delegate to such assistants and representatives any powers and duties, both ministerial and discretionary, as they deem expedient or appropriate.

Section 10.11  Multiple Fiduciary Capacities.   Any person (individual or entity) or group of persons may serve in more than one fiduciary capacity with respect to the Plan.

Section 10.12  Discretionary Acts.   No act taken or omitted in the exercise of any discretionary responsibility by the Retirement Committee, the Plan Administrator, the Trustee, the Company or any Employer shall thereafter affect the right or power of the aforesaid parties to exercise said discretionary authority in a different manner in the same or similar circumstances.

Section 10.13  Plan Administrative Expenses.   The reasonable expenses of administering the Plan, including but not limited to (i) the fees and expenses of any employee and of the Trustee for the performance of their duties under the Plan and Trust, (ii) the expenses incurred by the members of the Retirement Committee, by the Investment Manager and by an independent purchasing agent in the performance of their duties under the Plan (including reasonable compensation for any legal counsel, certified public accountants, consultants, and agents and cost of services rendered in respect of the Plan), and (iii) all other proper charges and disbursements of the Trustee or the members of the Retirement Committee, the Investment Manager and an independent purchasing agent (including settlements of claims or legal actions approved by counsel to the Plan) shall become a direct charge upon the assets of the Trust and shall be paid out of the Trust Fund, and allocated to and deducted from the Accounts of Participants by the Retirement Committee, unless the Company pays such expenses directly or reimburses the Trustee for such expenses but the Company will not become obligated on account of such expenses.

Section 10.14  Trustee's Expenses.   Brokerage fees, transfer taxes and any other expenses incident to the purchase or sale of securities by the Trustee may be deemed to be part of the cost of such securities, or deducted in computing the proceeds therefrom, as the case may be, if the Company does not pay such expenses directly.

ARTICLE XI
TOP HEAVY PROVISIONS

Section 11.1   Definitions.   As used in this Article, the following terms shall have the meanings hereinafter set forth:

(a)     Aggregate Account:  A Participant's Aggregate Account as of the Determination Date is the sum of:

(1)     his account balance as of the most recent Valuation Date occurring within a twelve (12) month period ending on the Determination Date;

(2)     an adjustment for any Contributions due as of the Determination Date. Such adjustment shall be the amount of any Contributions actually made after the Valuation Date but before the Determination Date, except for the first Plan Year when such adjustment shall also reflect the amount of any Contributions made after the Determination Date that are allocated as of a date in that first Plan Year;

(3)     any Plan distributions made within the Plan Year that includes the Determination Date or within one (1) preceding Plan Year (to include any distributions under a terminated plan which if it had not been terminated would have been required to have been included in an Aggregation Group); provided, however, in case of any distribution made for a reason other than Separation from Service, death, or disability, the "1-year period" above shall be substituted with a "5-year period." However, if the case of distributions made after the Valuation Date and prior to the Determination Date, such distributions are not included as distributions for top heavy purposes to the extent that such distributions are already included in the Participant's Aggregate Account balance as of the Valuation Date.   Notwithstanding anything herein to the contrary, all distributions, including distributions made prior to January 1, 1984, and distributions under a terminated plan which if it had not been terminated would have been required to be included in an Aggregation Group will be counted;

(4)     any Participant Contributions, whether voluntary or mandatory. However, amounts attributable to tax deductible qualified deductible employee contributions shall not be considered to be a part of the Participant's Aggregate Account balance;

(5)     with respect to unrelated rollovers and plan-to-plan transfers (ones which are both initiated by the Employee and made from a plan maintained by one employer to a plan maintained by another employer), if this Plan provides for rollovers or plan-to-plan transfers, it shall always consider such rollover or plan-to-plan transfers as a distribution for the purpose of this Section.  If this Plan is the plan accepting such rollovers or plan-to-plan transfers, it shall not consider such rollovers or plan-to-plan transfers accepted after December 31, 1983 as part of the Participant's Aggregate Account balance.  However, rollovers or plan-to-plan transfers accepted prior to January 1, 1984 shall be considered as part of the Participant's Aggregate Account balance;

(6)     with respect to related rollovers and plan-to-plan transfers (ones either not initiated by the Employee or made to a plan maintained by the same employer), if this Plan provides the rollover or plan-to-plan transfer, it shall not be counted as a distribution for purposes of this Section.  If this Plan is the plan accepting such rollover or plan-to-plan transfers as part of the Participant's Aggregate Account balance, irrespective of the date on which such rollover or plan-to-plan transfer is accepted; and

(7)     for the purpose of determining whether two employers are to be treated as the same employer in (v) and (vi) above, all employers aggregated under Section 414(b), (c) or (m) of the Internal Revenue Code are treated as the same employer.

(b)     <u>Aggregation Group</u>:   Either a Required Aggregation Group or a Permissive Aggregation Group as hereinafter defined.   Only those plans of the Employer in which the Determination Dates fall within the same calendar year shall be aggregated in order to determine whether such plans are Top Heavy Plans.

(c)     <u>Defined Benefit Plan</u>:   Any plan established and qualified under Internal Revenue Code Sections 401 or 403, except to the extent that it is, or is treated as, a Defined Contribution Plan.

(d)     <u>Defined Contribution Plan</u>:   This Plan and any other plan which is established and qualified under Internal Revenue Code Sections 401 or 403, which provides for an individual account for each Participant therein and for benefits based solely on the amount contributed to each Participant's Account(s) and any income and expenses or gains or losses (both realized and unrealized) which may be allocated to such account.

(e)     <u>Determination Date</u>:   The last day of the preceding Plan Year or, in the case of the first Plan Year to which this Article applies, the last day of such Plan Year.

(f)     <u>Key Employee</u>:   Any Employee or former Employee (and his beneficiaries) who, at any time during the Plan Year that contains the Determination Date, has been included in one of the following categories:

(1)     an officer of the Employer (as that term is defined within the meaning of the regulations under Internal Revenue Code Section 416) having an annual 415 Compensation greater than $130,000 (as adjusted under Code Section 416(i)(1); or

(2)     an owner (or one considered as owning within the meaning of Section 318 of the Internal Revenue Code) of both more than a ½ percent interest as well as one of the ten largest interests in the Employer, and having annual compensation as defined in Section 415 of the Internal Revenue Code greater than the dollar limit in effect under Sections 415(c)(1)(A) of the Internal Revenue Code for the Year.

(3)     a Five Percent Owner; or

(4)     a "one percent owner" of the Employer having an annual 415 Compensation from the Employer of more than $150,000.  "One percent owner" means any person who owns (or is considered as owning within the meaning of Internal Revenue Code Section 318) more than one percent (1%) of the outstanding stock of the Employer or stock possessing more than one percent (1%) of the total combined voting power of all stock of the Employer.   For purposes of this Section, the determination of "415 Compensation" shall be made by including amounts which are contributed by the Employer pursuant to a salary reduction agreement and which are not includible in the gross income of the Participant under Code Sections 125, 132(f)(4), 402(e)(3), 402(h)(1)(B), 403(b) or 457(b), and Employee contributions described in Code Section 414(h)(2) that are

treated as Employer contributions.  Catch-Up Contributions shall not be included in the determination of "415 Compensation" for purposes of the minimum allocation in Section 11.3(b).

Beneficiaries of an Employee acquire the character of the Employee who performed services for the Employer.  Also, inherited benefits will retain the character of the benefits of the Employee who performed services for the Employer.

In determining percentage ownership hereunder, employers that would otherwise be aggregated under Code Sections 414(b), (c), (m) and (o) shall be treated as separate employers.  In determining whether an individual has 415 Compensation of more than $150,000, 415 Compensation from each employer required to be aggregated under Code Sections 414(b), (c), (m) and (o) shall be taken into account.

For purpose of subsection (2) above, if two Employees have the same interest in the Employer, the Employee having the greater annual compensation from the Employer shall be treated as having the larger interest.

(g)     Non-Key Employee:  Any Employee who is not a Key Employee.

(h)     Permissive Aggregation Group:  This Plan and any other plan or plans (not required to be included in a Required Aggregation Group) which the Employer elects to include in an Aggregation Group, provided that the resulting group, taken as a whole, continues to satisfy the provisions of Internal Revenue Code Sections 401(a)(4) or 410.  In the case of a Permissive Aggregation Group, only a plan that is part of the Required Aggregation Group will be considered a Top Heavy Plan if the Permissive Aggregation Group is a Top Heavy Group.  No plan in the Permissive Aggregation Group will be considered a Top Heavy Plan if the Permissive Aggregation Group is not a Top Heavy Group.

(i)     Present Value of Accrued Benefit:  A Participant's Present Value of Accrued Benefit shall be determined under the provisions of the applicable Defined Benefit Plan.

(j)     Required Aggregation Group:  In determining a Required Aggregation Group hereunder, each plan of the Employer in which an Employee is a Participant, and each other plan of the Employer which enables any plan in which a Key Employee participates to meet the requirements of Internal Revenue Code Sections 401(a)(4) or 410, will be required to be aggregated.  In the case of a Required Aggregation Group, each plan in the group will be considered a Top Heavy Plan if the Required Aggregation Group is a Top Heavy Group.  No plan in the Required Aggregation Group will be considered a Top Heavy Plan if the Required Aggregation Group is not a Top Heavy Group.

(k)     Top Heavy Group:  An Aggregation Group in which, as of the Determination Date, the sum of:

(1)     The Present Value of Accrued Benefits of Key Employees under all Defined Benefit Plans included in the group, and

(2)     The Aggregate Accounts of Key Employees under all Defined Contribution Plans included in the group,

exceeds sixty percent (60%) of a similar sum determined for all Participants.

(l)     Top Heavy Plan Year:  A Plan Year during which the Plan is a Top Heavy Plan in accordance with Section 11.2 hereof.

Section 11.2    Top Heavy Determination.

(a)     This Plan shall be a Top Heavy Plan for any Plan Year in which, as of the Determination Date, (i) the Present Value of Accrued Benefits of Key Employees, or (ii) the sum of the Aggregate Accounts of Key Employees under the Plan and any plan of an Aggregation Group, exceeds sixty percent (60%) of the Present Value of Accrued Benefits or the Aggregate Accounts of all Participants under this Plan and any plan of an Aggregation Group.  If any Participant is a Non-Key Employee for any Plan Year, but such Participant was a Key Employee for any prior Plan Year, such Participant's Present Value of Accrued Benefit and/or Aggregate Account shall not be taken into account for purposes of determining whether this Plan is a Top Heavy Plan (or whether any Aggregation Group which includes this Plan is a Top Heavy Group).

(b)     If any individual has not performed services for the Employer at any time during the 5-year period ending on the Determination Date, any Present Value of Accrued Benefit or Aggregate Account of such individual shall not be taken into account.

Section 11.3    Requirements.  For any Top Heavy Plan Year, the following requirements shall apply.

(a)     Minimum Vesting.  Notwithstanding the provisions of Section 7.5 hereof, for any Top Heavy Plan Year, the vested portion of any Participant's Employer Contribution Account(s) shall be determined on the basis of the Participant's number of Years of Vesting Service according to the following schedules (unless the vesting schedule contained in such Section 7.5  produces a greater vested percentage):

| Years of Vesting Service | Vested Percentage |
|---|---|
| Less than 2 | 0% |
| 2 but less than 3 | 20% |
| 3 but less than 4 | 40% |
| 4 but less than 5 | 60% |
| 5 but less than 6 | 80% |
| 6 or more | 100% |

If in any Plan Year, the Plan ceases to be a Top Heavy Plan the Employer may, in its sole discretion, elect to (i) continue to apply this vesting schedule in determining the vested portion of any Participant's account, or (ii) revert to the vesting schedule in effect before this Plan becomes a Top Heavy Plan.  Any such reversion shall be treated as a Plan amendment pursuant to the terms of this Plan.  A Participant with at least three (3) Years of Vesting Service as of the expiration date of the election period, may elect to have his nonforfeitable percentage computed under the Plan without regard to such amendment.  If a Participant fails to make such election, then such Participant shall be subject to the new vesting schedule.  The Participant's election

period shall commence on the adoption date of the amendment and shall end 60 days after the latest of:

    (1)    the adoption date of the amendment,

    (2)    the effective date of the amendment, or

    (3)    the date the Participant receives written notice of the amendment from the Employer.

    (b)    <u>Minimum Allocation</u>. For any Top Heavy Plan Year, the following minimum annual allocation shall be provided for each Non-Key Employee:

    (1)    The Employer Contributions allocated to the Employer Contribution Account(s) of each Non-Key Employee, shall be equal to at least three percent (3%) of such Non-Key Employee's compensation. However, should the sum of Employer Contributions allocated to the Account of each Key Employee for such Top Heavy Plan Year be less than three percent (3%) of each Key Employee's compensation, the sum of such Employer Contributions allocated to the Account of each Non-Key Employee shall be equal to the largest percentage allocated to the Account(s) of any Key Employee. If a Non-Key Employee is a Participant in both this Plan and another Defined Contribution Plan of the Employer, the minimum allocation described hereinabove shall only be required in one of such plans. In addition, the minimum allocation may be satisfied by a contribution under this Plan and not under the other plans.

Elective Employer Contributions may not be taken into account, nor any Employer Matching Contributions necessary to satisfy the nondiscrimination requirements of Sections 401(k) or 401(m) of the Internal Revenue Code, to determine if the Plan meets the minimum allocation requirement.

    (2)    If a Key Employee is a participant in both a Defined Contribution Plan and a Defined Benefit Plan that are both part of a Top Heavy Group, the defined contribution and defined benefit fractions set forth in Section 6.5 hereof shall remain unchanged provided that the Employer Contribution Account(s) of each Non-Key Employee who is a participant receives an extra allocation (in addition to the minimum allocation set forth above) equal to not less than one percent (1%) of such Non-Key Employee's Compensation. For purposes of this subsection, the percentage allocated to the account of any Key Employee shall be equal to the ratio of the sum of the Employer Contribution allocated on behalf of such Key Employee divided by the compensation for such Key Employee. Employer Elective Contributions on behalf of Key Employees and Employer Matching Contributions allocated to Key Employees are treated as Employer Contributions in determining the minimum required contribution under this Section 11.3.

    (3)    For any Top Heavy Plan Year, the minimum allocations set forth above shall be allocated to the Employer Contribution Account(s) of all Non-Key Employees who are Participants and who are employed by the Employer on the last day of the Plan Year, including Non-Key Employees who have (A) failed to complete one thousand (1,000) Hours of Service during the year, or (B) declined

to make mandatory contributions (if required) to the Plan, or (C) failed to make Employer Elective Contributions.

(4)     Notwithstanding anything herein to the contrary, in any Plan Year in which a Non-Key Employee is a Participant in both this Plan and a Defined Benefit Plan, included in a Required Aggregation Group, and both such plans are Top Heavy Plans, the Employer shall only be required to provide a Non-Key Employee with either the full separate minimum defined benefit plan benefit or the full separate defined contribution plan allocations.  Therefore, for Non-Key Employees who are participating in a Defined Benefit Plan maintained by the Employer and in this Plan and the minimum benefits under Internal Revenue Code Section 416(c)(2) are accruing to a Non-Key Employee under such plan, the minimum allocations provided for above, shall not be applicable, and 7-1/2% of Compensation shall be contributed on behalf of such Non-key Employee under this Plan and the extra minimum contribution required by (c)(ii) above shall be provided by this Plan.

Employer Matching Contributions shall be taken into account for purposes of satisfying the minimum contribution requirements set forth in this Section and in Code Section 416(c)(2). The preceding sentence shall apply with respect to Employer Matching Contributions under the Plan or, if the Plan provides that the minimum contribution requirement shall be met in another plan, such other plan.  Employer Matching Contributions that are used to satisfy the minimum contribution requirements shall be treated as matching contributions for purposes of the Actual Contribution Percentage test and other requirements of Code Section 401(m).

ARTICLE XII
AMENDMENTS AND ACTIONS BY EMPLOYER

Section 12.1   Amendments.   The Company reserves the right to amend the Plan provided such amendment does not cause any part of the Trust to be used for, or diverted to, any purpose other than the exclusive benefit of Participants, former Participants or their Beneficiaries, except as may be necessary to make the Plan comply with ERISA or the Internal Revenue Code.  No amendment to the Plan shall decrease a Participant's Account balance or eliminate an optional form of distribution.   Notwithstanding the preceding sentence, a Participant's Account balance may be reduced to the extent permitted under Section 412(c)(8) of the Internal Revenue Code.  Furthermore, no amendment to the Plan shall have the effect of decreasing a Participant's vested interest determined without regard to such amendment as of the later of the date such amendment is adopted or the date it becomes effective.

Section 12.2   Amendment of Vesting Schedule.   If the Plan's vesting schedule is amended or the Plan is amended in any way that directly or indirectly affects the computation of a Participant's nonforfeitable percentage, or if the Plan is deemed amended by an automatic change to or from a Top Heavy vesting schedule, each Participant with at least three (3) years of service with the Employer may elect within a reasonable period after the adoption of the amendment or change, to have his nonforfeitable percentage computed under the Plan without regard to such amendment or change.  The period during which the election may be made shall commence with the date the amendment is adopted or deemed to be made and shall end on the latest of:

(i)     60 days after the amendment is adopted;

(ii)     60 days after the amendment becomes effective; or

(iii)    60 days after the Participant is issued written notice of the amendment by the Employer or Plan Administrator.

## ARTICLE XIII
## SUCCESSOR EMPLOYER AND MERGER OR CONSOLIDATION OF PLAN

Section 13.1   Successor Employer.   In the event of the dissolution, merger, consolidation or reorganization of an Employer, provision may be made by which the Plan and Trust will be continued by a successor.

Section 13.2   Merger of Plan.   In the case of any merger of this Plan into or consolidation of this Plan with, or transfer of assets or liabilities of this Plan to, any other qualified pension benefit plan, each Participant (if this Plan then terminated), must receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit the Participant would have been entitled to receive immediately before the merger, consolidation or transfer (if this Plan had then terminated).

Section 13.3   Merger into Plan.  In the case of any merger of another qualified pension plan into this Plan or the consolidation of another qualified pension plan into the Plan, or the transfer of assets of liabilities of another qualified pension plan to this Plan, the Plan Administrator shall have the discretion to apply, in a uniform nondiscriminatory manner, such other applicable qualified pension plan's vesting schedule or the Plan's three year cliff vesting schedule (if such schedule is more favorable), to the unvested accounts that are transferred to this Plan pursuant to such merger, consolidation or transfer of assets and liabilities.

## ARTICLE XIV
## PLAN TERMINATION

Section 14.1   Right to Terminate.  Each Employer may terminate its participation in the Plan at any time in accordance with the procedures set forth in this Article XIV.  In the event of the dissolution, merger, consolidation or reorganization of the Employer, the Plan shall terminate and the Trust shall be liquidated unless the Plan is continued by a successor to the Employer in accordance with Section 13.1, or unless the Employer elects to continue the Trust and make distribution to the Participants or their Beneficiaries at times and in a manner selected by the Employer.

Section 14.2   Partial Termination.  Upon termination of the Plan with respect to a group of Participants which constitutes a partial termination of the Plan, the Accounts of the Participants affected thereby shall vest fully and the Trustee shall, in accordance with the direction of the Retirement Committee, allocate and segregate for the benefit of such Participants then or theretofore employed by the Employer with respect to which the Plan is being terminated, the proportionate interest of such Participants in the Trust.

Section 14.3   Liquidation of the Trust.  Upon termination of the Plan, the Accounts of all Participants affected thereby shall become fully vested, and the Retirement Committee shall direct the Trustee to distribute the assets remaining in the Trust, after payment of any expenses properly chargeable thereto, to Participants, former Participants and Beneficiaries in proportion to their respective Account balances, unless the Employer elects to continue the Trust as provided in Section 13.1.

ARTICLE XV
ADOPTION BY AFFILIATED EMPLOYERS

Section 15.1   Adoption by Affiliated Employers.   Notwithstanding anything herein to the contrary, with the consent of the Company, any other Affiliated Employer may adopt this Plan and all of the provisions hereof, and participate herein and be known as an Employer, by a properly executed document evidencing said intent.

Section 15.2   Requirements to Participate.

(a)   Each Affiliated Employer shall be required to use the same Trustee as provided in this Plan.

(b)   The Trustee may commingle, hold and invest as one Trust Fund all contributions made by Affiliated Employers, as well as all increments thereof.  The assets of the Plan shall, on an ongoing basis, be available to pay benefits to all Participants and Beneficiaries under the Plan without regard to the Employer or Affiliated Employer who contributed such assets.

(c)   The transfer of any Participant from or to an Employer participating in this Plan, whether he be an Employee of the Company or an Affiliated Employer, shall not affect such Participant's rights under the Plan, and all amounts credited to such Participant's Accounts as well as his accumulated service time with the transferor or predecessor, and his length of participation in the Plan, shall continue to his credit.

(d)   All rights and values forfeited by termination of employment shall inure, in accordance with Section 7.8, only to the benefit of the Participants of the Employer by which the forfeiting Participant was employed.

Section 15.3   Designation of Agent.  Each Employer shall be deemed to be a part of this Plan; provided, however, that with respect to all of its relations with the Trustee and Committee for the purpose of this Plan, each Employer shall be deemed to have designated irrevocably the Company as its agent.  Unless the context of the Plan clearly indicates the contrary, the word "Employer" shall be deemed to include each Affiliated Employer as related to its adoption of the Plan.

Section 15.4   Employee Transfers.  It is anticipated that an Employee may be transferred between Employers, and in the event of any such transfer, the Employee involved shall carry with him his accumulated service and eligibility.  No such transfer shall effect a termination of employment hereunder, and the Employer to which the Employee is transferred shall thereupon become obligated hereunder with respect to such Employee in the same manner as was the Employer from whom the Employee was transferred.

Section 15.5   Affiliated Employer's Contribution.   All contributions made by an Affiliated Employer, as provided for in this Plan, shall be determined separately by each Affiliated Employer, and shall be paid to and held by the Trustee for the exclusive benefit of the Employees of such Affiliated Employer and the Beneficiaries of such Employees, subject to all the terms and conditions of this Plan.  On the basis of the information furnished by the Committee, the Trustee shall keep separate books and records concerning the affairs of each Affiliated Employer hereunder and as to the accounts and credits of the Employees of each Affiliated Employer.

Section 15.6   <u>Amendment</u>.  Amendment of this Plan by the Company at any time when there shall be an Affiliated Employer hereunder shall be binding on each Affiliated Employer.

Section 15.7   <u>Discontinuance of Participation</u>.   Any Affiliated Employer shall be permitted to discontinue or revoke its participation in the Plan.   At the time of any such discontinuance or revocation, satisfactory evidence thereof and of any applicable conditions imposed shall be delivered to the Company or Trustee.  The Trustee shall thereafter transfer, deliver and assign contracts and other Trust Fund assets allocable to the Participants of such Affiliated Employer to such new Trustee as shall have been designated by such Affiliated Employer, in the event that it has established a separate pension plan for its Employees provided, however, that no such transfer shall be made if the result is the elimination or reduction of any "Section 411(d)(6) protected benefits."  If no successor is designated, the Trustee shall retain such assets for the Employees of said Affiliated Employer.  In no such event shall any part of the corpus or income of the Trust as it relates to such Affiliated Employer be used for or diverted for purposes other than for the exclusive benefit of the Employees of such Affiliated Employer.

Section 15.8   <u>Retirement Committee's Authority</u>.  The Retirement Committee shall have authority to make any and all necessary rules or regulations, binding upon all Affiliated Employers and all Participants, to effectuate the purpose of this Article.

ARTICLE XVI<br><u>MISCELLANEOUS</u>

Section 16.1   <u>Employment Status</u>.  Nothing contained in this Plan shall be construed as a contract of employment between an Employer and any Employee, or as creating a right of any Employee to be continued in the employment of an Employer, or as a limitation of the right of an Employer to discharge any of its Employees, with or without cause.

Section 16.2   <u>Titles</u>.  Titles of articles and sections hereof are for general information only and this Plan shall not be construed by reference to such titles.

Section 16.3   <u>Gender and Number of Words</u>.  Words written in the singular shall include the plural, words in the plural shall include the singular, the male gender shall include the female gender, and the female gender shall include the male gender, unless the context shall clearly and absolutely indicate a more restrictive meaning.

Section 16.4   <u>Severability</u>.  In the event any provision of the Plan shall be held to be illegal or invalid for any reason, the illegality or invalidity shall not affect the remaining provision of the Plan, but shall be fully severable and the Plan shall be construed and enforced as if the illegal or invalid provision had never been included herein.

Section 16.5   <u>Notice</u>.   Any notice required to be given herein by the Trustee, the Employer, or the Retirement Committee, shall be deemed delivered when (a) personally delivered or (b) placed in the United States mail, in an envelope addressed to the last known address of the person to whom the notice is given.

Section 16.6   <u>Waiver of Notice</u>.  Any person entitled to notice under the Plan may waive the notice.

Section 16.7   <u>Applicable Law</u>.  This Plan shall be governed by the laws of the State of Alabama.

Section 16.8   <u>Heroes Earnings Assistance and Relief Tax Act of 2008</u>.

(a)   Death Benefits. In the case of a death occurring on or after January 1, 2007, if a Participant dies while performing qualified military service (as defined in Code § 414(u)), the survivors of the Participant are entitled to any additional benefits (other than benefit accruals relating to the period of qualified military service) provided under the Plan as if the Participant had resumed and then terminated employment on account of death.

(b)   Differential Wage Payments. For years beginning after December 31, 2008, (i) an individual receiving a differential wage payment, as defined by Code §3401(h)(2), is treated as an employee of the employer making the payment, (ii) the differential wage payment is treated as compensation, and (iii) the Plan is not treated as failing to meet the requirements of any provision described in Code §414(u)(1)(C) by reason of any contribution or benefit which is based on the differential wage payment.

(c)   Separation from Service. Notwithstanding Section 16.8(b)(i), for purposes of Code §401(k)(2)(B)(i)(I), an individual is treated as having been separated from service during any period the individual is performing service in the uniformed services described in Code §3401(h)(2)(A).

(d)   Suspension of Deferrals. If an individual elects to receive a distribution by reason of Separation from Service, death or disability, the individual may not make an elective deferral or employee contribution during the 6-month period beginning on the date of the distribution.

(e)   Nondiscrimination Requirement. Section 16.8(b)(iii) applies only if all employees of the Company performing service in the uniformed services described in Code §3401(h)(2)(A) are entitled to receive differential wage payments (as defined in Code §3401(h)(2)) on reasonably equivalent terms and, if eligible to participate in a retirement plan maintained by the employer, to make contributions based on the payments on reasonably equivalent terms (taking into account Code §§410(b)(3), (4), and (5)).

Section 16.9   Merger of SmartInvestor Retirement Plan. Effective as of January 1, 2013, or as soon as administratively practicable thereafter, the SmartInvestor Retirement Plan shall be merged into the Plan. Said merger shall be accomplished in accordance with the provisions of Section 414(1) of the Internal Revenue Code of 1986, the applicable regulations of the Treasury Department promulgated thereunder and the provisions of the Employee Retirement Income Security Act of 1974, as amended. The merger of the plans shall not result in, or be considered a termination of, either the SmartInvestor Retirement Plan or the Plan. The assets of the trust of the SmartInvestor Retirement Plan shall be transferred to the trust for the Plan and the account balances of each SmartInvestor Retirement Plan participant shall be transferred to the Plan.

IN WITNESS WHEREOF, BBVA Compass Bancshares, Inc. has caused this instrument to be executed by its duly authorized officers on the _18_ day of _NOVEMBER_, 2013.

ATTEST:                                        BBVA COMPASS BANCSHARES, INC.

By: _____              By: _____

Its: _Vice President and Assistant Secretary_    Its: _CHRO_

[02693933.4]