FILED
2021 Apr-15 PM 08:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT E

# PRIMA SERVICE AGREEMENT
# FOR
# COMPASS BANCSHARES, INC.

Effective Date: As of September 30, 2005

**PARTIES**

Prima Capital Management, Inc., a Colorado corporation (hereinafter referred to as "Prima"); and Compass Bancshares, Inc., a Delaware corporation (hereinafter referred to as "Compass").

**RECITALS**

A. Prima is in the business of conducting research and due diligence, and compiling and analyzing data regarding, separate account products and mutual funds, and providing consulting and advisory services.

B. Prima has knowledge and experience in the area of providing advice regarding investment options in qualified retirement plans.

C. Compass is the sponsor of the Compass Bancshares, Inc. Employee Stock Ownership Plan and the Compass Bancshares, Inc. SmartInvestor Retirement Plan (together, the "Plans"), each a qualified defined contribution plan, for the benefit of its eligible employees (the "Participants").

D. Compass, on the request of the Retirement Committee for the Plans, desires to engage Prima in providing consulting, research, due diligence, recommendations, monitoring, reporting at the Plan level and other services relating to the investment options now and hereafter available in the Plans.

E. Compass acknowledges that Prima shall have no discretionary authority or control over the property of any Participant and any information developed by Prima is not prepared for any specific Participant, does not serve as the only basis for any investment decision for a Participant, and is not investment advice based on the particular needs of a Participant regarding such matters as investment policies or strategy, overall portfolio composition or diversification of a Participant's investments. Compass acknowledges that Prima does not provide investor suitability testing.

**NOW, THEREFORE**, in consideration of the recitals, covenants and conditions contained in this Agreement, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1. <u>Prima Services</u>.

    a) <u>Plan Consulting</u>. Prima shall assist Compass in the review, evaluation and preparation of investment policies, objectives, and guidelines for the Plans.

    b) <u>Mutual Fund Recommendations</u>. Prima shall assist Compass with identifying mutual funds that are consistent, considering current and historical information about the funds, with the Plans' investment policies, objectives, and guidelines. Compass acknowledges and agrees that investments of the Plans are subject to risks associated with investing in securities, including various market, currency, economic, political and business risks, and that Prima does not guarantee the performance of the investments of the Plans or guarantee that Prima's advice with respect to the investments of the Plans will be successful.

    c) <u>Monitoring, Maintenance and Reporting</u>. On a quarterly basis beginning with the quarter ended on the Effective Date, Prima shall complete a full review of the mutual funds offered in the Plans. The review will focus on performance, personnel, adherence to the investment mandate, and regulatory issues. Prima will provide written reports of its review and present the results of its review, along with any recommendations for modification of the mutual fund offerings, to the Plans' Retirement Committee. Prima's reports and presentation additionally will include general information about economic conditions, detailed information about each fund's status according to the applicable Plan investment policies, objectives, and guidelines, and such other details about each individual fund and its positioning within the overall investments of each Plan as the Plans' Retirement Committee may reasonably request. As requested by the Plans' Retirement Committee, Prima representatives will present their quarterly reports and findings, via telephone or in person, at the quarterly meeting of the Plans' Retirement Committee. When considered necessary or appropriate by the Plans' Retirement Committee, Prima will perform searches to recommend replacement or additional funds. In the event of any material development affecting any fund offered by a Plan that merits disclosure to the Plan's Retirement Committee in

advance of the next anticipated regular reporting and presentation, Prima will promptly notify the Retirement Committee.

2. <u>Service Fees</u>.

   a) <u>Consulting, Research, Due Diligence, Monitoring and Reporting</u>. For services performed by Prima as described in Section 1, subject to adjustment pursuant to Section 2(d), Compass agrees to pay Prima the following fees on a quarterly basis in accordance with Section 2(b):

      (i)  A flat fee of $6,250, which covers up to five (5) mutual funds included in the Plans' investment options.

      (ii) A fee of $750 for each additional mutual fund included in the Plans' investment options.

   b) <u>Invoicing and Payment</u>.

      (i) For the performance of services described in Section 1 with respect to each calendar quarter, Prima shall submit an invoice to Compass for amounts due for that quarter within 30 days of the end of that quarter, and Compass shall pay the amount of the invoice, less any amounts disputed in good faith, within 30 days of receiving the invoice from Prima. Payment will be made by check to the address below:

      Prima Capital Holding, Inc.
      600 17th Street
      Suite 2300 South
      Denver, CO  80202
      Phone:  303-573-7315

      (ii) Notwithstanding Section 2(a) and Section 2(b)(i), for services to be performed with respect to the calendar quarters ended September 30, 2005, December 31, 2005, March 31, 2006, and June 30, 2006, Compass shall pay to Prima within 30 days of the execution and delivery of this Agreement a lump-sum advance payment of an amount determined in accordance with Section 2(a) for the number

of mutual funds in the Plans as of the Effective Date for Services to be performed for such four (4) quarterly periods, and such payment shall be non-refundable provided Prima actually performs such Services. In the event additional mutual funds are added to the Plans' investment options during such four (4) quarterly periods, Compass shall pay additional amounts to Prima for such funds in accordance with Section 2(a) and subject to Section 2(b)(iii).

(iii) Notwithstanding Section 2(a) and Section 2(b)(i), with respect to each new mutual fund added to the Plans' investment options after the Effective Date, Compass shall pay to Prima within 30 days of the fund's becoming available as an investment option in the Plans a lump-sum advance payment of an amount determined in accordance with Section 2(a) for Services to be performed for the four (4) quarterly periods beginning with the period in which the fund first becomes available as an investment option, and such payment shall be non-refundable provided Prima actually performs such Services.

c) <u>Payment Obligations</u>. The obligations of Compass pursuant to Sections 2(a) and 2(b) with respect to services rendered by Prima under this Agreement shall survive the termination of the Agreement for any reason. If any undisputed payment is not received within 45 days after the date due, Compass will pay a late fee of 1.5% per month.

d) <u>Service Fee Changes</u>. Prima shall provide Compass with at least ninety (90) days prior written notice of any service fee increase before the expiration of any term.

3. <u>Termination</u>.

a) Should Prima not receive its Service Fee within thirty (30) days of when due, Prima Shall have the right to give written notice to Compass, and if full payment for services rendered is not received within thirty (30) days after notice is sent, Prima may terminate the Agreement with Compass.

b) This Agreement shall apply to services to be performed hereunder with respect to the calendar quarter ended September 30, 2005, and for each calendar quarter thereafter through and including the calendar quarter ended September 30, 2006.

Beyond the foregoing initial term of this Agreement, this Agreement shall automatically renew for successive one (1)-year terms (meaning services for four calendar quarters) unless terminated at the end of any term by Compass' or Prima's providing the other party with at least sixty (60) days' prior written notice before the end of such term.

c) This Agreement may be terminated by either party immediately by written notice delivered via overnight or registered mail upon the occurrence of any of the following events:

(i) If the other ceases to do business, or otherwise terminates its business operations; or

(ii) If the other shall fail to promptly secure or renew any required license, registration, permit, authorization, or approval or exemption therefrom for the conduct of its business in the manner contemplated by this Agreement or if any such license, registration, permit, authorization or approval is revoked or suspended and not reinstated provided, however, that a party shall have ninety (90) days to cure such breach; or

(iii) If the other defaults or breaches any material term, condition or covenant of this Agreement, which default or breach is not remedied within thirty (30) days of written demand; or

(iv) If the ownership or control of the other party changes.

4. Independent Contractor. The parties hereto expressly understand and agree that each party is an independent contractor in the performance of each and every part of this Agreement, is solely responsible for all of its employees and agents and its labor costs and expenses arising in connection therewith. Neither party nor its agents or employees are the representatives of the other party for any purpose and neither party has the power or authority as agent, employee or any other capacity to represent, act for, bind or otherwise create or assume any obligation on behalf of the other party for any purpose whatsoever.

5. Assignment. No party shall voluntarily or by operation of law assign, hypothecate,

give, transfer, mortgage, sublet, license, or otherwise transfer or encumber all or any part of its rights, duties, or other interests in this Agreement or the proceeds thereof (collectively, "Assignment"), without the other party's prior written consent. Any attempt to make an Assignment in violation of this provision shall be a material default under this Agreement and any Assignment in violation of this provision shall be null and void. A name change, only, of either party does not apply to this Section.

6. Notice. All notices, requests, demands, and other communications required or permitted to be given under this Agreement shall be in writing and shall be conclusively deemed to have been duly given (1) when hand delivered to the other party; or (2) when received when sent by facsimile at the address and number set forth below (provided, however, that notices given by facsimile shall not be effective unless either (a) a duplicate copy of such facsimile notice is promptly given by depositing same in a United States post office with first-class postage prepaid and addressed to the parties as set forth below, or (b) the receiving party delivers a written confirmation of receipt for such notice either by facsimile or any other method permitted under this paragraph; additionally, any notice given by facsimile shall be deemed received on the next business day if such notice is received after 5:00 p.m. (recipient's time) or on a Non-business Day (as defined hereafter); or (3) three business days after the same have been deposited in a United States post office with first class, certified mail and return receipt requested postage prepaid and addressed to the party as set forth below; or (4) on the date of receipt by the party when deposited with a national overnight delivery service, postage prepaid, addressed to the party as set forth below, as evidenced by a confirmation of delivery from the delivery service provider.

To: Prima Capital Management, Inc.  
    600 17th Street, Suite 2300 South  
    Denver, CO 80202  
    Attn: J. Gibson Watson, III  
    Phone: (303) 573-7315 Ext. 202  
    Fax: (303) 573-7362  

To: Compass Bank  
    15 South 20th Street  
    Birmingham, AL 35233  
    Attn: Human Resources Executive  
    Phone: (205) 297-7107  
    Fax: (205) 297-3336  

With a copy to:  
Compass Bank

> 15 South 20th Street
> Birmingham, AL 35233
> Attn: General Counsel
> Phone: (205) 297-3263
> Fax: (205) 297-3043

7. <u>Counting Days</u>. If a party is required to complete the performance of an obligation under this Agreement by a date certain and such date is a Saturday, Sunday, or Federal bank holiday (collectively, a "Non-business Day"), then the date for the completion of such performance will be the next succeeding day that is not a Non-business Day.

8. <u>Severability</u>. If any term or provision of this Agreement is determined to be illegal, unenforceable, or invalid in whole or in part by a court of competent jurisdiction, such illegal, unenforceable, or invalid provisions or part thereof shall be stricken from this Agreement, and such provision shall not affect the legality, enforceability, or validity of the remainder of this Agreement. If any provision or part thereof of this Agreement is stricken in accordance with the provisions of this Section, then the stricken provision shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in tenor to the stricken provision as is possible.

9. <u>Attorneys' Fees</u>. If either party to this Agreement shall bring any court action, suit, counterclaim, or appeal for any relief against the other, declaratory or otherwise, to enforce the terms hereof or to declare rights hereunder (collectively, an "Action"), the losing party shall pay to the prevailing party a reasonable sum for attorneys' fees and costs incurred in bringing and prosecuting such Action and/or enforcing any judgment, order, ruling, or award (collectively, a "Decision") granted therein, all of which shall be deemed to have accrued on the commencement of such Action, but shall be payable only if such Action is prosecuted to a Decision. Any Decision entered in such Action shall contain a specific provision providing for the recovery of attorneys' fees and costs incurred in enforcing such Decision. The court may fix the amount of reasonable attorneys' fees and costs on the request of either party. For the purposes of this paragraph, attorneys' fees shall include, without limitation, fees incurred in the following: (1) post-judgment motions and collection actions; (2) contempt proceedings; (3) garnishment, levy, and debtor and third-party

examinations; (4) discovery; and (5) bankruptcy litigation. "Prevailing party" means the party that obtains substantially the relief sought by it in a Decision.

10. General Interpretation. The terms of this Agreement have been negotiated by the parties hereto and the language used in this Agreement shall be deemed to be the language chosen by the parties hereto to express their mutual intent. This Agreement shall be construed without regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted, or in favor of the party receiving a particular benefit under the Agreement.

11. Integration/Parol Evidence. This Agreement, including all Exhibits hereto, constitutes the entire agreement between the parties with regard to the subject matter hereof. This Agreement may only be amended by the mutual written agreement of the parties. This Agreement supersedes all previous agreements between or among the parties. There are no agreements, representations, or warranties between or among the parties other than those set forth in this Agreement.

12. Choice of Law. This Agreement shall be governed by and construed under the laws of the state of Colorado disregarding conflict of laws.

13. Signatures, Counterparts, and Facsimile. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement shall not be effective until the execution and delivery between each of the parties of at least one set of counterparts. The parties authorize each other to detach and combine original signature pages and consolidate them into a single document, each of which shall be sufficient proof of this Agreement. If executed by facsimile, each party shall send the other an original signature page.

14. General Warranties. Each party represents and warrants to the other that:

(a) It is a legal entity of the type set forth on the first page of this Agreement, duly organized, validly existing and in good standing in its state of organization and is qualified or registered, as required by law, in good standing in all jurisdictions where qualification or registration is necessary, and has all requisite corporate power and authority, and has taken or caused to be taken all necessary corporate action

(including any necessary shareholder action) necessary to execute, deliver, enter into and perform in accordance with this Agreement.

(b) Neither the execution nor delivery of this Agreement, nor performance of this Agreement, will conflict with, violate or result in a breach of or default under any provision of any contract or agreement, charter, bylaw, or other corporate document, any law, ordinance, rule, order, certificate, license, regulation or decree of the United States or any state, territory or political subdivision thereof, or any court, agency or other tribunal.

15. Prima Services Warranties. PRIMA REPRESENTS AND WARRANTS THAT IT WILL PERFORM ITS SERVICES UNDER THIS AGREEMENT AT ALL TIMES IN A PROFESSIONAL AND WORKMANLIKE MANNER ACCORDING TO THE EXPRESS STANDARDS AND SERVICE LEVELS CONTAINED IN THIS AGREEMENT OR, TO THE EXTENT AN EXPRESS STANDARD OR SERVICE LEVEL IS NOT PROVIDED, EMPLOYING AT LEAST A COMMERCIALLY REASONABLE STANDARD OF CARE FOR SERVICES OF A LIKE NATURE. PRIMA REPRESENTS AND WARRANTS THAT WITH RESPECT TO THE PERFORMANCE OF SERVICES UNDER THIS AGREEMENT, REPRESENTATIVES OF PRIMA INVOLVED IN THE DELIVERY OF ITS SERVICES SHALL HAVE THE REQUISITE KNOWLEDGE, SKILL AND EXPERTISE TO DELIVER THE SERVICES CONSIDERING, AMONG OTHER RELEVANT FACTORS, THE TERMS AND CONDITIONS OF THIS AGREEMENT, THE RECIPIENT OF THE SERVICES, AND THE NATURE OF THE SERVICES. PRIMA REPRESENTS AND WARRANTS THAT INFORMATION PROVIDED BY PRIMA IN CONNECTION WITH THE SERVICES WILL BE MATERIALLY ACCURATE AND COMPLETE, PROVIDED THAT, WITH RESPECT TO INFORMATION PRIMA OBTAINS FROM COMPASS OR THIRD PARTIES, PRIMA ONLY REPRESENTS AND WARRANTS THAT NOTHING ON THE FACE OF SUCH INFORMATION APPEARS TO BE INACCURATE OR INCOMPLETE AND THAT THE INFORMATION IS MATERIALLY ACCURATE AND COMPLETE TO THE BEST OF ITS KNOWLEDGE. TO ITS KNOWLEDGE, THE SERVICES TO BE PROVIDED BY PRIMA DO NOT INFRINGE OR MISAPPROPRIATE ANY COPYRIGHT, PATENT, TRADE SECRET, TRADEMARK OR OTHER

PROPRIETARY INTEREST OF ANY PERSON OR ENTITY, AND PRIMA HAS NOT RECEIVED ANY CLAIMS OF INFRINGEMENT WITH RESPECT TO THE SERVICES. NOTWITHSTANDING ANY OTHER PROVISION CONTAINED HEREIN, PRIMA DOES NOT REPRESENT AND WARRANT THE PERFORMANCE OF THE INVESTMENTS OF THE PLANS OR REPRESENT AND WARRANT THAT PRIMA'S ADVICE WITH RESPECT TO THE INVESTMENTS OF THE PLANS WILL BE SUCCESSFUL.

16. <u>Exclusive Limited Warranty and Remedies for Infringement.</u> IN ADDITION TO OTHER REPRESENTATIONS AND WARRANTIES MADE BY PRIMA HEREIN, PRIMA REPRESENTS AND WARRANTS THAT ITS PERFORMANCE OF THE SERVICES UNDER THIS AGREEMENT DOES NOT AND SHALL NOT VIOLATE ANY THIRD-PARTY RIGHTS IN ANY COPYRIGHT, PATENT, TRADE SECRET, TRADEMARK OR OTHER PROPRIETARY INTEREST. IN ADDITION TO THE INDEMNIFICATION PROVIDED HEREIN, IN THE EVENT OF ANY CLAIM OF INFRINGEMENT REGARDING PRIMA'S SERVICES, COMPASS' OTHER REMEDIES SHALL BE LIMITED TO THE FOLLOWING: (a) PRIMA MAY OBTAIN AT ITS SOLE EXPENSE A LICENSE ALLOWING FOR ITS CONTINUED PROVISION OF THE SERVICES TO COMPASS AS PROVIDED HEREIN, PROVIDED THAT SUCH LICENSE IS OBTAINED BY PRIMA NO LATER THAN, AND PRIMA'S SERVICES ARE NOT INTERRUPTED BEYOND, THIRTY (30) DAYS AFTER PRIMA HAS NOTICE OF THE INFRINGEMENT OR CLAIM OF INFRINGEMENT; (b) PRIMA MAY REPLACE THE SERVICES WITH A CONFORMING AND NON-INFRINGING REPLACEMENT, BUT ONLY IF COMPASS AGREES TO SUCH REPLACEMENT IN COMPASS' SOLE DISCRETION; OR (c) TERMINATION OF THIS AGREEMENT.

17. <u>Disclaimer of Warranties.</u> EXCEPT AS PROVIDED HEREIN, ALL SERVICES ARE PROVIDED "AS IS" AND PRIMA MAKES NO WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE SERVICES, OR ANY INFORMATION PROVIDED THEREIN, INCLUDING, BUT NOT LIMITED TO, MERCHANTABILITY, TITLE OR FITNESS FOR A PARTICULAR PURPOSE OR USE. CUSTOMER ACKNOWLEDGES THAT THE SERVICES ARE PROVIDED FOR INFORMATION PURPOSES ONLY AND THAT THE

PROVISION OF SUCH INFORMATION DOES NOT CONSTITUTE THE MAKING OR OFFERING OF INVESTMENT ADVICE BY PRIMA OR ANY OF ITS OFFICERS, EMPLOYEES, AFFILIATES, SUBSIDIARIES, SUCCESSORS AND ASSIGNS OR SUPPLIERS. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, NOTHING IN THIS PARAGRAPH SHALL IN ANY WAY LIMIT OR WAIVE ANY AVAILABLE RIGHT OF ACTION THAT YOU MIGHT HAVE AGAINST PRIMA UNDER THE INVESTMENT ADVISERS ACT OF 1940 OR ANY EQUIVALENT STATE LAWS.

18. <u>Limitation of Liability</u>. EXCEPT WITH RESPECT TO PRIMA'S INDEMNIFICATION OBLIGATIONS UNDER SECTION 19, PRIMA AND ANY SUPPLIER OF CONTENT OR INFORMATION ("SUPPLIER") SHALL NOT BE LIABLE FOR ANY LOST PROFITS, LOSSES, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR ANY CLAIM AGAINST PRIMA BY ANY OTHER PARTY. UNDER NO CIRCUMSTANCES SHALL PRIMA OR SUPPLIERS OR THEIR AGENTS BE LIABLE FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES EVEN IF CUSTOMER HAS ADVISED SPECIFICALLY OF THE POSSIBILITY OF SUCH DAMAGES, ARISING FROM ANY OF THE SERVICES, INCLUDING BUT NOT LIMITED TO, LOSS OF REVENUE, LOSS OF INVESTMENT CAPITAL, LOSS OF OR ANTICIPATED PROFITS OR LOST BUSINESS. NO ACTION, REGARDLESS OF FORM, ARISING OUT OF THE TRANSACTIONS UNDER THIS AGREEMENT MAY BE BROUGHT BY COMPASS MORE THAN TWO YEARS AFTER THE CAUSE OF ACTION HAS ACCRUED.

19. <u>Indemnification</u>. Each party (the "Indemnitor") shall indemnify, protect, defend, and hold harmless the other party, its directors, officers, employees and its agents (each, an "Indemnitee"), from and against any loss, expense (including without limitation reasonable attorneys' fees), liability, damage, demands, causes of action, controversies, obligations or liabilities arising out of or in connection with: (i) a claim by a third-party alleging an act or omission relating to Indemnitor's performance of this Agreement; or (ii) an assertion relating to this Agreement that the information, content or other materials or services provided are made available by the Indemnitor, or the use thereof, as specifically authorized by the Indemnitor, infringe any copyright or trademark rights of any third party, or are a misappropriation of any third party's

trade secret, or contain any libelous, defamatory, disparaging, pornographic or obscene materials, any claim, including without limitation any self-regulatory organization, state, or federal regulatory or securities claims. No obligation to indemnify shall arise unless (i) the Indemnitor shall have the sole control of the defense and/or settlement, provided, however, that Indemnitor shall not obligate, and shall not have the authority to obligate, Indemnitee to perform any action or forebear from performing any action other than the payment of moneys for which Indemnitor is obligated to indemnify Indemnitee hereunder; (ii) the Indemnitee furnishes to the Indemnitor, on reasonable request and at the Indemnitor's expense, information reasonably available to the Indemnitee for such defense; and (iii) the Indemnitee reasonably cooperates in any defense and/or settlement. The Indemnitee shall not admit any such claims without prior written consent of the Indemnitor. Each party agrees to notify the other party in writing of any demand, claim, or suit of which it becomes aware and with respect to which the notified party may be obligated to indemnify the notifying party hereunder.

20. <u>Confidentiality.</u>

(a) Confidential Information. For purposes of this Agreement, "Confidential Information" shall mean any technical or business information, which either party designates as confidential or which the other party should reasonably believe is confidential, including without limitation: any information or data that the parties or their affiliates provide to each other relative to their strategies, objectives, operational processes, products, customers, employees, finances, marketing materials, terms of contracts and pricing, historical or projected financial statements and assumptions, organizational documents, management information, system specifications, data, software and reports, and trade secrets and other confidential intellectual property rights. Confidential Information shall not include information which (i) is now or hereafter in the public domain through no breach of this Agreement; (ii) if already in a party's possession or is made available to a party on a non-confidential basis from a source other than the other party, provided that such information is not known by such party to be subject to another confidentiality agreement or other obligation of secrecy with the other party; (iii) has been independently acquired or developed by a party without violating any of the obligations under this Agreement; or (iv) either party is ordered to disclose by a court or regulatory agency, with appropriate

jurisdiction.

(b) In the event that any party (the "Receiving Party") is requested or required (in legal proceedings, subpoena, civil investigative demand or other similar process) to disclose any of the Confidential Information of another party (the "Disclosing Party"), the Receiving Party shall provide the Disclosing Party with prompt written notice of any such request or requirement so that the Disclosing Party, at its own expense, may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. If in the absence of a protective order or other remedy or the receipt of a waiver by the Disclosing Party, the Receiving Party is nonetheless, in the opinion of its counsel, compelled to disclose the Confidential Information to any tribunal, the Receiving Party may, without liability to itself, disclose to such tribunal only that portion of the Confidential Information which its counsel advises the Receiving Party is legally required to disclose, provided that the Receiving Party exercises reasonable efforts to preserve the confidentiality of the Confidential Information, including, without limitation, cooperating with the Disclosing Party, at its own expense, to obtain an appropriate protective order or other reliable assurance that confidential treatment shall be accorded the Confidential Information by such tribunal.

(c) Compass and Prima each will hold the other party's affiliates' Confidential Information in confidence and will safeguard it as provided herein. The party receiving Confidential Information will not, directly or indirectly, report, publish, distribute, disclose, or otherwise disseminate the Confidential Information, or any portion thereof, to any third party, and will not use the Confidential Information, or any portion thereof, for the benefit of itself or any third party, or for any purpose, except only as necessary to perform its duties and exercise its rights under this Agreement, or as expressly authorized in writing by the party who owns such Confidential Information. Disclosure of Confidential Information internally by a recipient will be limited to those of its affiliates and their respective officers, directors, employees, and agents who have a "need to know" such Confidential Information, as well as the recipients auditors, attorneys, consultants and regulators. In order to safeguard such Confidential Information, each party shall (a) inform each recipient of such Confidential Information of the confidential nature thereof and of the

requirements of this Agreement, and (b) exercise such other precautions as reasonably necessary to prevent any improper use or disclosure of the Confidential Information. No Confidential Information may be released to any third party vendor unless authorized by law or the consent of the owner of such Confidential Information has been obtained and the third party vendor has signed an agreement satisfactory to such owner to abide by the terms of this Section.

(d) Compass and Prima acknowledge and agree that monetary damages would not be a sufficient or an adequate remedy for any breach or anticipated breach of this Section and that, in addition to any other legal or equitable remedies which may be available, each party shall be entitled to specific performance and injunctive relief for any breach or anticipated breach of this Section.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

PRIMA CAPITAL MANAGEMENT, INC.

By: _____

Name: J. GIBSON WATSON III

Title: PRESIDENT

Date: 12/13/05

COMPASS BANCSHARES, INC.

By: _____

Name: Garrett R. Hegel

Title: Chief Financial Officer

Date: 12/9/05