FILED
2021 May-13  PM 05:20
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHRISTINE D. DRAKE,** individually and on behalf of others similarly situated, | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No.  2:20-cv-02076-ACA** |
| **v.** | ) ) | <u>**Oral Argument Requested**</u> |
| **BBVA USA BANCSHARES, INC.**, as named fiduciary, **ROSILYN HOUSTON, SHANE CLANTON, JAVIER HERNANDEZ, KIRK PRESLEY, CELIE NIEHAUS, JOE CARTEE, JIM HESLOP, ANGEL REGLERO**, individually and as members of the Investment Committee, **ENVESTNET ASSET MANAGEMENT, INC.** as investment fiduciary, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## BBVA'S BRIEF IN SUPPORT OF ITS
## MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

## TABLE OF CONTENTS

Table of Authorities ................................................................................ iii

Statement of Undisputed Material Facts ....................................................1

  A.  The 401(k) Plan and the Committee. ..............................................1

  B.  The Committee's management of the Plan. .....................................4

  C.  Cautionary notices and investment disclosures. .............................7

  D.  Drake and her investments. ...........................................................8

Procedural History .................................................................................9

Argument.............................................................................................10

I.   ERISA's safe harbor protects BBVA from liability for losses caused by Drake's individual investment choices. ....................................10

II.  Drake's litigation theory is fundamentally flawed.....................13

III. BBVA's denial of Drake's claim for benefits was correct and, at minimum, was not arbitrary and capricious. ...............................16

  A.  The "arbitrary and capricious" standard of review applies because the Plan expressly gives BBVA discretion.............................17

  B.  BBVA's decision to deny Drake's claims was reasonable. .............19

  C.  BBVA did not operate under a conflict of interest..........................20

IV. Drake lacks Article III standing. ...........................................21

  A.  Drake lacks standing to complain of investment options she never chose. ......................................................................22

  B.  Drake's alleged losses based on the Plan's actively managed funds are not particularized and were not caused by BBVA. ..........................23

  C.  Drake's breach of fiduciary duty claims are moot because BBVA replaced every challenged investment option before she filed suit...24

V.  Drake's underperformance claims lack merit. ..........................25

  A.  Money market fund.......................................................25

  B.  Actively managed funds ................................................28

VI. Drake's imprudence claim relies on improper benchmarks. ....................29

  A.  Stable value funds are not benchmarks for money market funds. ....29

  B.  Index funds are not benchmarks for actively managed funds..........31

VII. Drake's Counts 2 and 3 are not actionable under ERISA. ……………..…32

i

Conclusion ...............................................................................................35

Certificate of Service .............................................................................37

## TABLE OF AUTHORITIES

**Cases**

*Arizonans for Official English v. Arizona*,
 520 U.S. 43 (1997)...................................................................................24

*Bacon v. Stiefel Labs.*,
 590 F. App'x 903 (11th Cir. 2014)......................................................17

*Barchock v. CVS*,
 886 F.3d 43 (1st Cir. 2018).............................................15, 25, 27, 31

*Bell v. Pension Comm. of ATH Holding*,
 2017 WL 1091248 (S.D. Ind. Mar. 23, 2017) ...................................26

*Bickley v. Caremark RX*,
 461 F.3d 1325 (11th Cir. 2006) ..........................................17, 34, 35

*Blankenship v. Metro. Life Ins.*,
 644 F.3d 1350 (11th Cir. 2011) ....................................17, 18, 19, 20

*Bowman Transp. v. United States*,
 211 F. Supp. 354 (N.D. Ala. 1962) (Lynne, J.) ...............................19

*Brown v. Medtronic*,
 628 F.3d 451 (8th Cir. 2018) ............................................................22

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
 494 U.S. 558 (1990)...........................................................................25

*CIGNA v. Amara*,
 563 U.S. 421 (2011)...........................................................................35

*Davis v. Salesforce.com*,
 2021 WL 1428259 (N.D. Cal. Apr. 15, 2021)...................................28

*Davis v. Wash. Univ.*,
 960 F.3d 478 (8th Cir. 2020) .........................................15, 16, 29, 31

*DeBruyne v. Equitable Life*,
 920 F.2d 457 (7th Cir. 1990) ............................................................15

*Divane v. Northwestern Univ.*,
   953 F.3d 980 (7th Cir. 2020) ..................................................................16

*Doyle v. Liberty Life Assurance*,
   542 F.3d 1352 (11th Cir. 2008) ...........................................................19

*Ellis v. Fid. Mgmt. Tr.*,
   883 F.3d 1 (1st Cir. 2018)....................................................26, 30, 31

*Evans v. Bexley*,
   750 F.2d 1498 (11th Cir. 1985) ...........................................................33

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014)................................................................................25

*Firestone Tire & Rubber v. Bruch*,
   489 U.S. 101 (1989)................................................................................19

*Glazer v. Reliance Standard Life Ins.*,
   524 F.3d 1241 (11th Cir. 2008) ...........................................................23

*HCA Health Servs. of Ga. v. Emps. Health Ins.*,
   240 F.3d 982 (11th Cir. 2001) .............................................................19

*Hecker v. Deere*,
   556 F.3d 575 (7th Cir. 2009) ...............................................16, 25, 29

*Herman v. NationsBank Trust*,
   126 F.3d 1354 (11th Cir. 1997) ...........................................................11

*Iron Workers Loc. No. 272 v. Bowen*,
   624 F.2d 1255 (5th Cir. 1980) .............................................................33

*Jenkins v. Yager*,
   444 F.3d 916 (7th Cir. 2006) ...............................................13, 16, 28

*Jett v. Blue Cross & Blue Shield*,
   890 F.2d 1137 (11th Cir. 1989) ...........................................................19

*Lanfear v. Home Depot*,
   536 F.3d 1217 (11th Cir. 2008) .....................................................16, 33

*Lanfear v. Home Depot*,
  679 F.3d 1267 (11th Cir. 2012) ...............................................................13, 16, 33

*Langbecker v. Elec. Data Sys.*,
  476 F.3d 299 (5th Cir. 2007) .................................................................................11

*Larson v. Allina Health*,
  350 F. Supp. 3d 780 (D. Minn. 2018)...............................................................26, 31

*LaRue v. DeWolff, Boberg & Assocs.*,
  552 U.S. 248 (2008)................................................................................................1, 35

*Lewis v. Cont'l Bank*,
  494 U.S. 472 (1990).....................................................................................................24

*Loomis v. Exelon*,
  658 F.3d 667 (7th Cir. 2011) .....................................................................................16

*Marshall v. Northrop Grumman*,
  2017 WL 2930839 (C.D. Cal. Jan. 30, 2017)........................................................22

*Meiners v. Wells Fargo*,
  2017 WL 2303968 (D. Minn. May 25, 2017), *aff'd* 898 F.3d 820....................31

*Meiners v. Wells Fargo*,
  898 F.3d 820 (8th Cir. 2018) ........................................ 15, 16, 25, 28, 29, 31, 32

*Newell v. Prudential Ins. Co. of Am.*,
  904 F.2d 644 (11th Cir. 1990) ...................................................................................33

*Pierce v. Wyndham Worldwide Operations*,
  791 F. App'x 45 (11th Cir. 2019)..............................................................................18

*Pledger v. Reliance Trust*,
  240 F. Supp. 3d 1314 (N.D. Ga. 2017).....................................................................26

*Ray v. Sun Life & Health Ins.*,
  443 F. App'x 529 (11th Cir. 2011) .............................................................................21

*Rees v. City of Watertown*,
  86 U.S. 107 (1873)........................................................................................................34

*Rolland v. Textron*,
300 F. App'x 635 (11th Cir. 2008) .....................................................25

*Rosen v. Prudential Ret. Ins. & Annuity*,
2016 WL 7494320 (D. Conn. Dec. 30, 2016), *aff'd* 718 F. App'x
3d (2d Cir. 2017).........................................................................28

*Schweitzer v. Inv. Cmte. of Phillips 66*,
960 F.3d 190 (5th Cir. 2020) ...............................................13, 16, 33

*Smith v. Pension Comm. of Johnson & Johnson*,
470 F. App'x 864 (11th Cir. 2012) ...................................................21

*Spano v. Boeing*,
633 F.3d 574 (7th Cir. 2011) .....................................................16, 22

*Taylor v. United Techs.*,
2009 WL 535779 (D. Conn. Mar. 3, 2009), *aff'd* 354 F. App'x 525
(2d Cir. 2009)..............................................................................31

*Thole v. U. S. Bank N.A*,
140 S. Ct. 1615 (2020).............................................................21, 23

*Townsend v. Delta Family-Care Disability & Survivorship Plan*,
295 F. App'x 971 (11th Cir. 2008) ...................................................20

*White v. Chevron*,
2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x
453 (9th Cir. 2018)........................................................................26

*White v. Coca-Cola Co.*,
542 F.3d 848 (11th Cir. 2008) .....................................................21, 35

*Wilcox v. Georgetown Univ.*,
2019 WL 132281 (D. D.C. Jan. 8, 2019).............................................22

*Witt v. Metro. Life Ins.*,
772 F.3d 1269 (11th Cir. 2014) .......................................................10

*Wright v. Oregon Metallurgical*,
360 F.3d 1090 (9th Cir. 2004) .........................................................16

**Statutes**

29 U.S.C. § 1002(34) ................................................................................1, 10

29 U.S.C. § 1104(a)(1) ...................................................................................14

29 U.S.C. § 1104(a)(1)(B) .............................................................................25

29 U.S.C. § 1104(c) ...............................................................................10, 11

29 U.S.C. § 1104(c)(1)(A)(ii) ..........................................................................2

29 U.S.C. § 1106 ............................................................................................33

29 U.S.C. § 1108(c)(3) ...................................................................................33

29 U.S.C. § 1133 ............................................................................................32

29 U.S.C. § 1132(a)(1)(B) ..............................................................................16

29 U.S.C. § 1133(2) .......................................................................................33

**Other Authorities**

26 C.F.R. § 1.401(a)(35)–1(d) .........................................................................2

29 C.F.R. § 2520.102–3(t)(2)..........................................................................35

29 C.F.R. § 2550.404a-5 ..................................................................................2

29 C.F.R. § 2550.404c–1(b)(1) .......................................................................10

29 C.F.R. § 2550.404c–1(b)(1)(i) ...................................................................10

29 C.F.R. § 2550.404c–1(b)(1)(ii) ..................................................................10

29 C.F.R. § 2550.404c–1(b)(2)(B)..................................................................11

29 C.F.R. § 2550.404c–1(b)(3)(i)(B) ............................................................2, 3

29 C.F.R.. § 2550.404c–1(c)(4) ......................................................................13

29 C.F.R. § 2550.404c–1(f)(10)......................................................................13

29 C.F.R. § 2550.404c-1 ..................................................................................2

29 C.F.R. § 2550.404c-1(b)(2)(ii)(C)(2)(ii)............................................26

29 C.F.R. § 2550.404c-1(b)(3)(i)(B) .....................................................26

29 C.F.R. § 2550.404c-5 .........................................................................2

29 C.F.R. § 2560.503-1 ....................................................................32, 34

30A C.J.S. Equity § 130...........................................................................34

DOL, *Meeting Your Fiduciary Responsibilities* (attached) .....................15

DOL, *Target Date Retirement Funds–Tips for ERISA Plan
    Fiduciaries* ........................................................................................15

DOL, *Tips for Selecting and Monitoring Service Providers for Your
    Employee Benefit Plan* .......................................................................15

DOL, *Understanding Retirement Plan Fees and Expenses* (Dec. 2011) ................15

This lawsuit attacks BBVA, its Retirement Committee (the "Committee"), and its former investment advisor Envestnet based on some of the investment options made available in BBVA's 401(k) Plan. The few Plan options Drake criticizes were changed years before this suit was filed and were never the only options participants had. During the administrative process, the Committee (vested with discretionary authority under the Plan) considered and denied Drake's claim in accordance with the Plan, ERISA's requirements, and Eleventh Circuit precedent. The administrative decisions were *de novo* correct and were, at minimum, not arbitrary and capricious. BBVA is entitled to judgment on the administrative record.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. The 401(k) Plan and the Committee.

1.    BBVA's 401(k) Plan is a defined contribution plan. AR1072, AR1162. In a defined contribution plan, retirement benefits are tied to the value of investment choices a participant makes in his or her individual account. *See* 29 U.S.C. § 1002(34); *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 250 n.1 (2008). The participant solely decides which of the Plan's investment options he or she wishes to invest in. *Id.*

2.    The BBVA 401(k) Plan gives participants the ability to contribute a percentage of their pay toward retirement (with employer matching up to 5%) and to invest in one or more of the Plan's investment options. AR1089–95.

1

3.      ERISA requires "at least *three* investment alternatives" or options. 29 C.F.R. § 2550.404c–1(b)(3)(i)(B) (emphasis added). "Each of the three investment options must be diversified and have materially different risk and return characteristics." 26 C.F.R. § 1.401(a)(35)–1(d).

4.      BBVA offered over *twenty* investment options to participants, including both actively managed funds and index funds, and also including (a) large-cap, mid-cap, and small-cap mutual funds, focusing on both value and growth securities, (b) target date funds, (c) international equities, (d) bonds, and (e) capital preservation investment choices. *See* AR1167, AR1589–92.

5.      ERISA provides a safe harbor for 401(k) plans like BBVA's. The safe harbor protects the plan's fiduciaries from liability for a participant's investment choices, provided participants are given regulated disclosures about the plan's investment alternatives, costs, and fees. It provides: "In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, . . . no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." 29 U.S.C. § 1104(c)(1)(A)(ii). The plan and disclosure requirements for safe-harbor plans are set forth in ERISA regulations: 29 C.F.R. §§ 2550.404a–5, 2550.404c–1 & 2550.404c–5.

2

6.     BBVA's Plan is a safe-harbor plan. It gives participants independent control over investment of the assets in his or her individual account and provides a range of investment options to choose from. *Compare* 29 C.F.R. § 2550.404c–1(b)(3)(i)(B) *with* AR1098–99, AR1293–94.

7.     BBVA provided all the regulated disclosures to participants and filed all annual notices necessary to qualify as a safe-harbor 401(k) plan. AR1162–1263, AR1564–1675, AR1677–1704.

8.     BBVA is the Plan Administrator, the named fiduciary responsible for all "reporting and disclosure obligations under ERISA." AR1144, AR1145–46. BBVA appoints the members of the Committee. AR1144.

9.     The Plan names the Committee as the fiduciary responsible for the "management, operation and administration of the Plan." AR1144, AR11460. The Committee (among other responsibilities) determines participant eligibility, selects the Plan's investment options, and decides claims. AR1146–47, AR1098.

10.    The Plan gives both BBVA and the Committee full discretion to construe and interpret the Plan. AR1132–36, AR1138–39, AR1144–48. The Plan also gives the Committee discretion to establish rules and regulations, adopt internal procedures, and hire assistants and consultants. AR1147.

11.    The Committee holds quarterly meetings. AR1753. The minutes of the Committee meetings, including copies of all the financial information reviewed at

the meetings, are included in the administrative record. AR1817–5340. The information reviewed at each meeting typically includes dozens (sometimes hundreds) of pages of financial analysis. *See id.* The independent investment advisor retained by the Committee leads this review and answers questions. *E.g.* AR3434–35, AR5298–300.

12.     Envestnet served as the investment advisor until September 2015. AR3665. Willis Towers Watson replaced Envestnet (AR4158, AR4978) and continues to serve in that role as the investment advisor today.

13.     The Plan is funded through a trust agreement with Fidelity, and Fidelity serves as the Plan's trustee and recordkeeper. AR1271, AR1173.

14.     The Committee receives regular training on their fiduciary obligations to the Plan and its participants. *E.g.* AR4263, AR5190, AR5358.

**B.     The Committee's management of the Plan.**

15.     A written investment policy statement guides the Committee's selection and monitoring of the Plan's investment options. AR1551; *see* AR1722–51. The operative IPS is consistent with ERISA's safe harbor and the safe-harbor regulations. AR1553–54.

16.     The IPS sets out internal guidelines and procedures for the Committee to (a) select investment options, monitor them, place them on a watch list, and replace them as needed, (b) evaluate and monitor investment and plan-level fees and

expenses, (c) retain and monitor the Plan's recordkeeper and consultants, and (d) conduct regular meetings to oversee the Plan's objectives, investments, and expenses. AR1554–56.

17.    The IPS describes three tiers for the Plan's investment options:

Tier one: a series of "diversified, professionally managed target date funds with asset allocation glidepaths that will move with the Participant over time based on the target maturity selected. These investments are available for Participants that do not want to make direct asset allocation choices, or Participants who may not have the investment knowledge or time to properly structure their own portfolios."

Tier two: passively managed index mutual funds, "available for Participants who are comfortable making asset class decisions but wish to mimic market index performance."

Tier three: actively managed options for capital preservation, fixed income, and equities, "available for Participants who are comfortable making asset class and investment manager decisions."

AR1556–57.

18.    Over the relevant period, the Committee made several significant adjustments to the Plan's investment options. First, the committee monitored the performance and expenses of the Principal target date funds and ultimately decided to replace them with Vanguard index target date trusts in July 2017. AR1709–15, AR4264, AR4517–18, AR4657.

19.    Second, the committee replaced certain actively managed funds. Specifically, in July 2016, the committee replaced the Aston Small Cap fund with

5

the Vanguard Small Cap index fund (AR4169, AR4263) and, in February 2015, replaced the Thornburg International Value fund with the Invesco International Growth fund (AR3434).

20.     Third, in June 2019, the committee decided to replace all of the Plan's actively managed funds with index funds. AR5300. The Committee made all of these changes before any suit was filed.

21.     Other than company stock, the twenty-plus investment options under the Plan (before the 2019 switch to all index funds) were:

> **1–11.** Vanguard Target Retirement 2015, 2020, 2025, 2030, 2035, 2040, 2045, 2050, 2055, 2060 & 2065 Trusts (replaced similar Principal funds)
>
> **12.** Vanguard Retirement Income Trust (no glidepath) (replaced similar Principal fund)
>
> **13.** Vanguard Institutional Index (index, large cap blend)
>
> **14.** Vanguard Small-Cap Index Fund (index, small cap blend) (replaced the Aston Small Cap fund)
>
> **15.** Dodge & Cox Stock Fund (active, large cap value)
>
> **16.** Harbor Capital Appreciation Fund (active, large cap growth)
>
> **17.** JP Morgan Mid Cap Growth Fund (active, mid cap growth)
>
> **18.** Principal MidCap Value Fund (active, mid cap value)
>
> **19.** Invesco International Growth Fund (active, foreign large cap growth)

**20.** American Century Diversified Bond Fund (active, bond)

**21.** Vanguard Prime Money Market Fund

AR1589–92.

## C.    Cautionary notices and investment disclosures.

22.    BBVA disclosed the risks associated with individual investment choices by participants. Specifically, the SPD discloses that the Plan is a safe-harbor plan insulated from "liability for investment losses that may result from participants' investment selections." AR1162. Moreover, the SPD cautions: "Investments . . . are not deposits or obligations of [BBVA] . . . , are not obligations of, guaranteed by, or insured by the U.S. Government, the  [FDIC], or any other governmental entity, and are subject to investment risks, including the possible loss of principal. PAST PERFORMANCE IS NOT A GUARANTEE OF FUTURE RESULTS." *Id.* The participant disclosures also caution participants about the general risks of investing, the importance of diversification, and the greater risks associated with foreign countries, mid-sized companies, and smaller companies. AR1593–94. Participant statements include similar warnings. AR192.

23.    BBVA conspicuously warned participants of the risks of investments. For example, BBVA warned of the risks of money market funds. "***You could lose money by investing in a money market fund. Although the fund seeks to preserve the value of your investment at $1.00 per share, it cannot guarantee it will do so. .***

7

*. . An investment in the fund is not insured or guaranteed by the [FDIC] or any other government agency. The fund's sponsor has no legal obligation to provide financial support to the fund, and you should not expect that the sponsor will provide financial support to the fund at any time.*" AR1594. Participant account statements include similar warnings. AR216.

24.    BBVA provided extensive disclosures about the fees and expenses associated with each investment option. AR1167, AR1564–1675.

25.    BBVA provided avenues for participants to voice concerns about the Plan's investment options. AR1180. Some participants did so. AR2424. Drake did not.

**D.    Drake and her investments.**

26.    Plaintiff Christine Drake is a former BBVA employee and participant in BBVA's 401(k) Plan. AR98.

27.    The August 2019 account statement in the administrative record shows Drake had $158,619.16 in her account as of the closing date for that statement. AR191.

28.    Drake's holdings were:

$34,071.83 in the Dodge & Cox fund,
$26,112.11 in the Harbor Capital Appreciation fund,
$4,574.49 in the BBVA stock fund,
$23,369.65 in the Invesco International fund,
$10,003.21 in the Vanguard Small Cap fund,
$40,006.15 in the 2030 target date fund,

$15,123.61 in the American Century Bond fund, and
$5,358.11 in the Vanguard Prime Money Market fund.

AR191–92.

## PROCEDURAL HISTORY

Drake filed an administrative claim with the Committee. AR98. The

Committee accepted her claim, provided her multiple opportunities to submit more

information in support of her claim, produced documents to her at her request,

retained two experts to evaluate her claims, and reviewed the expert's reports and

the merits of Drake's claim. *See* AR5342–44, AR5371, AR5436. The Committee

denied her claim. AR5343. After reviewing all the relevant information and the

expert's reports, the committee concluded that BBVA "did not breach any fiduciary

duty of loyalty or prudence." AR5367.

> As the information described above and as the Committee's minutes
> document, the Committee engaged in a thorough, careful and prudent
> consideration of the Plan's investment options and related fees and offered a
> wide range of investment options and fees for the participants to select from
> and craft a portfolio that best addressed their individual requirements. When
> a particular service provider or investment option did not meet the
> Committee's expectations or standards, it was replaced. Moreover, the
> Committee acted prudently in gathering all necessary or relevant information
> before making decisions regarding the Plan's investment lineup.

*Id.*

Drake filed an administrative appeal, supported by her own expert report.

AR17623, AR17702. The Committee reviewed the merits of Drake's appeal and

obtained responsive reports from the two independent experts it had retained. *See*

9

AR17751–54, AR17797, AR17859. After reviewing Drake's appeal and supporting expert report, along with the additional independent reports, the committee denied Drake's appeal. AR17754. Having fully exhausted her administrative remedies consistent with § 8.7(c) of the Plan (AR17796), Drake filed this lawsuit.

ARGUMENT

BBVA's defenses are not limited to those raised in the Committee's denial letters. Administrative defenses differ from litigation defenses, and BBVA has not waived its litigation defenses. *Witt v. Metro. Life Ins.*, 772 F.3d 1269, 1279 (11th Cir. 2014). BBVA affirmatively raised each defense below in its responsive pleading to Drake's complaint. Doc. 36.

## I.   ERISA's safe harbor protects BBVA from liability for losses caused by Drake's individual investment choices.

BBVA's 401(k) Plan qualifies for ERISA's safe harbor. *See* 29 U.S.C. § 1104(c). It is a defined contribution, "individual account" plan. *See* 29 U.S.C. § 1002(34); 29 C.F.R. § 2550.404c–1(b)(1); AR1098–1101; AR1162. The Plan allows participants to "exercise control over assets" in his or her individual account. 29 C.F.R. § 2550.404c–1(b)(1)(i); AR1099–1100; AR1167–69. It allows participants to choose, "from a broad range of investment alternatives, the manner in which some or all of the assets in his [or her] account are invested." 29 C.F.R. § 2550.404c–1(b)(1)(ii); AR1098; AR1167–69. And BBVA has provided the regulated disclosures giving participants "sufficient information to make informed

10

investment decisions with regard to investment alternatives under the plan." 29 C.F.R. § 2550.404c–1(b)(2)(B); AR1162; AR1564–1675; AR1677–1704; AR192. Drake does not allege that the Plan does not qualify for the safe harbor. *See* Doc. 25 ¶ 10.

ERISA's safe harbor protects BBVA from liability "for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." 29 U.S.C. § 1104(c). *See Herman v. NationsBank Trust*, 126 F.3d 1354, 1366 (11th Cir. 1997) (if a 401(k) plan gives "participants control *over their own accounts*," the plan's fiduciaries are "free from liability arising out of participants' decisions over their accounts."); *Langbecker v. Elec. Data Sys.*, 476 F.3d 299, 312 (5th Cir. 2007) (observing that the safe harbor insulates against not only "*losses* in individual accounts, but also for failures to realize gains (measured against some entirely speculative standard) and even for catch-up amounts where participants *bought into* a declining [fund]").

Thus, Drake cannot hold BBVA liable for alleged underperformance or higher expenses of the actively managed funds she chose to invest in. She always had other choices. At all relevant times, BBVA's plan included the Vanguard Institutional Index fund, but Drake chose instead to invest in the Dodge & Cox and Harbor large cap funds, which are actively managed. AR191. (The only index fund in her account is the Vanguard Small Cap fund, into which Drake's money moved via mapping

11

after the Aston Small Cap fund was replaced. AR193.) Her choice was informed. For instance, her account statement shows she held her investment in Dodge & Cox through 2017, even though BBVA informed her that the Vanguard fund outperformed Dodge & Cox on almost every metric in both 2015 and 2016. *See* AR1616 (*compare* Vanguard: 1 Year (13.65%), 5 Year (15.43%), 10 Year (7.68%), Expense Ratio (40¢/$1000) *with* Dodge & Cox: 1 Year (10.40%), 5 Year (15.56%), 10 Year (7.13%), Expense Ratio ($5.20/$1000)); AR1630−31 (*compare* Vanguard: 1 Year (1.37%), 5 Year (12.54%), 10 Year (7.31%), Expense Ratio (40¢/$1000) *with* Dodge & Cox: 1 Year (−4.49%), 5 Year (11.64%), 10 Year (5.69%), Expense Ratio ($5.20/$1000)). The Committee concluded that Drake is merely complaining about the result of her own investment choices. AR17775.

ERISA protects BBVA from liability to Drake for her own choice to invest in actively managed funds over index funds. ERISA's safe-harbor regulation contains an illustration revealing the fundamental flaw in Drake's claim:

> Participant P directs a plan fiduciary, F, a bank, to invest all of the assets in his individual account in a collective trust fund managed by F that is designed to be invested solely in a diversified portfolio of common stocks. Due to economic conditions, the value of the common stocks in the bank collective trust fund declines while the value of publicly-offered fixed income obligations remains relatively stable. F is not liable for any losses incurred by P solely because his individual account was not diversified to include fixed income obligations. Such losses are the direct result of P's exercise of control; moreover, under paragraph (c)(4) of this section F has no obligation to advise P regarding his investment decisions.

29 C.F.R.§ 2550.404c−1(f)(10).

The safe harbor also shields BBVA from any claim that it should have monitored participants' investments in the money market fund. ERISA imposes no such duty: "A fiduciary has no obligation under part 4 of title I of the Act to provide investment advice to a participant or beneficiary under an ERISA section 404(c) plan." *Id.* § 2550.404c–1(c)(4). If participants in BBVA's Plan choose to put all their money into the money market fund, that is their choice (despite BBVA's warnings against it (AR1594)). The Eleventh Circuit has explicitly rejected any "rule that converts fiduciaries into investment advisors." *Lanfear v. Home Depot*, 679 F.3d 1267, 1285 (11th Cir. 2012). *Accord Schweitzer v. Inv. Cmte. of Phillips 66*, 960 F.3d 190, 196, 199 (5th Cir. 2020) (fiduciaries "need only provide investment options that enable participants to create diversified portfolios" but "need not ensure that participants actually diversify"; participants "cannot enjoy their autonomy and now blame the Fiduciaries for declining to second guess that judgment."); *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) (ERISA "does not require plan administrators to investigate each participant's circumstances and prepare advisory opinions for literally thousands of employees") (cleaned up). In any event, the Committee considered Drake's investments in the money market funds and determined her holdings were in line with a proper investment strategy. AR5366.

## II.   Drake's litigation theory is fundamentally flawed.

In judging whether the decision below was arbitrary and capricious, it is

important to keep in mind what ERISA does and does not require of plan fiduciaries.

ERISA imposes four duties on plan fiduciaries: loyalty, prudence, diversification, and plan conformity. It requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and":

> (**A**) for the exclusive purpose of:
>
>> (i) providing benefits to participants and the beneficiaries; and
>>
>> (ii) defraying reasonable expenses of administering the plan;
>
> (**B**) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims;
>
> (**C**) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>
> (**D**) in accordance with the documents and instruments governing the plan . . . .

29 U.S.C. § 1104(a)(1).

Drake alleges that BBVA breached its fiduciary obligations in two ways. First, by not replacing the Plan's stable value fund, and instead retaining the Vanguard Money Market fund as a fixed income, capital preservation option. Doc. 25 ¶ 59. Second, by failing to prudently monitor the Plan's actively managed funds, which Drake alleges had higher fees and underperformed index funds. *Id.* ¶ 60.

Drake's litigation theory is inconsistent with the factual record established by the Committee and the minutes of its proceedings. The factual record shows that

BBVA and the Committee followed the DOL's expectations of fiduciaries to the letter. Namely, the Committee chose a range of appropriate investment options that permitted diversification, notified participants of investment risks, provided regulated disclosures about the performance and expenses of each option, hired investment consultants to provide detailed information on each investment's performance and expenses, held quarterly meetings, monitored and replaced investment options that became inconsistent with the Plan's goals, and documented all of its decision making. *See generally* DOL, *Meeting Your Fiduciary Responsibilities*; DOL, *Understanding Retirement Plan Fees and Expenses* (Dec. 2011); DOL, *Tips for Selecting and Monitoring Service Providers for Your Employee Benefit Plan*; DOL, *Target Date Retirement Funds–Tips for ERISA Plan Fiduciaries*.

Drake's theory is also roundly rejected by federal circuit authority on point. Plan fiduciaries are judged only on their process, not substantive returns or results. *Davis v. Wash. Univ.*, 960 F.3d 478, 482 (8th Cir. 2020). ERISA requires only procedural prudence, "not prescience." *DeBruyne v. Equitable Life*, 920 F.2d 457, 465 (7th Cir. 1990). Fiduciaries must do their best with the information they have at hand *when they decide*; their decisions are not judged or adjudicated using hindsight. *Barchock v. CVS*, 886 F.3d 43, 45 (1st Cir. 2018). There is no duty to pick the best fund. *Meiners v. Wells Fargo*, 898 F.3d 820, 823 (8th Cir. 2018). Or the cheapest

15

fund. *Hecker v. Deere*, 556 F.3d 575, 586 (7th Cir. 2009). Just because there are cheaper or better performing funds out there does not amount to a breach of fiduciary duty. *Meiners*, 898 F.3d at 823–24. A plaintiff cannot fault his or her 401(k) plan for including actively managed funds. *Divane v. Northwestern Univ.*, 953 F.3d 980, 989 (7th Cir. 2020). She cannot judge actively managed funds based on the performance or expenses of index funds. *Davis*, 960 F.3d at 484–85; *Meiners*, 898 F.3d at 823. She cannot criticize funds that other participants enjoy. *Spano v. Boeing*, 633 F.3d 574, 587 (7th Cir. 2011). She cannot hold fiduciaries responsible for stock market fluctuations or investment losses. *Wright v. Oregon Metallurgical*, 360 F.3d 1090, 1099 (9th Cir. 2004); *Jenkins*, 444 F.3d at 926. She cannot disregard warnings and information disclosed to her and then blame the fiduciaries for her own investment choices. *Lanfear*, 679 F.3d at 1285; *Schweitzer*, 960 F.3d at 199; *Divane*, 953 F.3d at 991 n.10. And she cannot attack selected investments simply because their fees are thought too high or their returns too low. *Davis*, 960 F.3d at 484; *Loomis v. Exelon*, 658 F.3d 667, 673 (7th Cir. 2011).

## III. BBVA's denial of Drake's claim for benefits was correct and, at minimum, was not arbitrary and capricious.

BBVA's decision to deny Drake's claim was correct, and at a minimum, it was not "arbitrary and capricious" because there is clearly a reasonable basis in the record for the decision. Here, as a matter of law, Drake's claim is one "for benefits" under 29 U.S.C. § 1132(a)(1)(B). *Lanfear v. Home Depot*, 536 F.3d 1217, 1220 (11th

16

Cir. 2008) ("[A] complaint for breach of fiduciary duty that seeks restitution of the diminished value of a defined contribution plan is for benefits."); *Bickley v. Caremark RX*, 461 F.3d 1325, 1328–30 (11th Cir. 2006). "Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." *Blankenship v. Metro. Life Ins.*, 644 F.3d 1350, 1354 (11th Cir. 2011). *See Bacon v. Stiefel Labs.*, 590 F. App'x 903, 904–05 (11th Cir. 2014); *Bickley*, 461 F.3d at 1330.

### A. The "arbitrary and capricious" standard of review applies because the Plan expressly gives BBVA discretion.

When reviewing a benefit determination under an ERISA plan, this Court applies the following six-step analysis, which ultimately utilizes a deferential "arbitrary and capricious" standard of review when the plan vests the claim administrator with discretion in reviewing claims:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355.

BBVA's decision was *de novo* correct. But when the plan vests the administrator with discretion, the arbitrary and capricious standard applies even if the decision was *de novo* wrong. *See Pierce v. Wyndham Worldwide Operations*, 791 F. App'x 45, 48 n.3 (11th Cir. 2019).

The Plan expressly confers upon BBVA and the Committee broad discretionary authority and power to make claims determinations and to construe and interpret provisions of the Plan. AR1098 (5.1 Committee had discretion to choose and replace investment options); AR1132–36 (8.7 Committee has authority to review and decide claims and appeals under the plan); AR1138–39 (8.12 decisions of the Committee "will be final, binding, and conclusive upon all persons ever interested hereunder"); AR1146 (10.4(e) Committee is "responsible for the management, operation and administration of the Plan, and shall have all powers necessary to accomplish that purpose); AR1146–47 (10.5 Committee's decision "shall be final, binding and conclusive on all parties having or claiming a benefit

18

under this Plan"); AR1148 (10.12 no discretionary act "shall thereafter affect the right or power of the aforesaid parties to exercise said discretionary authority in a different manner in the same or similar circumstances"). The deferential "arbitrary and capricious" standard of review thus applies. *See Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 111 (1989); *Blankenship*, 644 F.3d at 1355.

Accordingly, the ultimate issue for this Court is whether BBVA's decision to deny Drake's claim was reasonable in light of the administrative record before BBVA at the time it made its decision. Under the arbitrary and capricious standard of review, a reasonable decision must be upheld "even if there is evidence that would support a contrary decision." *Jett v. Blue Cross & Blue Shield*, 890 F.2d 1137, 1140 (11th Cir. 1989); *see also HCA Health Servs. of Ga. v. Emps. Health Ins.*, 240 F.3d 982, 994 (11th Cir. 2001); *Bowman Transp. v. United States*, 211 F. Supp. 354, 357 (N.D. Ala. 1962) (Lynne, J.) ("It is beyond our province to consider the soundness of the reasoning by which its conclusions were reached.").

**B.    BBVA's decision to deny Drake's claims was reasonable.**

BBVA is entitled to judgment because its decision to deny Drake's claim was reasonable, not arbitrary and capricious. The burden here "remains on the plaintiff to show the decision was arbitrary," which she cannot do. *Blankenship*, 644 F.3d at 1355; *Doyle v. Liberty Life Assurance*, 542 F.3d 1352, 1360 (11th Cir. 2008).

After Drake filed her claim, BBVA provided her ample opportunity to provide

19

supporting documentation and also retained two independent experts to evaluate Drake's claim. AR225; AR227; AR991; AR1029; AR5341; AR5371–17622. As noted, the Committee denied her claim in a thorough written decision that spanned 28 pages. AR5342–70. After reviewing all the relevant information and the expert's reports, the committee concluded that the investment options made available to participants during the relevant period and the manner in which they were selected and reviewed "did not breach any fiduciary duty of loyalty or prudence." AR5367. When Drake provided her own expert report with her appeal (AR17623–17748), BBVA obtained additional reports from the independent experts previously retained (AR17797–32648), and again reviewed the merits of Drake's appeal before ultimately upholding its denial in a detailed, 46 page written decision (AR17751–17796). Such careful consideration of the record cannot reasonably be characterized as arbitrary and capricious. *See, e.g.*, *Blankenship*, 644 F.3d at 1356 (decision to deny benefits reasonable where defendant relied on the advice of several independent medical professions to conclude plaintiff failed to prove disability).

## C.    BBVA did not operate under a conflict of interest.

"A conflict of interest exists where the plan administrator determines eligibility for benefits and also pays those benefits out of its own assets." *Townsend v. Delta Family-Care Disability & Survivorship Plan*, 295 F. App'x 971, 975 (11th Cir. 2008). Here, there is no conflict because BBVA would not have incurred a

"direct expense as a result of granting" Drake's claim, "nor d[id] it profit from the denial" of Drake's claim. *Id.* The money at issue was not BBVA's; Drake's funds were fully vested. In addition, the Plan is funded by participant contributions and via a trust agreement with Fidelity. AR1271; AR1194. The law in this circuit "'is clear that no conflict of interest exists where benefits are paid from a trust that is funded through periodic contributions so that the provider incurs no immediate expense as a result of paying benefits.'" *White v. Coca-Cola Co.*, 542 F.3d 848, 858 (11th Cir. 2008) (cleaned up). *See Smith v. Pension Comm. of Johnson & Johnson*, 470 F. App'x 864, 867 (11th Cir. 2012).

The burden lies with Drake, as the claimant, to show that BBVA's decision was affected by any alleged conflict. It is "not [BBVA's] burden to prove its decision was not tainted by self-interest." *Ray v. Sun Life & Health Ins.*, 443 F. App'x 529, 533 (11th Cir. 2011). In any event, "even where a conflict exists, deference is owed to the plan administrator's discretionary decision-making" where the administrator's decision was thorough, and the record as a whole shows the conflict did not taint the administrator's decision. *Id.* Because BBVA's decision was thorough, reasonable, informed by independent experts, and because no conflict of interest affects the standard of review, BBVA is entitled to judgment on the record as a matter of law.

## IV.   Drake lacks Article III standing.

"There is no ERISA exception to Article III." *Thole v. U. S. Bank N.A*, 140 S.

21

Ct. 1615, 1622 (2020). To establish Article III standing, "a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Id.* at 1618.

### A.   Drake lacks standing to complain of investment options she never chose.

Drake attacks but did not invest in either the JPMorgan MidCap Growth Fund or the Principal MidCap Value Fund. AR191–92 (Notably, Drake does not attack the Plan's index funds.). The Committee correctly and reasonably denied Drake's claims regarding funds in which she did not invest. AR5366 (denying claim based on Principal MidCap Value Fund); AR17775 (denying claim based on actively managed funds, because Drake did not invest in the Plan's index fund). Accordingly, Drake cannot demonstrate a concrete and particularized injury caused by the Plan providing these funds as investment options. *Brown v. Medtronic*, 628 F.3d 451, 455 (8th Cir. 2018) (holding "at a minimum, a plaintiff must allege a net loss in investment value that is fairly traceable to the defendants' challenged actions"); *Spano*, 633 F.3d at 586–87; *see, e.g.*, *Wilcox v. Georgetown Univ.*, 2019 WL 132281, at *10 (D. D.C. Jan. 8, 2019) (holding plaintiff lacks standing to challenge selection of fund when plaintiff did not invest in fund); *Marshall v. Northrop Grumman*, 2017 WL 2930839, at *8 (C.D. Cal. Jan. 30, 2017) (same). Drake does not have standing

to challenge investment options in which she did not invest during the relevant period. *See Glazer v. Reliance Standard Life Ins.*, 524 F.3d 1241, 1246 (11th Cir. 2008) (stating the court's review is limited to the "facts as known to the administrator at the time the decision was made").

### B. Drake's alleged losses based on the Plan's actively managed funds are not particularized and were not caused by BBVA.

To establish Article III's particularized injury and causation requirements, a plaintiff must show the alleged injury is "particularized" and was "caused by the defendant." *Thole*, 140 S. Ct. at 1618.

Drake alleges losses based on the Plan providing actively managed fund options. Drake attacks the Plan's actively managed funds for underperforming index funds and for having expense ratios that were too high. But during the entire relevant period, the Plan provided an index fund that mirrors the S&P 500, the Vanguard Institutional Index Fund. AR1394; AR1547.

While Drake invested in the Plan's large cap actively managed option, the Dodge & Cox Stock Fund, Drake never invested in the Plan's large cap index option. AR191–92. Drake always had the opportunity to invest into the Plan's index fund. But she didn't. The Committee specifically considered this: "Drake herself demonstrated a preference for actively managed funds. . . . In fact, as of Q2 2017, Ms. Drake had over 21% of her total Plan balance invested in the Dodge & Cox

Stock Fund and no amounts invested in the passively managed Vanguard Institutional Index Fund." AR17775.

Accordingly, any alleged loss based on the Plan offering actively managed funds instead of index funds is not the result of the unavailability of index funds in the Plan. Instead, it is the result of Drake's own decision to eschew index funds for actively managed funds. This is precisely the point of ERISA's safe harbor rule for Plan administrators, but it also means that Drake was not injured by the inclusion of an actively managed fund among many other investment choices made available in the Plan, including index funds. As the Committee recognized, it was Drake who preferred actively managed funds. *Id.* Any alleged loss based specifically on the Plan's actively managed large cap funds was not caused by BBVA because Drake chose to invest in those funds instead of the Plan's index funds. Drake lacks standing to challenge the Plan's actively managed fund options.

## C. Drake's breach of fiduciary duty claims are moot because BBVA replaced every challenged investment option before she filed suit.

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank*, 494 U.S. 472, 477 (1990). Not only must the "actual controversy" be live when the suit is filed, but it must also remain live through "all stages of review." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).

The remedies for breach of fiduciary duty under ERISA are purely equitable

remedies. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 567 (1990); *Rolland v. Textron*, 300 F. App'x 635, 636 (11th Cir. 2008). BBVA replaced all the Plan options Drake challenges before she filed suit. *See supra* ¶ 20. Accordingly, there is no ongoing controversy for the Court to adjudicate. Drake's claims were stale *before* she filed them. All Drake's claims are moot.

## V.    Drake's underperformance claims lack merit.

Drake alleges that she suffered loss, in part, because the Plan's investment options underperformed. Doc. 25 ¶¶ 146–48. But ERISA requires only procedural prudence; it does not mandate the best performing investment funds, the cheapest available funds, or guarantee substantive returns. *Barchock*, 886 F.3d at 44–45; *Meiners*, 898 F.3d at 823; *Hecker*, 556 F.3d at 586. And prudence cannot be measured with the benefit of hindsight. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (The "content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts.") (quoting 29 U.S.C. § 1104(a)(1)(B)).

### A.    Money market fund

Drake alleges the Plan's money market fund underperformed stable value funds and other bond asset classes. Doc. 25 ¶¶ 77, 83 (comparing the Hueler stable value index). She also attacks the Committee's decision not to replace the SEI fund in 2012. Doc. 25 ¶¶ 59, 73. The Committee determined that claim was time-barred.

AR17760. It is indeed outside ERISA's statute of repose. 29 U.S.C. § 1113(1).

Moreover, ERISA does not require the Plan to offer a stable value fund option. Nor does it forbid the Plan from offering a money market fund option. It requires only three investment options with "materially different risk and return characteristics" that "enable the participant or beneficiary by choosing among them to achieve a portfolio with aggregate risk and return characteristics at any point within the range normally appropriate for the participant or beneficiary." 29 C.F.R. § 2550.404c-1(b)(3)(i)(B). And ERISA requires only one "'income producing, low risk, liquid' investment." *Ellis v. Fid. Mgmt. Tr.*, 883 F.3d 1, 3 (1st Cir. 2018) (quoting 29 C.F.R. § 2550.404c-1(b)(2)(ii)(C)(2)(ii)). Thus, the Plan's money market fund was sufficient under ERISA.

Courts routinely recognize that it is not imprudent for a plan to offer a money market fund option instead of a stable value fund. *Larson v. Allina Health*, 350 F. Supp. 3d 780, 802–03 (D. Minn. 2018); *Pledger v. Reliance Trust*, 240 F. Supp. 3d 1314, 1333–34 (N.D. Ga. 2017); *White v. Chevron*, 2017 WL 2352137, at *10–11 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018); *Bell v. Pension Comm. of ATH Holding*, 2017 WL 1091248, at *5 (S.D. Ind. Mar. 23, 2017).

The Plan offered the Vanguard Prime Money Market Fund as a capital preservation option, which "is a high quality, low cost fund and is a leader among money market funds and is largely immune to market volatility and large downturns

that the United States is currently experiencing." AR5360. The Plan's money market fund performed as it should have—as a relatively "risk free investment option." AR5452. Money market funds are "among the lowest risk and most conservative investment options available." AR5359. And conservatism is not a vice. *Barchock*, 886 F.3d at 50. The Committee recognized that money market funds are a good option for participants with low risk tolerance. AR5359; AR5449–50. They also can serve as a "transition vehicle when [participants] mov[e] funds between longer-term assets." AR5449. And the Committee concluded that the American Century Bond fund, the Principal LifeTime Strategic Income fund, and the Vanguard Target Retirement Income Trust II, "provide[d] exposure to the type of bond funds that" Drake contends should have been offered in the Plan. AR5346. Whether, when, and how long to invest in these funds was always up to participants, not BBVA. ERISA imposes no duty on plan fiduciaries to second-guess participant decisions.

Nevertheless, as part of their administrative consideration of Drake's claim, the Committee reviewed Drake's holdings in the Vanguard Prime Money Market Fund and determined that her own investment behavior indicated an attempt to build an optimal portfolio in line with proper use of money market funds. AR5366. Specifically, the Committee determined that, as of June 30, 2017, Drake had invested only 3.37 percent of her total retirement savings in the money market fund, which at that point was only $5,358.11. AR5366; AR192. In fact, Drake's holdings in the

American Century Bond fund were about three times higher, $15,123.61. AR192. Drake clearly understood her own investments.

### B.   Actively managed funds

BBVA cannot be held liable based on the performance of the Plan's actively managed funds for three reasons.

First, there is nothing inherently imprudent about offering a "concentration of actively managed funds," in particular where a plan "offer[s] a variety of investment options that included low-cost options," like the Plan here did. *See Rosen v. Prudential Ret. Ins. & Annuity*, 2016 WL 7494320, at *15 (D. Conn. Dec. 30, 2016), *aff'd* 718 F. App'x 3d (2d Cir. 2017); AR5441; AR5446. As the Committee recognized, it is common industry practice for 401(k) plans to offer actively managed funds. AR5349; AR17775; AR5466.

Second, it is not imprudent to hold funds that simply experience periods of a lower performance. *Jenkins*, 444 F.3d at 926 (three consecutive years of low performance). *See, e.g.*, *Davis v. Salesforce.com*, 2021 WL 1428259, at *6 (N.D. Cal. Apr. 15, 2021) (allegations funds underperformed based on five-year returns not sufficiently long-term to state a plausible claim of imprudence). In fact, replacing fund options too quickly is often worse for the plan in the long term. AR5479.

Third, expense ratios vary within an asset class. Comparisons to broad market index funds are not meaningful benchmarks for actively managed funds. *See*

*Meiners*, 898 F.3d at 823. Furthermore, plan fiduciaries are not required "to scour the market to find and offer the cheapest possible fund." *Hecker*, 556 F.3d at 586. Thus, the actively managed funds' expense rations cannot demonstrate underperformance.

**VI.   Drake's imprudence claim relies on improper benchmarks.**

ERISA requires funds with identical investment strategies to serve as benchmarks. *See Meiners*, 898 F.3d at 823. A plaintiff must use a "meaningful benchmark" to show that a prudent investor in the same circumstances "would have selected a different fund based on the cost or performance of the selected fund." *Id.* at 822. Drake has not offered meaningful benchmarks and therefore cannot show that a prudent fiduciary would not have selected and maintained the options in the Plan. *Davis*, 960 F.3d at 484–85.

**A.   Stable value funds are not benchmarks for money market funds.**

Drake's Complaint alleges that short-term to medium-term bond funds and stable value funds, such as the Heuler index, are proper benchmarks for the Plan's money market fund. Doc. 25 ¶¶ 67, 77, 83. Drake does not specifically identify another proposed benchmark other than the Heuler index (stable value fund index). Drake concedes that stable value funds do not have an identical investment strategy. Doc. 25 ¶ 63. And the Committee found that stable value funds are not proper benchmarks for money market funds, because they "do not have the same risk and

return characteristics." AR5345; AR17771–72.

The Committee's independent experts agreed: Stable value funds "are significantly riskier than as compared to money market funds." AR5347; AR5453–57. For example, stable value funds are prone to "bank runs," a phenomenon in which investors redeem their shares based on a guaranteed amount that may be higher than the fund's actual value, leaving the late-redeeming investors to net the losses. AR5453–54, 5456. *See Ellis*, 883 F.3d at 4 (explaining how stable value funds failed during the 2008 financial crisis). In fact, BBVA decided to remove the SEI Stable Value Fund in 2011 due to "dramatic outflows from the SEI SVF, a 98% market-to-book ratio, [and] concerns about the stability of the fund's principal." AR5345; AR4968; AR4972. The Committee knew the SEI Stable Value Fund was at risk of becoming "uninsurable" and liquidating at less than one dollar per share. AR2024. Based on prior experience with stable value funds that failed, the Committee "was well aware of the risk and return differences" and "determined that it was reasonable and appropriate to" not offer another stable value fund. AR5360–61.

Stable value funds also have unique restrictions. They can (a) prevent participants from moving balances within the plan's options, (b) limit the funds a plan can offer, and (c) require a long notice before a plan can replace the fund. AR5347; AR5452, 5457; AR4972; AR17761. "[S]uch restrictions on liquidity

impose additional costs on SVF investors without a correlation to increased returns." AR5347. Stable value funds are simply not a meaningful benchmark to money market funds.

Drake also faults BBVA for using too conservative a benchmark for the money market fund. Doc. 25 ¶ 83. But again, conservatism is not a vice. *Barchock*, 886 F.3d at 50 (dismissing claim that too conservative of a benchmark for a stable value fund was imprudent). "A conservative benchmark for a fund that places principal preservation as its primary goal warns the investor not to expect robust returns, and aligns expectations and results in a manner that is unlikely to harm or disappoint any investor who selects the fund." *Ellis*, 883 F.3d at 9.

### B. Index funds are not benchmarks for actively managed funds.

Drake bases her imprudence claim on comparing the Plan's actively managed funds to index funds. Doc. 25 ¶¶ 140–41. But index funds are not meaningful benchmarks for actively managed funds. *Davis*, 960 F.3d at 485–85; *Taylor v. United Techs.*, 2009 WL 535779, at *10 (D. Conn. Mar. 3, 2009), *aff'd* 354 F. App'x 525 (2d Cir. 2009); *Meiners v. Wells Fargo*, 2017 WL 2303968, at *2 (D. Minn. May 25, 2017), *aff'd* 898 F.3d 820; *Larson*, 350 F. Supp. 3d at 799.

The Committee concluded that Drake's comparison of the fees and expense ratios between the Plan's actively managed funds and index funds was not appropriate. AR5363. Indeed, comparing fees between actively managed and index

funds "is wholly inappropriate," because "actively managed funds follow a different investment strategy." AR5468.

Further, to the extent Drake alleges the Principal LifeTime Hybrid target date funds were a proper benchmark to the Plan's Principal LifeTime Funds, (Doc. 25 ¶ 158), she is incorrect. These target date fund series, though both managed by Principal LifeTime, have different investment strategies. *See Meiners*, 898 F.3d at 823 (benchmarks must have identical investment strategies). For example, in 2014, Principal LifeTime Funds held more than 90 percent of its portfolio in actively managed funds, while Principal LifeTime Hybrid Funds held only 35 percent in actively managed funds. AR5473. These target date funds series also had very different asset class allocations. *See* AR5473–74. Count 1 lacks any merit.

## VII.   Drake's Counts 2 and 3 are not actionable under ERISA.

Drake alleges BBVA (1) acted outside the scope of the Plan by reviewing and deciding her administrative claims and (2) breached its duty of loyalty and engaged in a prohibited transaction simply because the Committee participated in the decision-making process and found and against Drake. Doc. 25 Counts II–III. These counts are not actionable under ERISA for six independent reasons.

First, BBVA's administrative process tracks ERISA's claim provision in 29 U.S.C. § 1133 and the DOL's claim regulation outlined in 29 C.F.R. § 2560.503-1. Drake has not alleged otherwise.

Second, Drake is not entitled to a neutral decision maker in the administrative process. *Compare* Doc. 25 ¶¶ 252–54, *with Lanfear*, 536 F.3d at 1224 (holding administrative process not futile though decision maker was same party alleged to have breached fiduciary duty). BBVA reasonably relied on its discretionary authority to consider Drake's claim under "ERISA, Eleventh Circuit precedent, and the terms of the Plan." AR17755. BBVA's decision to review and decide Drake's claim is therefore both *de novo* right and reasonable.

Moreover, ERISA exempts Committee members employed by or representative of BBVA, acting as decision makers, from being "adverse" under ERISA's "prohibited transaction" provision. 29 U.S.C. § 1108(c)(3); *Newell v. Prudential Ins. Co. of Am.*, 904 F.2d 644, 649 (11th Cir. 1990). ERISA itself contemplates that the decision maker of a claim like Drake's will be the "appropriate named fiduciary." 29 U.S.C. § 1133(2). The Eleventh Circuit has recognized that fiduciaries can wear two hats without violating 29 U.S.C. § 1106. *See Evans v. Bexley*, 750 F.2d 1498, 1499 (11th Cir. 1985). *See also Lanfear*, 679 F.3d at 1278.

Third, these counts allege purely procedural fiduciary breaches, which cannot establish an ERISA violation. *Schweitzer*, 960 F.3d at 200 (holding claims based on "procedural lapses" fail as a matter of law).

Fourth, Drake maintained and exercised her right to challenge the administrative decisions. Drake misplaces her reliance on *Iron Workers Loc. No. 272*

*v. Bowen*, 624 F.2d 1255 (5th Cir. 1980). In *Bowen*, the court found that a decision maker voting to block the filing of a lawsuit against himself would violate ERISA. *Id.* at 1261. In contrast, the final paragraph of the Committee's decision denying Drakes administrative appeal explicitly states, "Drake now has the right to bring a civil action in federal court under ERISA Section 502(a) to contest the Committee's decision." AR17796.

Fifth, Drake's request for injunctive relief violates basic equitable maxims. Drake requests an order enjoining BBVA from considering Drake's claim or claims like it. Such an order would necessarily cause BBVA to violate both 29 U.S.C. 1133 and 29 C.F.R. § 2560.503-1. Under that regulation, ERISA's claim provision, and Eleventh Circuit precedent, the Committee was required to review Drake's claim. An injunction requiring BBVA to violate the law would be fundamentally inequitable. *See Rees v. City of Watertown*, 86 U.S. 107, 122 (1873) (courts of equity cannot "create a remedy in violation of law"). *See also* 30A C.J.S. Equity § 130 ("Equity is ancillary and not antagonistic to the law. It has never been an instrument of law violation.").

And sixth, Drake cannot rely on the SPD's phrase that "[i]f plan fiduciaries misuse the plan's assets, . . . suit may be filed in federal court" to circumvent this Circuit's exhaustion requirement. *Compare* Doc. 25 ¶ 239, *with* AR1180. The Eleventh Circuit has squarely rejected this position. *See Bickley*, 461 F.3d at 1329.

This phrase is standard language, recommended by the DOL to "merely recite[] plan participants' general rights under ERISA." *Id. See* 29 C.F.R. § 2520.102–3(t)(2). *Bickley* held that "[t]his Plan language . . . does not excuse a participant from satisfying the exhaustion requirement." *Bickley*, 461 F.3d at 1329. *Accord LaRue*, 552 U.S. at 258–59 (Roberts, J., concurring) ("Allowing a § 502(a)(1)(B) action to be recast as one under § 502(a)(2) might permit plaintiffs to circumvent safeguards for plan administrators that have developed under § 502(a)(1)(B). Among these safeguards is the requirement, recognized by almost all the Courts of Appeals, that a participant exhaust the administrative remedies mandated by ERISA § 503, 29 U.S.C. § 1133, before filing suit under § 502(a)(1)(B).") (cleaned up).

Moreover, Drake's request ignores the Plan's clear language, which makes exhaustion a precondition to filing suit. AR1136 (§ 8.7(c)). And the Supreme Court has concluded that the summary language in an SPD cannot override the express terms on the plan. *CIGNA v. Amara*, 563 U.S. 421, 437–38 (2011). Even if Drake had shown some ambiguity in the Plan, BBVA has discretionary authority to reasonably interpret the Plan. *See* AR1144–48; *White*, 542 F.3d at 857. Counts 2 and 3 lack any merit.

## CONCLUSION

For the reasons stated herein, the Court should enter judgement in BBVA's favor on all of Drake's claims.

Respectfully submitted,

*/s/ Scott Burnett Smith*

Scott Burnett Smith
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West, Suite 900
Huntsville, Alabama 35801-4900
(256) 517-5100
(256) 517-5200 (fax)
ssmith@bradley.com

*/s/ Leigh Anne Hodge*

Leigh Anne Hodge
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
(205) 521-8000
(205) 521-8800 (fax)
lhodge@bradley.com

*Attorneys for BBVA*

36

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 13, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Dennis George Pantazis, Jr.
WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500
(205) 254-1500 (fax)
sgpjr@wigginschilds.com
*Attorney for Plaintiff*

James H. White, IV
JAMES WHITE FIRM, LLC
2100 1st Avenue North, Suite 600
Birmingham, Alabama 35203
(205) 383-1812
james@whitefirmllc.com
*Attorney for Plaintiff*

Lange Clark
LAW OFFICE OF LANGE CLARK. P.C.
301 19th Street North, Suite 550
Birmingham, Alabama 35203
(205) 939-3933
(205) 939-1414 (fax)
langeclark@langeclark.com
*Attorney for Plaintiff*

Harlan I. Prater, IV
Brooke L. Messina
LIGHTFOOT, FRANKLIN, & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
hprater@lightfootlaw.com
bmessina@lightfootlaw.com
*Attorneys for Envestnet Asset Management, Inc.*

Nancy G. Ross
Richard E. Nowak
Samuel P. Myler
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
nross@mayerbrown.com
rnowak@mayerbrown.com
smyler@mayerbrown.com
*Attorneys for Envestnet Asset Management, Inc.*

Sharon D. Stuart
CHRISTIAN & SMALL LLP
505 North 20th Street
Suite 1800 Financial Center
Birmingham, Alabama 35203
sdstuart@csattorneys.com
*Attorneys for the Investment Committee
Defendants (Rosilyn Houston, Shane
Clanton, Javier Hernandez, Kirk Presley,
Celie Niehaus, Joe Cartee, and Jim Heslop)*

Emily Seymour Costin
ALSTON & BIRD LLP
950 F Street, NW,
Washington, DC 20004
emily.costin@alston.com
*Attorneys for the Investment Committee
Defendants (Rosilyn Houston, Shane
Clanton, Javier Hernandez, Kirk Presley,
Celie Niehaus, Joe Cartee, and Jim Heslop)*

and I hereby certify that I have mailed by United States Postal Service the document
to the following non-CM/ECF participants:

NONE

*/s/ Scott Burnett Smith*
OF COUNSEL