IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CHRISTINE D. DRAKE,** ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| v. ] | Civ. No.: 2:20-cv-02076-ACA |
| ] | |
| **BBVA USA BANCSHARES, INC.,** ] | |
| et. al, ] | |
| ] | |
| Defendants. ] | |

# MEMORANDUM OPINION

Before the court is Defendant Envestnet Asset Management, Inc.'s ("EAM") motion to dismiss the amended complaint. (Doc. 37).

Plaintiff Christine D. Drake is a participant in an Employee Retirement Income Security Act ("ERISA") defined contribution plan sponsored by her employer, BBVA USA Bancshares, Inc. ("BBVA"). (Doc. 25 at 2). BBVA contracted with EAM to provide consulting, investment research and recommendation assistance, and monitoring and reporting services. (Doc. 39-5 at 2; *see also* Doc. 25 at 10 ¶ 14). Ms. Drake filed suit against BBVA, EAM, and various individual members of BBVA's Retirement Committee. (Doc. 25 at 9–10). The only claim she asserts against EAM is breach of fiduciary duty, on the theory that EAM was an investment advice fiduciary under ERISA. (*Id.* at 101 ¶ 231).

The court **WILL GRANT** EAM's motion to dismiss. Because Ms. Drake lacks standing to challenge any advice EAM provided about funds she did not invest in, the court **WILL DISMISS** her claims against EAM arising from BBVA's investment in JPMorgan MidCap Growth Fund and the Principal MidCap Value Fund **WITHOUT PREJUDICE**. And because she cannot allege facts establishing that EAM is an investment advice fiduciary, the court **WILL DISMISS** Ms. Drake's other breach of fiduciary duty claims against EAM **WITH PREJUDICE**.

## I. BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The court also may consider a document attached to a motion to dismiss if the complaint refers to the document, it is central to the plaintiff's claims, and the authenticity of the document is not challenged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, EAM attached to its motion various documents. (Docs. 39-1 to 39-9). Among those documents are the Compass SmartInvestor 401(k) Plan (the "Plan") (doc. 39-1); the investment policy statement ("IPS") from 2008 and 2014[1] (docs. 39-2, 39-3);

---

[1] Ms. Drake alleges that BBVA and EAM operated under the 2008 IPS. (Doc. 25 at 24 ¶ 47). However, she also alleges that in 2014, EAM and BBVA began operating under an amended, albeit unsigned, IPS. (*Id.* at 76 n.62, 77 ¶ 169). Because the terms relevant to the determination whether EAM was an investment advice fiduciary did not change between the 2008 and 2014 IPS (*compare* doc. 39-2 at 5 *with* doc. 39-3 at 5), the court will discuss only the 2008 IPS.

2

and EAM's services agreement with BBVA (doc. 39-5).[2] Ms. Drake referred to all of these documents in her amended complaint. (Doc. 25 at 8–9 ¶¶ 10–11, 10 ¶ 14 & n.5, 24 ¶ 47). Each of the documents is central to her claim against EAM. And Ms. Drake has not challenged the contents of those documents. Thus, the court's description of the facts incorporates not only Ms. Drake's allegations, but also the contents of these documents.

Ms. Drake participated in the Plan, a defined contribution, individual account, employee benefit plan under 29 U.S.C. § 1002(A) and § 1002(34). (Doc. 25 at 4, 8 ¶10). BBVA is the plan sponsor, plan administrator, and a named fiduciary of the plan. (*Id.* at 5, 9 ¶ 12). BBVA's Board of Directors (the "Board") delegated its fiduciary duty to oversee the Plan's management to a Retirement Committee comprised of individuals appointed by the Board. (Doc. 39-2 at 5). As overseers of the Plan's management, the Retirement Committee is responsible for, among other things, developing an investment program, identifying investment options, monitoring investment results, and deciding on and taking appropriate action if objectives are not being met or if policies and guidelines are not being followed. (Doc. 25 at 9 ¶ 13; s*ee also* Doc. 39-2 at 5).

---

[2] The court need not decide whether considering the other documents attached to EAM's motion would require conversion of the motion to dismiss into one for summary judgment, because the court does not consider those other documents.

The Plan authorized the retention of an investment consultant's services to provide advice and recommendations to the Retirement Committee to help it discharge these fiduciary duties. (*See* Doc. 39-2 at 5). In December 2005, BBVA retained Prima Capital Management, EAM's predecessor-in-interest, to "provid[e] consulting, research, due diligence, recommendations, monitoring, reporting at the Plan level and other services relating to the investment options now and hereafter available in the Plans." (Doc. 39-5 at 2; *see also* Doc. 25 at 10 ¶ 14).

In 2008, the Retirement Committee and EAM adopted the IPS. (Doc. 25 at 24; Doc. 39-2 at 2). The purpose of the IPS was to "define the investment policy" for the Plan and to communicate that plan to "investment managers for their use in developing an appropriate investment program" and to the Retirement Committee "for its use in exercising its fiduciary duty in overseeing the Plan." (Doc. 39-2 at 4). EAM served as the Plan's investment consultant. (Doc. 25 at 10 ¶ 14). The IPS expressly limits EAM's responsibilities to providing expert advice and recommendations to help discharge the Retirement Committee's duties. (Doc. 39-2 at 5).

BBVA and EAM's mutual understanding of EAM's obligations as investment consultant are set out in the services agreement. (Doc. 39-5). EAM's three duties were to: (1) assist with the "review, evaluation and preparation of investment policies, objectives, and guidelines for the Plan[ ]"; (2) assist "with identifying

4

mutual funds that are consistent . . . with the Plan[ ]'s investment policies, objectives and guidelines"; and (3) "complete a full review of the mutual funds offered" and report those findings on a quarterly basis. (*Id.*). EAM did not guarantee that its advice would be successful and agreed to focus its review on "performance, personnel, adherence to the investment mandate, and regulatory issues." (*Id.*). The services agreement also explicitly stated that the information offered by EAM did not constitute investment advice but was instead only for informational purposes. (*Id.* at 11–12).

EAM performed its obligations under the contract from September 30, 2005, until September 2015 when BBVA replaced EAM with Willis Towers Watson. (Doc. 25 at 4 ¶ 14, 5, 10 n.5). According to Ms. Drake, EAM breached the fiduciary duties it owed her as a Plan participant by, among other things, failing to properly monitor both the stable value and active management classes, using imprudent benchmarks, and investing in funds with high expense ratios. (*Id.* at 101–03).

## II.   DISCUSSION

BBVA's Plan is governed by ERISA. (Doc. 25 at 5 ¶ 1, 8 ¶10). ERISA sets out, among other things, the general duties owed by a fiduciary under an ERISA plan. 29 U.S.C. § 1001(b); *see also Varity Corp. v. Howe,* 516 U.S. 489, 496 (1996). A fiduciary within the meaning of ERISA must be someone acting in the capacity

5

of manager, administrator, or financial adviser to a "plan." *Pegram v. Herdrich*, 530 U.S. 211, 222 (2000) (*citing* 29 U.S.C. § 1002(21)(A)(i)-(iii)).

In this case, Ms. Drake alleges that EAM, acting as the Plan's investment advice fiduciary, breached the fiduciary duties it owed her. EAM has moved to dismiss, arguing, among other things, that Ms. Drake does not have standing to bring some of her claims and that it is not an investment advice fiduciary. (Doc. 37). Because Ms. Drake's standing to bring these claims determines the court's jurisdiction over the case, the court will discuss that issue first.

1. Ms. Drake's Standing to Bring Claims

EAM argues that Ms. Drake does not have standing to bring claims relating to BBVA's investment in two of funds: JPMorgan MidCap Growth Fund and the Principal MidCap Value Fund. Ms. Drake admits that she did not invest in either of these funds. (Doc. 47 at 36–37). And the complaint does not allege either that she would have invested in these funds but for action taken by EAM or that she lost investment income that is somehow tied to the offering of these two funds. Instead, she argues that Envestnet's standing argument amounts to "yet another attempt to divert the Court's attention to something other than the merits of this case." (*Id.* at 35). But standing is always relevant, and Ms. Drake does not have standing to sue about investment in funds in which she did not invest. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-

6

560 (1992)).  Accordingly, the court **WILL GRANT** EAM's motion to dismiss and **WILL DISMISS** Ms. Drake's claims against EAM arising from BBVA's investment in JPMorgan MidCap Growth Fund and the Principal MidCap Value Fund **WITHOUT PREJUDICE**.

2. Ms. Drake's Claims against EAM as an Investment Advisor Fiduciary

To establish a claim for breach of fiduciary duty, Ms. Drake must first adequately allege that EAM is a fiduciary with respect to the Plan. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005). "In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

EAM contends that Ms. Drake has not sufficiently pleaded facts to support her contention that it is an investment advice fiduciary and that she could not plead such facts in light of the terms of the services agreement. (Doc. 37 at 10–16; Doc. 38 at 11; *see also* Doc. 97 at 2–3). "To survive a motion to dismiss [for failure to state a claim], the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content

7

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under ERISA, EAM is an investment advice fiduciary if it "renders investment advice for a fee or other compensation . . . or has any authority or responsibility to do so." 29 U.S.C § 1002(21)(A)(ii). "Investment advice" within the meaning of the statute means: (1) providing advice regarding the "value of securities or other property" or making recommendations "as to the advisability of investing in, purchasing or selling securities or other property" for a fee; (2) on a regular basis; (3) "pursuant to a mutual agreement, arrangement[,] or understanding, written or otherwise"; (4) where the advice "serve[s] as a primary basis for investment decisions with respect to plan assets"; and (5) the advice is "individualized . . . to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments." 29 C.F.R. § 2510.3-21(c)(1). All five factors are necessary to support a finding of fiduciary status. *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co.*, 768 F.3d 284, 297 (3rd Cir. 2014) (citing *Thomas, Head & Greisen Emps. Trust v. Buster*, 24 F.3d 114, 1117 (9th Cir. 1994)).

Ms. Drake's complaint does not allege that EAM's advice would serve as the primary basis for the investment decision. Nor does she allege any facts supporting

a reasonable inference that EAM's advice was the primary basis for BBVA's investment decisions.  Under the Plan, BBVA's Board of Directors has the duty to act prudently and for the exclusive benefit of the Plans' participants and their beneficiaries.  (*See* Doc. 39-2 at 5).  The Plan authorized the Board to delegate its authority and responsibilities to a committee and the Board elected to make that delegation to the Retirement Committee.  (*Id.*).  The duties and responsibilities delegated to the Retirement Committee include, among other things, the duty to develop an investment program, identify the program options, select mangers and/or funds, monitor investments through regular reviews and analyses, and decide whether to take action if objectives are not being met or policies and guidelines are not being followed.  (*Id.*).  Ms. Drake does not allege that the Plan authorized the Retirement Committee to delegate those responsibilities further.  To the contrary, the ISP and the services agreement make clear that the Retirement Committee retained those responsibilities.

According to the ISP, the Retirement Committee was authorized to retain "a third-party Investment Consultant" for the limited purpose of provid[ing] expert advice and recommendations *to help* discharge [*the Retirement Committee's*] fiduciary responsibilities under the Plan." (*See* Doc. 39-2 at 5)) (emphasis added). The Retirement Committee had the responsibility to identify investment options, select funds, and monitor those investments.  And EAM's role was limited to

9

providing "consulting, research, due diligence, recommendations, monitoring, reporting at the Plan level and other services relating to the investment options." (Doc. 39-5 at 2 ¶ D).  The services agreement honors the construct of the relationship by explicitly limiting the scope of the services EAM provided and expressly rejecting the possibility that EAM's services could be construed as investment advice.  By the terms of the services agreement, EAM did not agree to provide investment advice that would serve as the primary basis for an investment decision.  (Doc. 39-5 at 2 ¶ E; *see also id.* at 12 ¶ 17 (assistance EAM provides does "not constitute the making or offering of investment advice.")).

The fact the Service Agreement explicitly states that EAM does not make or offer investment advice makes good sense.  By its terms, EAM agreed only "*to assist* . . . the review, evaluation and preparation of investment policies, objectives, and guidelines for the Plans" and "*assist* . . . with identifying mutual funds" that fit the guidelines of the IPS.  (*Id.* at 3 ¶ 1(a)–(b)).  And EAM's quarterly mutual fund review was limited to, as relevant here, performance and adherence to the investment mandate and recommendations for modification; a report and presentation of each funds' status according to the Plan's investment policies, objectives, and guidelines and/or recommendations of replacement or additional funds were only provided at the Retirement Committee's request.  (Doc. 39-5 at 3 ¶ 1(c)).

Faced with the clear language of the ISP and Services Agreement, Ms. Drake does not attempt to argue that EAM's services were the primary basis for investment decisions. Instead, she counters that "[t]he duty of prudence trumps instructions in a plan document." (Doc. 47 at 11 (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014)). That is true, but beside the point: while ERISA precludes fiduciaries from contracting away their fiduciary responsibilities, *see* 29 U.S.C. § 1110(a), "this does not answer the question of whether [the defendant] has taken on fiduciary status in the first place." *Santomenno*, 768 F.3d at 299. And as discussed above, EAM and BBVA did not mutually agree for EAM's advice to be the primary basis for the Plan's investment decisions. Ms. Drake has not and cannot allege facts to support a plausible inference EAM is an investment advice fiduciary, so the court **WILL GRANT** EAM's motion to dismiss the claim against it for failure to state a claim.

I. **CONCLUSION**

The court **WILL GRANT** EAM's motion to dismiss. The court **WILL DISMISS** Ms. Drake's claims arising from BBVA's investment in JPMorgan MidCap Growth Fund and the Principal MidCap Value Fund **WITHOUT PREJUDICE** for lack of standing. The court **WILL DISMISS** Ms. Drake's other breach of fiduciary duty claims against EAM **WITH PREJUDICE** for failure to state a claim.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this August 27, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE